## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ROADHOUSE HOLDING INC., *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 16 -11819 (___)<br><br>(Joint Administration Requested) |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER, PURSUANT TO 28 U.S.C. § 156(c), AUTHORIZING THE RETENTION AND APPOINTMENT OF DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") file this application (this "**Application**") for entry of an order, substantially in the form attached hereto as Exhibit A, approving the Debtors' retention and employment of Donlin, Recano & Company, Inc. ("**DRC**") as claims and noticing agent for the Debtors in lieu of the Clerk (the "**Clerk**") of the United States Bankruptcy Court for the District of Delaware (the "**Court**"), effective *nunc pro tunc* to the date hereof (the "**Petition Date**").  The facts and circumstances supporting this Application are set forth in the concurrently filed *Declaration of Keith A. Maib in Support of Chapter 11 Petitions and First Day Relief*, filed substantially contemporaneous herewith (the "**First Day Declaration**").  In further support of this Application, the Debtors rely on the declaration of Roland Tomforde (the "**Tomforde Declaration**"), attached as Exhibit B and incorporated herein by reference.  In further support of this Application, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).  The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

## Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code (the "**Judicial Code**"), section 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2002-1(f) and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Clerk on February 1, 2012 (the "**Claims Agent Protocol**").

## Background

4.      On the Petition Date, each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or statutory committee has been appointed in these chapter 11 cases.

5.      Additional information regarding the Debtors, including their business operations, corporate and capital structure, and the events leading to the Petition Date, is more fully set forth in the First Day Declaration.[2]

**Relief Requested**

6.      By this Application, the Debtors seek authority to employ DRC as claims and noticing agent in order to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in these chapter 11 cases.  The Debtors' selection of DRC to act as the claims and noticing agent has substantially satisfied the Claims Agent Protocol.

7.      In accordance with the Claims Agent Protocol, prior to the selection of DRC, the Debtors reviewed and competitively compared engagement proposals from four court-approved claims and noticing agents, including DRC, to ensure selection through a competitive process. The Debtors submit, based on the engagement proposals obtained and reviewed, that DRC's rates are competitive and reasonable given DRC's quality of services and expertise.

8.      The terms of DRC's retention are set forth in the Standard Claims Administration and Noticing Agreement annexed hereto as Exhibit 1 **to** Exhibit A (the "**Engagement Agreement**"); provided, however, that DRC is seeking approval solely of the terms and provisions as set forth in this Application and the proposed order attached hereto.[3]

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3]   In addition to the filing of this Application, the Debtors intend to file an application (the "**Administrative Advisor Application**") whereby they seek to employ DRC to provide certain bankruptcy administrative services to the Debtors in these cases.

9.     The Debtors anticipate that there will be thousands of entities to be noticed in these cases.   In view of the number of anticipated claimants, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of the Debtors' estates and their creditors.

10.     By appointing DRC as the claims and noticing agent in these cases, the distribution of notices and the processing of claims will be expedited, and the Clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

**Services to Be Provided**

11.     This Application pertains only to the work to be performed by DRC under the Clerk's delegation of duties permitted by section 156(c) of the Judicial Code, Local Rule 2002-1(f), and the Claims Agent Protocol, and any work to be performed by DRC outside of this scope is not covered by this Application or by any order granting approval hereof.   Specifically, DRC will perform, to the extent the Debtors or the Clerk request, the following services in its role as claims and noticing agent (the "**Claims and Noticing Services**"), as well as all quality control relating thereto:

 a.     Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in the form and manner directed by the Debtors and/or the Court, including, if applicable (i) notice of the commencement of the cases, (ii) notices of transfers of claims, (iii) notices of objections to claims and objections to transfers of claims, (iv) notices of any hearings on a disclosure statement and confirmation of any chapter 11 plan, including under Bankruptcy Rule 3017(d), (v) notice of the effective date of any chapter 11 plan, and (vi) all other notices, orders, pleadings, publications, and other documents as the Debtors and/or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

b.     Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "**Schedules**") listing the Debtors' known creditors and the amounts owed thereto;

c.     Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002 and those parties that have filed a notice of appearance under Bankruptcy Rule 9010;

d.     Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e.     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.     Prepare and file or cause to be filed with the Clerk an affidavit or certificate of service for all notices, motions, orders, and other pleadings or documents served within seven days of service that includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.     Process all proofs of claim received, including those received by the Clerk's office, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h.     (i) Maintain the official claims register for each Debtor (the "**Claims Register**") on behalf of the Clerk; (ii) upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and (iii) specify in the Claims Registers the following information for each claim docketed:  (A) the claim number assigned, (B) the date received, (C) the name and address of the claimant and agent, if applicable, who filed the claim, (D) the amount asserted, (E) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), (F) the applicable Debtor, and (G) any disposition of the claim;

i.     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

j.      Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

k.      Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of DRC, not less than weekly;

l.      Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

m.      Monitor the Court's docket for all notices of appearance, address changes, claims-related pleadings, and orders filed, and make necessary notations on and/or changes to the Claims Registers;

n.      Assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases, as directed by the Debtors and/or the Court, including through the use of a case website and/or call center;

o.      If the case is converted to chapter 7, contact the Clerk's office within three (3) days of the notice to DRC of entry of the order converting the case;

p.      Thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing DRC and terminating DRC's services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

q.      Within seven (7) days of notice to DRC of the entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the cases; and

r.      At the close of these chapter 11 cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064, or (ii) any other location requested by the Clerk's office.

12.    The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by DRC.  DRC shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

13.    DRC will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk's office, section 331 of the Judicial Code, or as otherwise directed by the Court.

### DRC's Qualifications

14.    DRC specializes in providing comprehensive chapter 11 administrative services, including noticing, claims processing, balloting, and other related services critical to the effective administration of chapter 11 cases.  Indeed, DRC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all other parties in interest.  Further, DRC has experience working with, and will continue to work with, the Clerk to ensure that the services provided conform to all of the Court's procedures, the Local Rules, and the provisions of any orders entered by the Court.  Accordingly, the Debtors' estates and their creditors will benefit from DRC's retention because DRC has developed efficient and cost-effective methods in this area of expertise.

15.    DRC has substantial experience in matters of this size and complexity, and has acted as the official claims and noticing agent in many large bankruptcy cases filed in this district.

### Compensation and Representation of Disinterestedness

16.    The Debtors respectfully request that the undisputed fees and expenses incurred by DRC in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to section 156(c) of the Judicial Code and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  DRC agrees to maintain records of all services showing dates, categories of

services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), counsel for the Debtors, counsel for any official committee, counsel for the Debtors' post-petition secured lenders (the "**DIP Lenders**"), and any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

17.    Prior to the Petition Date, the Debtors provided DRC a retainer in the amount of $25,000, which was applied to prepetition fees under the Engagement Agreement and the services agreement that is the subject of the Administrative Advisor Application.  In addition, DRC received certain payments from the Debtors for services performed prior to the Petition Date, as more fully set forth in the Tomforde Declaration.  DRC seeks to first apply the retainer to all pre-petition invoices, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses under the Engagement Agreement.

18.    In connection with its retention as the claims and noticing agent, DRC represents in the Tomforde Declaration, among other things, that:

a.    DRC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases;

b.    By accepting employment in these chapter 11 cases, DRC waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

c.    In its capacity as claims and noticing agent in these chapter 11 cases, DRC will not be an agent of the United States and will not act on behalf of the United States; and

8

d.    It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

19.    To the extent that there is any inconsistency between this Application, the proposed order, and the Engagement Agreement, the Debtors respectfully submit that the proposed order shall govern.

20.    The Debtors represent that this Application complies with the Claims Agent Protocol and conforms to the standard application pursuant to section 156(c) of the Judicial Code used in this district.

**Indemnification**

21.    As part of the overall compensation payable to DRC under the terms of the Engagement Agreement, the Debtors have agreed to certain indemnification and contribution obligations as set forth in the Engagement Agreement, to the extent permitted by applicable law and as modified in the proposed order attached hereto as Exhibit A.

22.    The terms of the Engagement Agreement and indemnification provisions included therein were negotiated at arms' length between the Debtors and DRC, and the Debtors respectfully submit that these provisions are reasonable and in the best interests of the Debtors, their estates, and their creditors.  Moreover, consistent with the practice in this jurisdiction, the Debtors requested, and DRC has agreed, that the Court approve the indemnification provisions reflected in the Engagement Agreement subject to the modifications set forth in the proposed order attached hereto as Exhibit A.  The Debtors believe that the proposed modifications to the indemnification provisions of the Engagement Agreement are appropriate under the circumstances, are consistent with recent orders entered in this jurisdiction, and should be approved.

### *Nunc Pro Tunc* Relief Is Appropriate

23.    Pursuant to the Debtors' request, DRC has acted as the claims and noticing agent since the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that DRC may be compensated for its services prior to entry of an order approving DRC's retention.  The Debtors believe that no party in interest will be prejudiced by granting DRC's *nunc pro tunc* employment, because DRC has provided and continues to provide valuable services to the Debtors' estates in the interim period.

24.    Courts in this jurisdiction have routinely approved *nunc pro tunc* employment similar to that requested herein in comparable matters.  *See, e.g.*, *In re Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (approving *nunc pro tunc* retention of claims agent to perform claims and noticing services); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (same); *see also* Local Rule 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise.").

25.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Judicial Code, the Local Rules, and the Claims Agent Protocol.  Accordingly, the Debtors respectfully request entry of an order pursuant to section 156(c) of the Judicial Code, Local Rule 2002-1(f), and the Claims Agent Protocol authorizing the Debtors to retain and employ DRC to act as the Debtors' claims and noticing agent, effective *nunc pro tunc* to the Petition Date.

**Notice**

26.     Notice of this motion has been provided to the following parties:  (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney General for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel to JPMorgan Chase Bank, N.A., as Administrative Agent under the Credit Agreement, dated as of October 4, 2010; (vi) counsel to BOKF, N.A., as Trustee under that certain Senior Secured Notes Indenture, dated October 4, 2010; (vii) counsel to Wells Fargo Bank, N.A., as Trustee under the Series 2015-1 Supplemental Indenture and Series 2015-2 Supplemental Indenture, each dated as of October 15, 2015, and the Second Series 2015-1 Supplemental Indenture, dated as of October 22, 2015; (viii) each of the counsel to the noteholders who are party to the Restructuring Support Agreement, dated as of August 8, 2016, and who are proposed debtor in possession lenders; (ix) the Debtors' cash management banks; and (x) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis).  Notice of this motion and any order entered on this motion will be served as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit A:   (a) approving the Engagement Agreement and the Debtors' retention and employment of DRC as claims and noticing agent for the Debtors in these chapter 11 cases, effective *nunc pro tunc* to the Petition Date; and (b) granting related relief.

Nashville, Tennessee
Dated:  August 8  , 2016

Respectfully submitted,

_____
Keith A. Maib
Chief Restructuring Officer of Finance

## <u>EXHIBIT A</u>

**Proposed Form of Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ROADHOUSE HOLDING INC., et al.,[1] | Case No. 16 - 11819 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. __** |

**ORDER PURSUANT TO 28 U.S.C. § 156(c) (A) APPROVING THE RETENTION
AND APPOINTMENT OF DONLIN, RECANO & COMPANY, INC. AS
CLAIMS AND NOTICING AGENT FOR THE DEBTORS, EFFECTIVE *NUNC
PRO TUNC* TO THE PETITION DATE AND (B) GRANTING RELATED RELIEF**

Upon consideration of the application (the "**Application**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Order**") approving the retention and employment of DRC as claims and noticing agent for the Debtors in these chapter 11 cases, effective *nunc pro tunc* to the Petition Date, as more fully set forth in the Application; and upon the First Day Declaration; and upon the Tomforde Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).  The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to retain DRC effective *nunc pro tunc* to the Petition Date, under the terms of the Engagement Agreement, and DRC is authorized and directed to perform the Claims and Noticing Services as described in the Application.

3.      DRC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these cases, if any, and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      DRC is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5.      DRC is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtors are authorized to compensate DRC in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by DRC and the rates charged for each, and to reimburse DRC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for DRC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      DRC shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the Office of the U.S. Trustee, counsel for the Debtors, counsel for any official committee, counsel to the DIP Lenders, and any party in interest who specifically requests service of the monthly invoices.

8.      If any dispute arises relating to the Engagement Agreement or DRC's monthly invoices, the parties shall meet and confer in an attempt to resolve such dispute, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, DRC's fees and expenses under this Order shall be an administrative expense of the Debtors' estates.

10.     DRC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, DRC may hold its retainer under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The Debtors shall indemnify DRC under the terms of the Engagement Agreement, subject to the following modifications:

        a.      Subject to the provisions of subparagraphs (c) and (d) below, the Debtors are authorized to indemnify, and shall indemnify, DRC in accordance with the Engagement Agreement and to the extent permitted by applicable law,

for any claim arising from, related to, or in connection with DRC's performance of the services described in the Engagement Agreement;

b.    DRC shall not be entitled to indemnification, contribution, or reimbursement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

c.    Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of DRC's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order; and

d.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, DRC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Agreement, including without limitation the advancement of defense costs, DRC must file an application before this Court, and the Debtors may not pay any such amounts to DRC before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for payment by DRC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify DRC. All parties in interest shall retain the right to object to any demand by DRC for indemnification, contribution or reimbursement.

12.    DRC shall comply with all relevant statutory provisions and rules of procedure, including local rules of procedure, general orders, and applicable guidelines.

13.    Debtors' counsel shall notify both the Clerk's office and DRC within seven (7) days of an order dismissing or converting the Debtors' cases.

14.     In the event DRC is unable to provide the services set out in this Order, DRC will immediately notify the Clerk and Debtors' counsel and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' counsel.

15.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by DRC but is not specifically authorized by this Order.

16.     DRC shall not cease providing claims processing services during the case(s) for any reason, including nonpayment, without an order of the Court.

17.     At the end of these cases or upon termination of DRC's services, the Debtors or the Trustee must obtain a termination order to terminate the services of DRC.   DRC is responsible for archiving all claims with the Federal Archives Record Administration, if applicable.

18.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, this Order shall govern.

19.     The Debtors and DRC are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

20.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2016
        Wilmington, Delaware                    _____

                                                UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**Engagement Agreement**

## Donlin, Recano & Company, Inc.

### STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

### TERMS AND CONDITIONS

**Donlin, Recano & Company, Inc**. (hereinafter called "DRC") agrees to provide Logan's Roadhouse, Inc. **,** including but not limited to any and all bankruptcy cases filed by any affiliate of Logan's Roadhouse, Inc., (hereinafter called the "Client") and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. SERVICES:** DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. CHARGES**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Client's bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3. TRANSPORTATION OF DATA**: Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.



## Donlin, Recano & Company, Inc.

**4. <u>EVERGREEN RETAINER & INVOICES</u>**:   At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $25,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement. DRC may apply the Retainer to any other invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer.  Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client.  DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer.  Client shall pay the charges set forth in Schedule A, attached hereto.  DRC shall invoice the Client monthly for all services rendered during the preceding month.  Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing.  Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay").  Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC.  Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client.  The undisputed portion of the invoice will remain due and payable.  Late charges shall not accrue on any amounts in dispute.  Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses.  The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach").  Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

**5. <u>STORAGE</u>**:   Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility.  Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**6. <u>E-MAIL COMMUNICATIONS</u>**:   DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address.  However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free.  It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**7. <u>SUPPLIES</u>**:   All supplies shall be furnished at Client's expense.



### Donlin, Recano & Company, Inc.

**8. <u>WARRANTY AND RELIANCE</u>:**  Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement.  Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client.  DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC.  Client is responsible for the accuracy of all programs, data and other information it submits to DRC.  The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report.  If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

**9. <u>TERM</u>:**  This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above.  In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement.  The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement.  In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer.  Client agrees to pay for such services in accordance with DRC's then existing fees for such services.  If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. <u>TERMS OF AGREEMENT</u>:**  The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. <u>INDEMNIFICATION</u>:**  The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "<u>Losses</u>"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties.  The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.



**Donlin, Recano & Company, Inc.**

**12. <u>CONFIDENTIALITY:</u>** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

**13. <u>OWNERSHIP OF PROGRAMS</u>:** Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**14. <u>SYSTEMS IMPROVEMENTS:</u>** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**15. <u>UNUSUAL MEASURES</u>:** Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**16. <u>JURISDICTION.</u>** In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

**17. <u>FORCE MAJEURE.</u>** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**18. <u>NOTICE.</u>** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to DRC, to Donlin, Recano & Company, Inc., 6201 15th Avenue, Brooklyn, New York 11219, Attention: Alexander Leventhal, Esq.; if to the Client, to Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attention: Edmon L. Morton, Esq.



**Donlin, Recano & Company, Inc.**

**19.  GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**20.  SEVERABILITY.**  All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**21.  ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

**22. GENERAL**:  The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client.   Client will not employ any DRC employee within two (2) years from the termination of this Agreement.    The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy.  The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC.  If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

*[remainder of page intentionally blank]*



Donlin, Recano & Company, Inc.

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

By:            Alexander Leventhal

Signature:    _____

Title:        President, and Chief Executive Officer

Date:         7/19/2016

Accepted and Approved:

Logan's Roadhouse, Inc. and affiliates

By:           _____

Signature:    _____

Title:        _____

Date:         _____

This Agreement is subject to the terms and conditions set forth herein.  Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

**Donlin, Recano & Company, Inc.**

Accepted and Approved:

Donlin, Recano & Company, Inc.
6201 15th Avenue
Brooklyn, New York 11219

By:          Alexander Leventhal

Signature:   _____

Title:       President, and Chief Executive Officer

Date:        _____


Accepted and Approved:

Logan's Roadhouse, Inc. and affiliates

By:          *Edmund J. Schwartz*

Signature:   *Edmund J Schwartz*

Title:       *CFO*

Date:        *July 19, 2016*

This Agreement is subject to the terms and conditions set forth herein.   Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

Schedule A

DRC | Donlin Recano

www.donlinrecano.com

**Donlin, Recano & Company, Inc.**

Schedule A
Fee Schedule
Logan's Roadhouse, Inc. and affiliates

| Professional Service | Hourly Rates * |
|---|---|
| Senior Bankruptcy Consultant | $165 |
| Case Manager | $140 |
| Technology/Programming Consultant | $110 |
| Consultant/Analyst | $90 |
| Clerical | $45 |
| **Noticing Service** | |
| Laser Printing/ Photocopies | $.08 per Image |
| Personalization/ Labels | WAIVED |
| Fax (Incoming) | WAIVED |
| Fax Noticing | $.08 per Page |
| Postage and Overnight Delivery | At Cost |
| Electronic Noticing | WAIVED |
| Publication Services | At Cost |
| **Solicitation, Balloting , Schedule/SOFA, MOR** | |
| Print and Mail Ballots/Plan Disbursements | Print/hourly fees above – Plan/DS media varies |
| Set-up Tabulation & Vote Verification | $90 - $165 as needed |
| Public Securities Solicitation | $90 - $195 per Hour |
| Schedule/SOFA preparation | $90 - $195 per Hour |
| **Claims Docketing and Management** | |
| Website Development | $90 per Hour |
| Web Hosting | WAIVED |
| Creditor Data Storage/ Electronic Document Storage (PDF/JPG) | WAIVED first six months, then $.05 per record |
| Document Imaging | $.08 per Image |
| Electronic Claims filing | No Set-up charge or per claim charge |
| **Data Room Services** | |
| DRC DocuLinks™ Virtual Data Room Services | Hosting WAIVED |
| Data Room Development | $90 per Hour |
| **Miscellaneous** | |
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Call Center Operators | $65 per hour |
| Automated Call Center options | Quoted Upon Request |

*\* DRC's blended rate for all timekeepers, other than for work preparing schedules/SOFA, and Public Securities Solicitation, will not exceed $115 per hour.  After each three month period, DRC will calculate the actual blended rate.  If that amount exceeds $115 per hour, DRC will give the client a credit on the next invoice in an amount sufficient to reduce the blended rate to $115 for the preceding period.  If the actual blended rate is less than $115 per hour, no adjustment will be made.*



## **EXHIBIT B**

**Tomforde Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ROADHOUSE HOLDING INC., *et al.*,[1] | Case No. 16-11819 (___) |
| Debtors. | Jointly Administered |

**DECLARATION OF ROLAND TOMFORDE IN SUPPORT OF
DEBTORS' APPLICATION FOR ENTRY OF AN ORDER,
PURSUANT TO 28 U.S.C. § 156(c), AUTHORIZING THE
RETENTION AND APPOINTMENT OF DONLIN, RECANO &
COMPANY, INC. AS CLAIMS AND NOTICING AGENT FOR
THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

I, Roland Tomforde, under penalty of perjury, declare as follows:

1.      I am the Chief Operating Officer of Donlin, Recano & Company, Inc. ("Donlin Recano"), a Chapter 11 administrative services firm, whose offices are located at 6201 15th Avenue, Brooklyn, New York 11219.

2.      I submit this Declaration in support of the Debtors' Application    (the "Application")[2] for Entry of an Order Pursuant to 28 U.S.C. § 156(c), Authorizing the Retention and Appointment of Donlin, Recano & Company, Inc., as Claims and Noticing Agent (the "Claims and Noticing Agent") for the Debtors, *Nunc Pro Tunc* to the Petition Date.  Except as otherwise noted, I have personal knowledge of the facts contained in this Declaration.

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings Inc. (4571); Logan's Roadhouse Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).  The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

3.      As custodian of the courts records pursuant to 28 U.S.C. § 156(c), Donlin Recano will perform, at the request of the Office of the Clerk of the Court (the "Clerk"), the noticing and claims related services specified in the Application and the Engagement Agreement.    In addition, at the Debtors' request, Donlin Recano will perform such other noticing, claims, administrative, technical and support services specified in the Application and the Engagement Agreement.

4.      Donlin Recano is one of the country's leading Chapter 11 administrators, with experience in noticing, claims administration, and facilitating other administrative aspects of chapter 11 cases.  Donlin Recano has provided identical or substantially similar services in other chapter 11 cases filed in this District and elsewhere, including, among others:  *In re Emerald Oil, Inc., et al.* Case No. 16-10704 (KG) (Bankr. D. Del. 2016); *In re Solutions Liquidation LLC, et al.,* Case No. 16-10627 (CSS) (Bankr. D. Del. 2016); *In re Boomerang Tube, LLC*, Case No. 15-11247 (MFW) (Bankr. D. Del. 2015); *In re Seal 123, Inc., et al.,* Case No. 15-10081 (CSS) (Bankr. D. Del. 2015); *In re Longview Power, LLC, et al.,* Case No. 13-12211 (BLS) (Bankr. D. Del. 2013); *In re Rural/Metro Corporation et al.*, Case No. 13-11952 (KJC) (Bankr. D. Del. 2013); *In re Handy Hardware Wholesale, Inc.*, Case No. 13-10060 (MFW) (Bankr. D. Del. 2013); *In re Prommis Holdings, LLC, et al.*, Case No. 13-10551 (BLS) (Bankr. D. Del. 2013); *In re Saab Cars North America, Inc.*, Case No. 12-10344 (CSS) (Bankr. D. Del. 2012); *In re Hussey Copper Corp., et al.*, Case No. 11-13010 (BLS) (Bankr. D. Del. 2011); *In re Townsends, Inc., et al.*, Case No. 10-14092 (CSS) (Bankr. D. Del. 2010); *In re Emivest Aerospace Corporation*, Case No. 10-13391 (MFW) (Bankr. D. Del. 2010*); In re Wolverine Tube, Inc., et al*, Case No. 10-13522 (PJW) (Bankr. D. Del. 2010).

5.      Donlin Recano represents, among other things, that:

(a)    it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases;

(b)    by accepting employment in these chapter 11 cases, Donlin Recano waives any right to receive compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases; and

(c)    in its capacity as the claims and noticing agent in these chapter 11 cases, it is not an agent of the United States and is not acting on behalf of the United States;

(d)    it will not employ any past or present employees of the Debtors in connection with its work as the notice and claims agent in these chapter 11 cases.

6.    To the best of my knowledge and belief, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Donlin Recano, nor any employee of Donlin Recano, holds nor represents any interest materially adverse to the Debtors, their estates or their creditors with respect to matters upon which Donlin Recano is to be engaged.

7.    To the best of my knowledge and belief, and based solely upon information provided to me by the Debtors and except as provided herein, neither Donlin Recano, nor any employee of Donlin Recano, has any materially adverse connections to the Debtors, their creditors or equity interest holders, or other relevant parties, their respective attorneys and accountants, any United States Bankruptcy Judge for the District of Delaware, the United States Trustee for the District of Delaware, or any person employed by that office of the United States Trustee, that would conflict with the scope of Donlin Recano's retention or would create any interest adverse to the Debtors' estates or any other party-in-interest.

8.    The Debtors have many creditors and, from time to time, Donlin Recano may have represented certain of those creditors in completely unrelated matters.    Proposed

bankruptcy counsel for the Debtors has provided me with a list of the Debtors' creditors and other parties-in-interest (the "Conflicts List"), a copy of which is attached hereto as Exhibit 1, that it received from the Debtors.  I have caused an examination of these records to be made to determine which, if any, of the parties on the Conflicts List, Donlin Recano may have represented in the past or may be representing at the present time in totally unrelated matters. This search has disclosed that, to the best of my present knowledge, Donlin Recano has not in the past and is not currently representing any of the parties on the Conflicts List other than as described below:

a.      On June 11, 2015, DRC was retained by American Express ("AXP") to facilitate notice to over 12 million merchant locations in connection with certain litigation to which AXP was a party.  DRC's representation of AXP was wholly unrelated to the Debtors or these cases and DRC does not currently represent AXP.

9.      In addition, Donlin Recano has identified numerous vendors appearing on the Conflicts List that are also vendors of Donlin Recano, but  Donlin Recano has not in the past, and is not currently, representing any of those vendors.

10.     Certain of DRC's professionals were formerly employed by firms that may provide professional services to parties in interest in these cases.  Such firms include Paul Hastings LLP, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, Kaye Scholer LLP, Skadden, Arps, Slate, Meagher & Flom LLP, Sheppard, Mullin, Richter & Hampton LLP, Baker & McKenzie LLP, Clifford Chance, Hughes Hubbard & Reed LLP, Davis Polk & Wardwell LLP, Leven Neale, Bender, Yoo & Brill LLP, Law Offices of David Carlebach, Blank Rome LLP, Anderson Kill, Willkie Farr & Gallagher LLP, Dechert LLP, Pryor Cashman LLP, Schulte Roth & Zabel LLP, Kurtzman Carson Consultants LLC, Epiq Bankruptcy Solutions, LLC, and Rust

Omni.  Except as disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

11.     Donlin Recano is an affiliate of American Stock Transfer & Trust Company, LLC ("AST").  AST is a global financial communications and stakeholder management company. Within the AST corporate structure, Donlin Recano operates as a separate and independent legal entity.  Given the legal and operational separateness of Donlin Recano from AST, Donlin Recano does not believe that any relationships that AST and its affiliates maintain would create an interest of Donlin Recano that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

12.     There may be other creditors of the Debtors, that Donlin Recano may have or may be presently representing, but in no event is Donlin Recano representing any other creditor with respect to the Debtors' bankruptcy proceeding.  To the extent I become aware of Donlin Recano having represented any other creditors of the Debtors, I will file a supplemental declaration advising the Court of the same.  To the extent that Donlin Recano discovers any facts bearing on matters described herein, Donlin Recano will supplement information contained herein.

13.     Notwithstanding anything contained herein, as part of its diverse business, Donlin Recano is the noticing, claims and balloting agent for debtors in numerous cases involving many different creditors (including taxing authorities), professionals, including attorneys, accountants, investment bankers and financial consultants, some of which may be creditors or represent creditors and parties-in-interest in these chapter 11 cases.  In addition, Donlin Recano has in the past and will likely in the future continue working with or against other professionals involved in these chapter 11 cases in matters unrelated to these chapter 11 cases.  Based upon my current

knowledge of the parties involved, and to the best of my knowledge, none of these business relations constitute interests adverse to that of the creditors, or the Debtors' estates, with respect to the matter upon which Donlin Recano is to be engaged. Additionally, Donlin Recano employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to these chapter 11 cases.

14.     Based upon the information available to me, I believe that Donlin Recano is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that Donlin Recano and its personnel: (a) are not creditors, equity security holders or insiders of the Debtors; (b) are not and were not, within two years before the date of the filing of these cases, a director, officer or employee of the Debtor; and (c) do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors. Prior to the filing of the chapter 11 cases, the Debtors (i) paid Donlin Recano $20,946.30 in connection with prepetition fees and expenses and (ii) provided Donlin Recano a retainer of $25,000.00.

15.     In performing the services identified above, Donlin Recano will charge the rates set forth in Schedule A to the Engagement Agreement annexed as Exhibit 1 to Exhibit A to the Application. The rates set forth therein are as favorable and reasonable as the prices Donlin Recano charges in cases in which it has been retained to perform similar bankruptcy related services.

16.     Donlin Recano will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on August 8, 2016
Brooklyn, New York

_____
Roland Tomforde
Chief Operating Officer  Donlin,
Recano & Company, Inc.

## Exhibit 1

**Potential Parties in Interest**

**Debtors**

Roadhouse Holding Inc.
Roadhouse Intermediate Inc.
Roadhouse Midco Inc.
Roadhouse Parent Inc.
LRI Holdings Inc.
Logan's Roadhouse, Inc.
Logan's Roadhouse of Texas, Inc.
Logan's Roadhouse of Kansas, Inc.

**Case Professionals**

Young Conaway Stargatt & Taylor, LLP
Debevoise & Plimpton LLP
King & Spalding LLP
Mackinac Partners, LLC
Jefferies LLC
Hilco Real Estate, LLC
Reed Smith LLP
Dechert LLP

**Cash Management Banks**

Wells Fargo Bank, NA
Fifth Third Bank, N.A.
Regions Bank, N.A.

**Contract Counter Parties**

Air Plus
Applied Predictive Technologies, Inc.
Arroweye
Barlap Compliance Corporation
Bettertheworld Inc. / dba FlipGive
Blackhawk Network
Brinks U.S.
Buxton Company
Carr, Riggs & Ingram, LLC
CashStar, Inc.
Ceridian Stored Value Solutions, Inc. f/k/a Comdata Stored Value Solutions, Inc. ("CSVS")
Chesapeake System Solutions, Inc.
Comdata Stored Value Solutions, Inc. ("CSVS")
Concur Technologies, Inc.
Ecova, Inc.
Enguard, Inc.
eProperty Tax, Inc.
Fifth Third Processing Solutions
Grant Thornton LLP
Interactive Communications International, Inc. ("InComm")

Interconn Resources, LLC
Mars Stout
NUS Consulting
Service Management Group, Inc.
ServiceCheck Inc.
Stored Value Systems, Inc. ("SVS")
Tango Card, Inc.
Tax Matrix
Thomas Doolin and Associates, LLC / "Black Box Intelligence"
Thomson Property Tax Services
Thomson Reuters (Markets) LLC
Thomson Reuters (Tax & Accounting) Inc.
Virtual Premise, Inc.
WebFilings
World Travel, Inc.
NovaCopy, Inc.
CoreTrust
MailFinance
GBT US LLC / American Express Business Travel
Business Talent Group, LLC
Kurtzman Carson Consultants LLC / "KCC"
Country Music Association, Inc.
Hilco Real Estate, LLC
Ozworth, Inc. / Re: Jerrod Niemann
Anheuser-Busch, LLC / Music City Live!
DLA Piper LLP
Cahill Gordon & Reindel LLP
Forum Analytics, LLC
Urbana, LLC
Lighting Design Alliance
Tanaka Riley Architects, Inc.
Lauren Dale
Armory Hill Oaks, LLC
Patrick Henry Creative Promotions, Inc.
ServiceChannel.com Inc.
Cintas Corporation
AXIS Insurance Company
Benefitfocus.com, Inc.
bswift LLC
CareerBuilder, LLC
Creative Restaurant Solutions / "CRS"
Delta Dental of Tennessee
Enterprise Fleet - Maintenance Agreement
Enterprise Fleet - Master Equity Lease Agreement
EventGenuity, LLC
Global Compliance Services, Inc.

GovDocs, Inc.
HCC Life Insurance Company
Health and Benefit Systems, Inc. / The Kansas City Series of Lockton Companies
Kansas City Series of Lockton Companies, LLC
Lockton Financial Advisors, LLC
Lockton Investment Advisors, LLC
Mobility Services International, LLC / "MSI"
Plan Benefit Services, Inc. / Fringe Benefit Group
PMW Technologies / "PeopleMatter"
Reliance Standard Life Insurance Company
Strategic Management Decisions, LLC / "SMD"
TALX / ACA Management Platform - Schedules A & B
TALX / ACA Tax Form Service - Schedules A & B
TALX / Equifax Tax Credit (WOTC) - Schedules A & B
TALX / Onboarding Services - Schedules A & B
TALX Corporation
Trustmark Insurance Company
United HealthCare Services, Inc.
Wells Fargo
ZipRecruiter, Inc.
Vantiv, LLC
Protiviti Inc.
MicroStrategy
Compeat, Inc.
High Impact Technologies, Inc.
XO Communications
SQUIRREL Systems, G.P.
Pomeroy IT Solutions Sales Co., Inc.
MarketingVitals.com
Iron Mountain Information Management, Inc.
Retail Technology Group, Inc.
Elavon, Inc.
Compeat, Inc.
BullsEye Telecom, Inc.
j2 Global, Inc. / eFax Corporate
Spinnaker Support, LLC
Dish Network LLC
Windstream Hosted Solutions, LLC
TierPoint Hosted Solutions, LLC / fka Windstream Hosted Solutions, LLC
AT&T Mobility National Accounts LLC
Sprint Solutions, Inc.
Genisys Group, Inc. / Vision Mimix
Agilysys WMX
Corporate IT Solutions, Inc.
Genisys Group, Inc. / IBM System Relocation & Mover Services
Food Genius Inc.

Dye, Van Mol & Lawrence / "DVL"
University of Kentucky
Ozworth, Inc. / Re: Jerrod Niemann
Butler, Shine, Stern & Partners, LLC / "BSSP"
Fishbowl, Inc.
Nashville Hockey Club Limited Partnership
American Society of Composers, Authors and Publishers "ASCAP"
rDialogue
Law Signs LLC
American Society of Composers, Authors and Publishers "ASCAP"
Flying Point Media, Inc.
Ink Link Marketing LLC
Consequence of Sound
Campus Commandos, LLC
Cool Springs Mall LLC
TENNESSEE FOOTBALL, INC
Outdoor Nation, LLC
Constant Contact, Inc.
Yelp
Healthy Dining
CS Stars LLC
Marsh ClearSight LLC (formerly CS Stars LLC)
Gallagher Bassett Services, Inc.
Arthur J. Gallagher & Co. Insurance Brokers of California
AdvancePierre Foods, Inc.
American Beverage Marketers
Aramark Uniform and Career Apparel, LLC
Aramark Uniform Services
BFI Waste Systems of North America, LLC
Blount Fine Foods Corp.
Brakebush Brothers, Inc.
Bushman's Inc.
Censea, Inc.
Chef John Folse & Co. Inc.
Chicago Meat Authority, Inc.
Classic Foods, LP
Coca-Cola FoodService "CCF"
Coca-Cola North America Group (formerly "CCF")
Converpack Inc.
CSM Bakery Products NA, Inc.
Custom Foods of America
D&W Fine Pack, LLC
Daisy Brand
Dart Container Corporation
Dole Packaged Foods LLC
Double B

Dr. Pepper/Seven Up, Inc. ("DPSU")
East-West Inc.
East-West Inc.
Ecolab, Inc.
Gessner Products Co., Inc.
H.J. Heinz Company, LP
Halperns Steak and Seafood Company LLC
Hofseth
Imperial Frozen Foods
Interface Security Systems, LLC
Interplast Group - IBS Divison
Interplast Group LTD.
Interstate Gas Supply, Inc.
J Bar B Foods
JBS USA LLC
Kagome Inc.
Kenneth O. Lester Company, Inc. dba PFG Customized Distribution
Ken's Food Service
Kraft Foods Group, Inc.
Lamb Weston
Land O'Lakes
Lyons Magnus
Mazzetta
McCain Foods USA, Inc.
Mondelez International
Multiexport Foods, Inc.
Newly Weds Foods
North Hampton Farms
Novolex Holdings, Inc.
NRA Solutions (ServSafe)
NSF International Food Safety LLC
NuCO2, LLC
Ocean Spray
Pineland Farms Company
Produce Alliance, LLC
Protection One Alarm Monitoring, Inc.
Republic Services National Accounts, LLC (formerly BFI)
Rich's
Rothbury
Rothbury Farms
Royal Paper Products, Inc.
Rudy's Tortillas
S&D Coffee, Inc.
Sargento Foods, Inc.
Seaboard Foods, LLC
Staples Contract & Commerical, Inc.

Steve Roberts Originals
Stevinson Ham Company, Inc.
Sugar Foods Corporation
SugarCreek Packing Co.
Tennessee Cheesecake Inc.
Turano Baking Company
Tyson Fresh Meats
Volflex, Inc.
Volflex, Inc.
WEI SALES LLC
Winco

CMAC Inc.
LG Enterprises, LLC

**Top 30 Creditors**

National Retail Properties
Cintas Corporation No 2
Republic Services, LLC
dba REMCO
BullsEye Telecom Inc
Coca Cola - Dr Pepper Fairshare
Ecolab Pest
Store Capital
Brink's Incorporated
Printed Images, Inc.
Reed Smith LLP
AR Global
Compeat Inc
dba People Matter Billing
VEREIT
Butler, Shine, Stern & Partner
Dykes Restaurant Supply
Outdoor Nation LLC
Squirrel Systems G.P.
AO Smith Corporation
Aramark Uniform & Career Appar
IA Management LLC
Whitex Financial Inc
Warren Logan's Ohio LLC
Blair Manassas, LLC
Moody's
NSF International Food Safety,
John E Lewis
2 Combs Enterprises Inc

Sang S. Yi & Young Ae Yi

**Directors & Officers**
Samuel Borgese
Edmund Schwartz
Philip E. Berney
Stephen C. Dutton
Michael P. O'Donnell
Stanley de J. Osborne
J. David Karam
William Sirignano
Robert A. Dennison, III
John Laporte
Michelle Zavolta
Len Van Popering
Maria Rivera

**Equity Holders**
Kelso Investment Associates VIII, L.P.
KEP VI, LLC

**Insurance Providers and Related Parties**
Agri General Insurance Co.
ACE American Insurance Co.
AXIS Surplus Insurance Co.
Hartford Fire Insurance Co.
Continental Casualty Co.
American Guarantee and Liability Insurance Co.
Essex Insurance
North Rock Insurance Co.
Hanseatic Insurance Co.
American Bankers Insurance Co.
Travelers
Hartford Insurance
Certain Underwriters at Lloyds
Ironshore Specialty Insurance Co.
Starr Surplus Lines Insurance Co.
Chubb Custom Insurance Co.
General Security Indemnity Co. of Arizona
Scottsdale Insurance Co.
US Specialty Insurance Company
Beazley Group
National Union Fire Ins. Co. of Pittsburgh
AIG
HCC Global

XL Specialty Insurance Co.
Freedom Specialty Insurance Co.

**Lenders and Lenders' Fund Managers**
JPMorgan Chase Bank, N.A.
Credit Suisse AG, Cayman Islands Branch

**Noteholders and Related Parties**
Macsen Holdings Limited
FS Investment Corporation
Race Street Funding LLC
Cobbs Creek LLC
GSO / Blackstone Debt Funds Management LLC
Burholme Funding LLC
Dunlap Funding LLC
FS Investment Corporation III
Carl Marks Management Company, LLC
Marblegate Special Opportunities Master Fund, L.P.
P Marblegate LTD
Morgan Stanley Investment Management Inc.
B4301 First Republic Bank
Macquarie Bank LTD
Marblegate Special Opportunities Mas Fund LP
WFA PCL Collateral Account VII Peaks Co-Optivist Income
Euroclear Bank
Pravin D Panchal and Joan Panchal JTWROS
ISS/3426/Guggenheim Investments
Robert W Huiskamp TTEE Robert W Huiskamp Trust
Storm Field & Debra Field JTWROS
George M Tharakan
Nelson Martinez & Maria Elena Martinez JTWROS
Adrian E Marrero
Pamela Field
Amy K Miller Rev Inter Vivos Trust Dtd 6/23/2010
Franklyn Field Dec'l Trust
Margaret A Michael Rev Liv Tr U/A Dtd 9/2/99
Peter L Klausner
Pamela Field & Elise Kasell JTWROS
J Fortner & M Berg Ttees Fbo Kathleen Fortner Tr
Barbara L Gross
Uzi Kraus
NFS/FMTC Rollover IRA
Morley Klausner
Michael Allan Krueger & Nanette Edith Krueger
A. Edward Miller Tr Fbo Susan Miller U/A Dtd 10/24/91
Saruro Ltd C/O Freites

Nfs/Fmtc Rollover IRA Fbo Margaret H Nevins
Pamela Field & Claire Berkowitz Jtwros
Saruro Ltd
Brownstone Investment Group, LLC
C Johnson & D Lebell TTEE Ventura Emergency Physicians 4
Donald A Nelson Li-Chiu C Nelson Jt Ten
Thyra Moller 2003 Trust UA Jan 05 2004
Evgeny Bernshteyn
Stephen Louis Welker
Danhdro Ltd
Sammy F Snodgrass
James M English III & Wayne M English Jt Ten
Applied Medical Research Inc.
Sterne Agee & Leach Inc. C/F Basil Santini R/O IRA

**<u>Landlords</u>**
Rainbow Ventures, LLC
PTCK, LLC
Warren Logan's Ohio LLC
Well Made, LLC
Genevieve Bratschie
U-Gas Investments
Hamilton Chase - Gilbert, LLC
Raymond/Simon/Jeanette Abdelmalak (Multiple)
Bow G. Jung and Ying-Fung Jung
The Village of Allen
Cambridge Court, LLC
Logan's Lot, LLC
Cole Properties
GFP Austin, LLC
LP 123 Investment, LLC
Z Brothers, LLC
Himaloy, LLC
National Retail Properties
JB Income Realty Orlando, LP
American Realty Capital Properties
Cole Properties
PBK Property Management VA LLC
James L. Schorr and Barbara A. Schorr
Brixmor GA Wilkes-Barre LLP
National Retail Properties
Cole Properties
Sherwood Properties, LLC
DAR Properties Fifteen, LLC
GGP - Mall of Louisiana
Cole Properties

American Realty Capital Properties
Zoshe Realty LLC
Stafford Arkwright, LLC
Cole Properties
Banco Do Brasiil
Spirit SPE Loan Portfolio 2013-2, LLC
Dixie Associates
Sang S. Yi & Young Ae Yi
John M Rife
R. Wesley Jordan
CBL & Associates Limited Partn/Eastgate
WHC Realty
2 Combs Enterprises, LLC
Bernard Leviton
Cole Properties
Centro NP Holdings 10 SPE, LLC
First Team Properties, LLC
Paddock Center/Logans LLC
Charles R Woodard (Rent)
Hairdar Properties
AO of Florida, LLC (Rent)
M &T Bank
National Retail Properties
American Realty Capital Properties
Sang & Young Yi
American Realty Capital Properties
American Realty Capital Properties
Lafayette Parish School Board
Federal Realty Investment Trust
Resource Holdings
Royal Coachman, LLC
American Realty Capital Properties
Gloria Stephens Sobhani and Morris Sobhani
Townsen 1960 Associates LP
American Realty Capital Properties
Brixmor-Lakes Crossing, LLC
National Retail Properties
National Retail Properties
Bluegrass Steaks
National Retail Properties
GLS Portage Limited Liability
W R Logan's, LLC
The Auburn Mile 2
337 Loop LLC
Inland TRS Property Mgmt
Ardmore of Ohio, Ltd.

Airport Associates, LP
The Barber Companies
American Realty Capital Properties
SPM Real Estate Florence, LLC
Cole Properties
RLV Millenium Park
RMRTN, LLC
American Realty Capital Properties
Widmer Place
Kimco Riverview, L.L.C.
Store Capital
Simon Property Group
Spotsylvania Mall Company
EK 2013 Pensacola LLC
Ramco Jacksonville, LLC
WRI  Ridgeway
Miller Land Partnership
National Retail Properties
National Retail Properties
American Realty Capital Properties
Lansing Mall Partners
Sherwin Family Partnership
Manchester Equities, LP
KSK Scottsdale Mall LP
Otis Warren Mgmt. Inc.
National Retail Properties
LPF 100 Oaks Inc (Rent)
RPAI US Management, LLC
Highway 150 LLC
National Retail Properties
RDF 230 Loop 820&199 Lake Worth TX,LL
Seritage SRC Finance, LLC
Janaf Shopping Center, LLC
Patrick & Preston Madden
Shark Properties
American Realty Capital Properties
IA Management LLC
Cole Properties
Blair Manassas, LLC
Town & Country Shopping Centers
Spirit Realty Capital/Cole Properties
501 Albertoni, LLC
IA Management LLC
S & K Enterprises, Inc.
Cedargrove Opportunities, LLC
Pierre Bossier Mall, LLC

Cross Island Land T, LLC
Landing at Arbor Place
Nashville West, LLC
American Realty Capital Properties
American Realty Capital Properties
American Realty Capital Properties
American Realty Capital Properties
National Retail Properties
Vestar Arizona XXXI, LLC
A.W.G. Southgate LLC
Lynne Alva Fausset, Trustee
Bernard Leviton
IMI LLC
National Retail Properties
La Frontera Village LP
American Realty Capital Properties
Crossroads Holdings, LLC
Plainfield Lot 2 LLC
Drury Development Corporation
National Retail Properties
American Realty Capital Properties
75-82-319 Intersection LLC (Re
National Retail Properties
National Retail Properties
Store Capital
Bernard Leviton
Gadsden Motor Inn, Inc.
National Retail Properties
Store Capital
240 Conference Associates, LLC
Mary E. LeFriant
M&F Athens II, LLC
Drury Development Corporation
MBD Limited Co.
NTS Bluegrass Commonwealth Par
Fayette Plaze CMBS, LLC
Cammer, LLC
Wheatley Family Trust
Brixmor GA Springdale/Mobile Limited Partnership
Dauzat Investment
130 Chandlet Dickson TN, LLC
Store Capital
Spirit SPE Loan Portfolio 2013-2, LLC
South End Apts, Inc.
Cole Properties
American Realty Capital Properties

Ramco Gershenson Properties,LP
B & V Ventures
National Retail Properties
BRE DDR Grandville Marketplace
IA Management LLC
National Retail Properties
Weatherford Dunhill GL LLC
Klauer Enterprises, LLC
American Realty Capital Properties
Sooner Town Center, LLC
Walnut Sq Associates
Store Capital
Cole Properties
G & H Development, LLC
Store Capital
Cole Properties
LSREF3 Spartan (Genesee) LLC
Central Plaza Dunhill, LLC
Excel Trust, LP
IA Lynchburg Wards, LLC
Lloyd Crossing Shopping Center, LLC
Valley Road Properties, LLC
American Realty Capital Properties
THF Conway Commons
Cinemark USA, Inc.
American Realty Capital Properties
PEJJ, LLC
Maidstone Tulsa, LLC
Inland National Real Estate Svcs, LLC Bldg #75038
National Retail Properties
National Retail Properties
Cressy Land Planning Assoc.
Drury Development Corporation
Health Properties Investments
Blazon, LTD
RC Amarillo Inv LLC
Blue Mountain IPG Associates,
Xentury City Development
Store Capital
Store Capital
Ohio Cty Devel Auth
National Retail Properties
Biloxi Creek, LTD
Royal Casino Corp
National Retail Properties
National Retail Properties

La Plaza Mall (Rent)
Geenen Dekock Properties
Store Capital
Northpark Mall
1210 Illinois Rd, LLC
National Retail Properties
CBL/Parkdale Crossing,LP (Rent
Hixson Mall, LLC
Urban E. Mathieu, JR (Rent)
THF-D Charleston Development
BAI Rivergate,  LLC
HAP Property Owner LP
Geenen Dekock Properties
Huntington Mall Company
Akin Holdings V Gadsden LLC
Mall Del Norte, LLC
Fiesta Trails Hilltop Pad
Armory Hills Oaks, LLC (HG Hill)
HG Hill Realty Company
IA Management LLC
IA Management LLC
National Retail Properties
CLNM Holdings, LLC
St. Clair Square

**<u>Litigation Parties</u>**

GRAY ALEXIS
ANDERSON  ALLEN
HOWARD  ANGELA
WHITE ASHLYN
BRADFORD CAREY
PARDUE CATHY
ELCHERT CHAD
JOHNSON-DICKERSON
CHEYANNE
WOODRUFF CYNTHIA M
NANCE DANIEL E
SIMMS DANIELLE
JOHNSON DEMARIS
WILSON DESIREE
PRICE DIANE
RACKLEY DONNA
BROWN  ELESS
PETERS  FERNELLA

PEARSON FRED E
HOLT GORDON E JACKSON
JAMES L  JR
SWARTZ GREGG I SHAVITZ
JUSTIN
GARCIA  IVAN
BOLANOVICH JOHN
JONES  JONATHAN
DICKERSON KATHERINE
MILLER  KATHERINE
MORRIS KENNETH
MILIGI KEOTA
NEEL KEVIN
ARNOLD MERLE
ESTREMERA OMAR
BURSEY PAM
KEGLER PHILIP
JOHNSON RANDY
MUMFORD ROLAND
RODRIGUEZ SANTIAGO
HAWKINS STEVE
HALL  SYLVIA
BROWN TAMELA
CROCHET TAMMY
WILSON TAMMY
JENKINS TERRY
HOOKS TRESA
SCHUETTE VALARIE
BELL VILMA
MELVIN  WANDA
BOLEN WILLIAM (CODY)
BOLEN WILLIAM
KLUTTS THOMAS
PULLIAM STACEY
LEWIS DORIS
PARKER GINA
FLEMING SUSAN
JOHNSON LORETTA
OAKMAN LORRAINE
DALLAS DEBRA
FRY SARAH
NASH VERONICA
BELCHER BARBARA

RAUCH BEVERLY
RAGSDALE ALICE
WITT THOMAS
TINKER RANAE
HOWELL TALBIS
TEW MELVIN
COSHATT JENNIFER
FISH DENISE
CLARK BETTY
WATSON GABRIELLE