## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ROADHOUSE HOLDING INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16 -11819 (___)<br><br>(Joint Administration Requested) |

### DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 363(c), 503(b)(1), 1107(a), AND 1108 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO HONOR PREPETITION OBLIGATIONS TO CUSTOMERS AND OTHERWISE CONTINUE CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing, but not directing, the Debtors, in their discretion, to pay, honor or otherwise satisfy prepetition obligations to customers and to otherwise continue prepetition customer practices and programs in the ordinary course of business, (b) authorizing, but not directing, the Debtors, in their discretion, to pay, honor or otherwise satisfy prepetition processing costs and fees associated with these practices and programs, and (c) authorizing and directing the Debtors' banks and financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing. In support of this motion, the Debtors submit the *Declaration of Keith A. Maib in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), which was filed substantially contemporaneously herewith. In further support of this motion, the Debtors respectfully state as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716). The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

## Jurisdiction and Venue

1.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.       Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The bases for relief requested herein are sections 105(a), 363(b), 503(b)(1), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 9013-1(m).

## Background

4.       On the date hereof (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner or statutory committee has been appointed in these chapter 11 cases.

5.    Additional information regarding the Debtors, including their business operations, corporate and capital structure, and the events leading to the Petition Date, is more fully set forth in the First Day Declaration.

## The Customer Programs

6.    Prior to the commencement of these chapter 11 cases, in the ordinary course of business, and as is customary in the food and beverage industry, the Debtors instituted and engaged in certain activities to develop and sustain a positive reputation and relationship with their patrons and customers.  To that end, the Debtors implemented various customer programs and policies (collectively, the "**Customer Programs**") designed to ensure customer satisfaction, develop and sustain customer relationships and loyalty, improve profitability, and generate goodwill for the Debtors and their products and services.

7.    The Customer Programs are integral to ensuring the smooth functioning of the Debtors' business.  As owners, operators, and franchisors of many casual dining locations, the Debtors have developed and designed various marketing strategies to generate business in the face of sophisticated competition.  Among these strategies are certain Customer Programs, promotions, and practices designed to enhance revenues by, among other things, encouraging repeat business and developing new customer relationships.  As of the Petition Date, the Customer Programs include:  (i) paid and promotional Stored Value Cards; (ii) the Nut-E Club; and (iii) various coupon and discount programs.[2]

8.    The Debtors believe that they must promptly assure customers of their continued ability to satisfy prepetition and postpetition obligations under the Customer Programs to maintain their valuable customer base, goodwill, and a myriad of other important benefits

---

[2]    Capitalized terms used but not yet defined herein shall have the meanings ascribed to them below.

derived therefrom, following the commencement of the Debtors' chapter 11 cases.   Any inability of the Debtors to promptly honor these obligations would impair goodwill and may lead to the loss of customer patronage.   Continued use of the Customer Programs, on the other hand, will enable the Debtors to protect their customer base and revenue growth opportunities. Consequently, the Debtors seek the authority to maintain and administer the Customer Programs in the ordinary course of business.

9.     The following are general descriptions of the Debtors' primary Customer Programs:

**A.     Stored Value Cards**

10.    The Debtors distribute stored value cards (each a "**Stored Value Card**") for use in the Debtors' (and their franchisee's) restaurant locations.   Stored Value Cards may be purchased at the Debtors' restaurants, online on the Debtors' website, or from various other resellers that are authorized to issue Stored Value Cards.   Once purchased, a Stored Value Card may be used like cash for purchases at the Debtors' restaurants, but may not be redeemed for cash or monetary credit except under limited circumstances where required by applicable state law.   There is no limit on the number of Stored Value Cards that can be purchased, but there is a limit of $500 that may be loaded onto any individual Stored Value Card.

11.    Upon purchase, the Stored Value Cards are "activated" and may then be redeemed at any time with no expiration date.   The Debtors maintain detailed transaction data regarding the sale of Stored Value Cards on their Stored Value Card processor's system. However, the Debtors do not track and have no information about the identity of the holders of Stored Value Cards.   Based on a review of their business records and prior holder activity, the

Debtors expect that up to $12 million of purchased Stored Value Cards are outstanding and may be redeemed at Logan's branded restaurant locations.

12.    In connection with administering the Stored Value Cards program, the Debtors use Ceridian Stored Value Solutions, Inc. ("**SVS**"), on an exclusive basis, both to produce the actual Stored Value Cards and to process Stored Value Cards transactions at the point of sale (along with other ancillary support services).    SVS is paid approximately $12,000.00 per month for per swipe transaction fees, balance inquiry fees, and merchant authorization fees. The Debtors estimate that SVS is owed approximately $30,000.00 as of the Petition Date for services rendered in the months of June and July and for the stub-period of August and, by this Motion, seek authority to honor their prepetition obligations to SVS to ensure that there is no disruption in services from their exclusive Stored Value Cards provider and processor.

13.    The Debtors seek the authority to continue to honor the Stored Value Cards in the ordinary course of business during the pendency of these chapter 11 cases, whether purchased before or after the Petition Date, consistent with past practices.

## B.    Coupon and Discount Programs

14.    The Debtors, from time-to-time, engage in the distribution of coupons and promotional materials to customers that are redeemable for a certain dollar amount (usually $3 off $10 or $5 off $20) or percentage (usually up to 25% off) discount.    A significant avenue of distribution is through direct mailing of coupons, and the Debtors have currently contracted for direct mailings to approximately 4.8 million individuals through outside vendors (such mailings are paid for in advance and no amounts are owed as of the Petition Date for them).    The Debtors believe that the coupons distributed through their direct mailing program results in several million dollars of incremental revenue (net of the applicable discount).    Another manner of

distribution for coupons is through distribution at the store-level when managers distribute coupons to local community organizations like sports leagues, churches, and social clubs.

15.     In addition to selling Stored Value Cards, the Debtors also distribute promotional "Mystery Reward Cards" at various community events.  The Mystery Reward Cards are Stored Value Cards, but are treated like coupons when presented at the point of sale.  These cards are pre-loaded with values ranging from $5 to $200, but 99.7% of such Stored Value Cards hold a value between $5 and $20.

16.     Finally, from time to time, the Debtors also provide promotions in connection with the sale of their Stored Value Cards, which provide "bonus" value in excess of the purchased amount.  For instance, the Debtors' current promotion provides parties purchasing Stored Value Cards online through September 15, 2016 with a $10 "Bonus eCard" for every $50 spent, which is redeemable through September 30, 2016.

## C.     Nut-E Club

17.     The Debtors maintain a loyalty program called the "Nut-E Club" for customers of the Debtors' restaurants.  The Nut-E Club has approximately 1.1 million members.  Members of this loyalty program receive a coupon for $5 off a $20 purchase when they first join, and members receive weekly offers through email for coupons and other promotions.  The Debtors estimate that these offers have an approximate 1.5-2.5% participation rate and generate between $300,000 and $500,000 in additional revenue per week, net of applicable discounts.

## D.     Franchisee Participation

18.     The Debtors have 26 franchised locations that are operated by two separate franchisees.  Franchisees honor the Stored Value Cards and once a month, SVS initiates a transfer from the Debtors to each franchisee equal to the value of Stored Value Cards that were

honored by the franchisees in the prior month.  Over the past 12 months, the average amount transferred to franchisees on account of Stored Value Cards has been approximately $44,000 per month.  Similarly, the franchisees may honor coupons issued by the Debtors and take a credit against the monthly franchise fees and royalties owed to the Debtors, which amounts are usually *de minimis* in nature.  The Debtors wish to continue these crediting relationships with their franchisees post-petition.  First, the franchisees are important and valuable partners to the Debtors, and the Debtors wish to preserve this valuable relationship.  Second, if this relief is not granted, the franchisees may refuse to honor the Stored Value Cards and the Debtors' coupons.  This would lead to inconsistent results for customers across Logan's branded restaurants and, further, could potentially result in negative customer experiences, which would negatively impact goodwill and diminish customer experiences.

### Relief Requested

19.    By this motion, the Debtors request authorization, but not direction, pursuant to sections 105(a), 363(b), 503(b)(1), 1107(a), and 1108 of the Bankruptcy Code, (a) to continue, maintain, implement new, and/or terminate any Customer Programs, in their discretion, in the ordinary course of business, (b) to pay, honor, and otherwise satisfy, at the Debtors' discretion, their prepetition obligations thereunder in a manner consistent with past practice, and (c) to pay, honor, or otherwise satisfy prepetition processing costs and fees associated with the Customer Programs, including to SVS (collectively, the "**Customer Obligations**").   The Debtors also request the Court to authorize and direct the Debtors' Banks to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing.

<u>**Basis for Relief**</u>

**A.    Honoring the Customer Obligations is in the Best Interests of the Debtors' Estates**

20.    Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business. *Id.* § 363(b). The Debtors submit that the use of estate funds for payment of certain of the Customer Obligations is permitted by sections 503(b)(1) and 363(b) as necessary costs of preserving the estates. Honoring the Customer Obligations will enable the Debtors to retain, maintain, and create valuable customer relationships, which will strengthen the Debtors' business and prospects for successfully prosecuting these chapter 11 cases.

21.    In addition, under section 363(b), a court may authorize a debtor to pay certain prepetition claims. *See In re MPC Computs., LLC*, No. 08-12667 (Bankr. D. Del. Nov. 10, 2008) (authorizing, pursuant to section 363, the payment of prepetition claims of suppliers)*; In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (referring to the court's earlier order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.* (*In re James A. Phillips, Inc.*), 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow a contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractor to release funds owed to debtors). To do so, "the debtor must articulate some business justification, other than the mere

appeasement of major creditors." *Id.; see also Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063 (2d Cir. 1983).

22.    Further, sections 1107(a) and 1108 authorize a debtor in possession to continue to operate its business.  11 U.S.C. §§ 1107(a), 1108.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").  The *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

23.    Further, to supplement the explicit powers described above, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the Debtors is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Under 11 U.S.C. § 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the Debtors." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (*citing Ionosphere Clubs*, 98 B.R. at 177).  The Debtors submit that honoring their prepetition obligations under the Customer Programs, and the continuation of such programs in the ordinary course of business on a postpetition basis, is imperative to the Debtors' ongoing operations and their continued viability.

24.     The necessity of the Customer Programs in the Debtors' industry cannot be overstated and many of the Customer Programs are standard practice.   If the Debtors' obligations under the Customer Programs are not honored, the Debtors risk alienating their customers and encouraging them to obtain services from the Debtors' competitors.   This is particularly critical, as the Debtors are attempting to increase their customer engagement, frequency, and retention.   These efforts will be stymied if customers are unable to take advantage of the very inducements that the Debtors are utilizing to drive customer traffic.   The prepetition obligations owed by the Debtors pursuant to the Customer Programs qualify for postpetition payment because if the Debtors do not honor these obligations, the Debtors' hard-earned reputation and brand loyalty will be adversely affected, irreparably harming the Debtors' prospects to maximize value through these chapter 11 cases.   *See In re Coserv, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (noting that one example where a debtor-in-possession can only fulfill its fiduciary duty by pre-plan satisfaction of a prepetition claim is "prepetition . . . claims of . . . a customer which, if not honored, could so harm the Debtor's good will as to destroy its going concern value"); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) (holding that "such a failure to pay and its consequent loss of customer base would impair value of the business on either a going concern or liquidation basis").

25.     Simply put, the continuity, viability, and revitalization of the Debtors' businesses is dependent upon the development and maintenance of the loyalty of their customers.   The Debtors expect to have sufficient resources available to maintain all of their Customer Programs, to the extent described herein.   Courts in this district have routinely recognized that retaining patronage and customer loyalty is critical to a debtor's prospects for a successful

reorganization and, accordingly, routinely approve relief similar to that requested herein. *See, e.g., In re F&H Acquisition Corp.*, Case No. 13-13220 (KG) (Bankr. D. Del. Dec. 17, 2013); *In re Namco, LLC*, No. 13-10610 (PJW) (Bankr. D. Del. March 27, 2013); *In re Friendly Ice Cream Corp.*, No. 11-13167 (KG) (Bankr. D. Del. October 6, 2011).

26.    Considering the potential loss of competitiveness, goodwill, and relationships, and the resulting negative impact on the Debtors' business and reorganization efforts, the Debtors submit that the requested relief is in the best interest of the Debtors, their estate, and creditors, and therefore the motion should be approved in all respects.

**B.    The Court Should Authorize Financial Institutions to Honor Checks and Transfer Requests Regarding Customer Obligations**

27.    The Debtors represent that they have sufficient funds to honor the Customer Obligations described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.  As a result of the commencement of these chapter 11 cases and in the absence of an order of the Court providing otherwise, the Debtors' checks, wire transfers, and electronic fund transfers in respect of the Customer Obligations may be dishonored or rejected by financial institutions.  Under the Debtors' cash management system, the Debtors can readily identify checks or transfers as relating directly to payment of the Customer Obligations. Accordingly, the Debtors believe that prepetition checks and transfers other than those for the Customer Obligations will not be honored inadvertently.  The Debtors submit that any financial institution should be authorized to rely on the representations of the Debtors with respect to whether any check drawn or transfer request issued by the Debtors prior to the Petition Date should be honored pursuant to this motion.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

28.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to use property of the estate within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.   Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.   *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

29.     As described above, the Customer Programs are integral to the Debtors' continued operations because they are necessary to maintain and build the confidence and goodwill of the Debtors' customers.   The Debtors are at a critical juncture at which they must make every effort to retain customer support, drive revenues, and maximize cash flow.   The Debtors' inability to honor the Customer Programs could materially impair these efforts and thwart the Debtors' chapter 11 cases before they have had a chance to begin.   Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003 to support the relief requested on the terms described herein.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

30.     To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h).

### Reservation of Rights

31.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the proposed order is intended or should be construed as: (a) an admission as to

01:18789705.10

the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.  The Debtors expressly reserve all of their rights with respect to the foregoing matters.

<u>**Notice**</u>

32.    Notice of this motion has been provided to the following parties:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney General for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel to JPMorgan Chase Bank, N.A., as Administrative Agent under the Credit Agreement, dated as of October 4, 2010; (vi) counsel to BOKF, N.A., as Trustee under that certain Senior Secured Notes Indenture, dated October 4, 2010; (vii) counsel to Wells Fargo Bank, N.A., as Trustee under the Series 2015-1 Supplemental Indenture and Series 2015-2 Supplemental Indenture, each dated as of October 15, 2015, and the Second Series 2015-1 Supplemental Indenture, dated as of October 22, 2015; (viii) each of the counsel to the noteholders who are party to the Restructuring Support Agreement, dated as of August 8, 2016, and who are proposed debtor in possession lenders; (ix) the Debtors' cash management banks; and (x) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis).  Notice of this motion and any order entered on this motion will be served as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Previous Request**

33.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.


WHEREFORE the Debtors respectfully request that the Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated:    Wilmington, Delaware<br>August 8, 2016 | */s/ Elizabeth S. Justison*<br>**YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Robert S. Brady (No. 2847)<br>Edmon L. Morton (No. 3856)<br>Ryan M. Bartley (No. 4985)<br>Elizabeth S. Justison (No. 5911)<br>Norah M. Roth-Moore (No. 6125)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Tel:    (302) 571-6600<br>Fax:    (302) 571-1253<br>Email:  rbrady@ycst.com<br>             emorton@ycst.com<br>             rbartley@ycst.com<br>             ejustison@ycst.com<br>             nroth-moore@ycst.com<br><br>*Proposed Counsel for the Debtors and Debtors in Possession* |

**<u>EXHIBIT A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ROADHOUSE HOLDING INC., *et al.*,[1] | Case No. 16-11819 (___) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. ___** |

## ORDER PURSUANT TO SECTIONS 105(a), 363(c), 503(b)(1), 1107(a), AND 1108 OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO HONOR PREPETITION OBLIGATIONS TO CUSTOMERS AND OTHERWISE CONTINUE CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS

Upon the motion (the "**Motion**")[2] of the Debtors, pursuant to sections 105(a), 363(b), 503(b)(1), 1107(a), and 1108 of the Bankruptcy Code, for an order (a) authorizing, but not directing, the Debtors, in their discretion, to pay, honor or otherwise satisfy certain prepetition obligations to customers under, and to otherwise continue, the Customer Programs in the ordinary course of business, (b) authorizing, but not directing, the Debtors, in their discretion, to pay, honor, or otherwise satisfy prepetition processing costs and fees associated with the Customer Programs, and (c) authorizing and directing the Debtors' Banks to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).  The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and

the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of

the Motion and opportunity for objection having been given under the circumstances; and this

Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein and that such relief is in the best interests of the Debtors, their

estates, their creditors, and all parties in interest, and is necessary to avoid immediate and

irreparable harm to the Debtors and their estates; and any objections to the Motion having been

withdrawn or overruled on the merits; and upon all of the proceedings had before this Court and

after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.    The Motion is granted as set forth herein.

2.    The Debtors are authorized and empowered, but not directed, in their discretion,

pursuant to sections 105(a), 363, 503(b), 1107(a), and 1108 of the Bankruptcy Code, to

continue, renew, replace, implement, modify, and/or terminate the Customer Programs, as they

deem appropriate, in the ordinary course of business.

3.    The Debtors are authorized, but not directed, in their discretion, to pay, honor, or

otherwise satisfy all prepetition Customer Obligations, in the ordinary course of business, in

the same manner and on the same basis as the Debtors honored such obligations prior to the

commencement of these chapter 11 cases, including, without limitation, any prepetition

processing costs and fees associated with the Customer Programs; provided, however, that

SVS shall not be paid in excess of $36,000.00 on account of prepetition amounts owed absent

prior authorization of this Court.

4.      The Debtors' Banks shall be, and hereby are, authorized, when requested by the Debtors in their discretion, to receive, process, honor, and pay any and all checks or electronic fund transfers drawn on the Debtors' bank accounts on account of the Customer Programs, whether those checks were presented prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

5.      The Debtors' Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Order.

6.      Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as (a) an admission as to the validity, priority, or amount of any claim against the Debtors or their estates or an approval or assumption of any agreement, contract, lease, or Customer Program pursuant to section 365 of the Bankruptcy Code, or (b) a waiver of the rights of the Debtors and their estates, or shall impair the ability of the Debtors and their estates, to contest the validity, priority, and amount of any claims or any payment made pursuant to this Order.

7.      Notwithstanding anything to the contrary in this Order, any payment made or to be made under this Order, and any authorization contained in this Order, shall be subject to the requirements imposed on the Debtors under the orders of this Court approving the Debtors' debtor-in-possession financing facilities and use of cash collateral and budget in connection therewith.

8.      The requirements set forth in Bankruptcy Rule 6003(b) have been satisfied.

01:18789705.10

3

9.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

10.     The requirements of Bankruptcy Rule 6004(a) are waived.

11.     The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

12.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: _____
         Wilmington, Delaware

         _____
         UNITED STATES BANKRUPTCY JUDGE

01:18789705.10

4