**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ROADHOUSE HOLDING INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16 -11819 (___)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO**
**SECTIONS 105(a), 363(b), 507(a)(8), AND 541 OF THE BANKRUPTCY CODE**
**(I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION TAXES AND FEES**
**AND (II) AUTHORIZING FINANCIAL INSTITUTIONS**
**TO PROCESS AND CASH RELATED CHECKS AND TRANSFERS**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")

hereby move the Court for entry of an order, pursuant to sections 105(a), 363(b), 507(a)(8), and

541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"),

(i) authorizing, but not directing, the Debtors, in their discretion, to remit and pay (a) sales, use,

property, income, franchise, and other similar taxes (collectively, the "**Taxes**") and (b) fees for

licenses, permits, and other similar charges and assessments (collectively, the "**Fees**"), including

any penalties and interest thereon, to various federal, state, county, and city taxing and licensing

authorities (each, an "**Authority**," and collectively, the "**Authorities**"), and (ii) authorizing the

Debtors' banks and financial institutions (collectively, the "**Banks**") to receive, process, honor,

and pay all checks and electronic payment requests relating to the foregoing.  In support of this

motion, the Debtors submit the *Declaration of Keith A. Maib in Support of Chapter 11 Petitions*

*and First Day Relief* (the "**First Day Declaration**"), which was filed substantially

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number,
are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337);
Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse
of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).  The location of the Debtors' corporate
headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

contemporaneously herewith.  In further support of this motion, the Debtors respectfully state as follows:

**Jurisdiction and Venue**

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

**Background**

4.     On the date hereof (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or statutory committee has been appointed in these chapter 11 cases.

01:18793323.8

5.      Additional information regarding the Debtors, including their business operations, corporate and capital structure, and the events leading to the Petition Date, is more fully set forth in the First Day Declaration.

**The Debtors' Taxes**

6.      In the ordinary course of business, the Debtors incur or collect and remit a variety of Taxes, including sales and use, personal property, income, franchise, net worth, and other similar Taxes.  The Debtors also incur various business license, permit, and other Fees and assessments in connection with obtaining the licenses and permits that are necessary to operate their businesses.  The Debtors remit such Taxes and Fees to the Authorities in accordance with applicable laws.  The Taxes and Fees are paid monthly, quarterly, or annually to the respective Authorities, depending on the given Taxes or Fees and the Authority to which they are paid.  The Debtors estimate that, exclusive of any Audit Amounts (as defined below), the total amount of prepetition Taxes and Fees owing to the Authorities will not exceed approximately $7.75 million.

**A.      Sales and Use Taxes**

7.      The Debtors incur or collect and remit an assortment of sales, use, and other similar taxes in connection with the operation of their restaurants.  In many states where the Debtors operate, they are required to collect sales taxes from purchasers of their products and services on a per sale basis and then remit sales taxes to the applicable Authority.  Additionally, the Debtors may incur and collect use taxes when they purchase taxable products for which no sales tax was charged by their vendors.  The sales and use taxes collected or incurred are typically remitted to the Authorities in the month or quarter following the month or quarter in which the related transactions occurred.  In general, sales taxes accrue as the Debtors' products are sold and are calculated based upon a statutory percentage of the sale price.  The Debtors paid

01:18793323.8

approximately $50.8 million in sales taxes in 2015 and approximately $25.3 million in sales tax for the first six months of 2016.  The Debtors believe that there are approximately $6 million of sales and use taxes that have accrued but are not yet due as of the Petition Date.

**B.    Property Taxes**

8.    The Debtors incur personal property taxes in many of the jurisdictions in which they operate.  To avoid the imposition of statutory liens on their personal properties, the Debtors typically pay these taxes in the ordinary course on an annual or semi-annual basis, depending on the jurisdiction.  The Debtors estimate that $1.25 million in personal property taxes have accrued and are unpaid as of the Petition Date.[2]

**C.    Income, Franchise, and Net Worth Taxes**

9.    The Debtors pay income, franchise, net worth, and similar types of taxes to certain Authorities to operate their business in the applicable taxing jurisdictions.  The various Authorities assess income, franchise, and net worth taxes in a variety of ways (minimum tax, tax on income, tax on capital, tax on gross receipts or margin, *et cetera*).  The Debtors generally make estimated payments for income, franchise, and net worth taxes on a quarterly basis, with the requirement to remit quarterly estimated taxes in some cases.  The Debtors estimate that, as of the Petition Date, approximately $150,000.00 of income, franchise, and net worth taxes have accrued and are unpaid.

**D.    Business License, Permits, and Other Fees**

10.    Many Authorities require the payment of Fees for the right to conduct business within their jurisdictions.  Those charges may include fees for business licenses, annual reports,

---

[2]    In addition, the Debtors generally operate their restaurants in leased premises, where the underlying leases obligate the Debtors to satisfy real property taxes for those premises.  As a result, the Debtors will be paying real property taxes for their leased premises in accordance with the terms of their leases and section 365(d)(3) of the Bankruptcy Code.

01:18793323.8

permits, liquor licenses, and health and fire inspections.  They are computed in a variety of ways, but are generally flat rate fees and range from $10.00 to $6,500.00, which are paid on a monthly, quarterly, or annual basis, depending on the requirements of the particular jurisdiction.  The Debtors pay hundreds of these Fees per year to different state and local Authorities, and are frequently required to obtain multiple licenses and permits – and pay associated Fees – for each location where the Debtors conduct business in a given jurisdiction.  The Debtors believe that approximately $125,000.00 in Fees that relate (in whole or in part) to pre-Petition Date periods may be outstanding.

**E.     Federal and State Audits**

11.     In addition, pursuant to GAAP, the Debtors maintain reserves in excess of $250,000.00 to satisfy any additional liabilities that may arise on account of audits related to the Taxes (collectively, the "**Audit Amounts**"); however, this amount includes certain preliminary assessments and is subject to change.  At present, there are at least two active audits with respect to the Debtors' Taxes.  The Debtors seek authority, in their discretion, to satisfy any such Audit Amounts in the ordinary course of business.

**Relief Requested**

12.     By this motion, the Debtors seek authority to pay all Taxes and Fees in the ordinary course of business that were owed to the Authorities prepetition, but were not in fact paid or processed prepetition, or that were paid prepetition in an amount less than is actually owed, or to the extent any such payments made prepetition were rejected, lost, or otherwise not received in full by any Authority, and to pay any Audit Amounts.[3]  Furthermore, to the extent that any checks, drafts, deposits, or transfers issued or initiated by the Debtors on account of

---

[3]     The Debtors believe that no prepetition amounts that are the subject of this Motion are delinquent, except where payment was timely remitted but was not honored as of the Petition Date.

prepetition Taxes and Fees have not cleared as of the Petition Date, the Debtors also seek an order authorizing the Banks to honor and process such payments.

## Basis for Relief

**A.      The Court Should Permit the Debtors, in Their Discretion, to Pay Outstanding Taxes and Fees and Any Audit Amounts.**

13.      Numerous grounds justify granting the relief requested herein.  First, a portion or all of the Taxes and Fees may be entitled to priority status under section 507(a)(8) of the Bankruptcy Code and, therefore, must be paid in full under any chapter 11 plan.  *See* 11 U.S.C. § 1129(a)(9)(c).  Thus, the Debtors submit that the payment of such Taxes and Fees as requested by this motion will likely affect only the timing of the payments, and not the amounts that would ultimately be received by the Authorities.  Further, paying such Taxes and Fees will give the Authorities no more than that to which they otherwise are entitled under a chapter 11 plan, and will save the Debtors the potential interest expense (and penalties) that might otherwise accrue if the relief requested herein is not granted.

14.      Second, the Debtors' failure to pay the Taxes and Fees could have a material adverse impact on their ability to operate in the ordinary course of business and, thus, harm the Debtors' chapter 11 efforts, to the detriment of all constituents.  For example, the Authorities could initiate audits of the Debtors if the Taxes and Fees are not paid on time, which would unnecessarily divert the Debtors' attention away from the chapter 11 process and result in unnecessary expenses.  Moreover, if the Debtors do not pay such amounts in a timely manner, the Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, seek payment from the Debtors' directors and officers, or pursue other remedies that could materially harm the Debtors' estates and their efforts in connection with these chapter 11 cases.

01:18793323.8

15.     <u>Third</u>, certain of the Authorities might assert that the Taxes are so-called "trust fund" taxes that the Debtors are required to collect from third parties and hold in trust for the benefit of such Authorities.  To the extent that the Debtors collect sales, use, and other Taxes on behalf of the Authorities, such Taxes may not constitute property of the Debtors' estates.  *See Begier v. IRS*, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference because such funds are not property of the debtor's estate).  As a consequence, the Debtors would not have an equitable interest in such Taxes and, assuming they could be identified and traced, such amounts would not constitute property of the Debtors' estates and would not be subject to the automatic stay.  *See City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994).  Accordingly, because the Debtors have no equitable interest in trust fund taxes, payment of any such Taxes does not prejudice the rights of any of the Debtors' other creditors.  *See* 11 U.S.C. § 541(d).  The Debtors should therefore be able to pay any Taxes that constitute trust fund taxes as they become due and payable.

16.     <u>Fourth</u>, even if some of the Taxes would not ordinarily be considered "trust fund" taxes in a particular jurisdiction, sections 105(a) and 363(b) of the Bankruptcy Code authorize the requested relief.  Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]"  11 U.S.C. § 105(a).  Similarly, section 363(b)(1) of the Bankruptcy Code authorizes a debtor to use property of the estate other than in the ordinary course of business after notice and a hearing.  11 U.S.C. § 363(b)(1).

17.     The well-settled "necessity of payment" doctrine also supports the requested relief.  This rule authorizes postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.,*

*Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286, 311 (1882) (articulating a legal theory later termed the "doctrine of necessity" or the "'necessity of payment' doctrine" and holding that payment of a pre-receivership claim prior to reorganization was permitted to prevent stoppage of crucial business relations); *In re Lehigh & N. E. R. Co.*, 657 F.2d 570 (3d Cir. 1981) (adopting the "necessity of payment" doctrine for the Third Circuit); *In re Boston and Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *Southern Ry. Co. v. Flournoy*, 301 F.2d 847, 852 (4th Cir. 1962) ("The principle of necessity of payment [espoused in Miltenberger] has since been carried into different factual surroundings as the basis for granting superiority to business-operating accounts."); *In re Just For Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (granting approval to pay prepetition claims of certain trade vendors which were critical to the debtors' reorganization); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to continued operation of business).

18.    Debtors frequently invoke the necessity of payment doctrine early in a chapter 11 case when preservation of the estates is most critical.  Bankruptcy courts routinely invoke their equitable powers to authorize a debtor to pay certain critical prepetition claims under section 105(a) of the Bankruptcy Code if "authorizing the payment of the prepetition debt creates 'the greatest likelihood of . . . payment of creditors in full or at least proportionately.'"  *In re Structurelite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988); *see also In re Sharon Steel Corp.*, 159 B.R. 730, 737 (Bankr. W.D. Pa. 1993) (stating that to justify payment of a prepetition claim "the Debtor is required to show that the payment is necessary to avert a serious threat to the Chapter 11 process"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr.

S.D.N.Y. 1989) (stating that the "necessity of payment" rule "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor").

19.     Fifth, some states hold corporate officers personally liable for unpaid sales, use, and other taxes in certain circumstances. *See, e.g.*, JOHN F. OLSEN, DIRECTOR & OFFICER LIABILITY: INDEMNIFICATION AND INSURANCE § 3:21 (2003) (stating "some states hold corporate officers personally liable for any sales tax and penalty owed and not paid by the corporation regardless of cause"). To the extent that any such "trust fund" taxes remain unpaid by the Debtors, their officers could be subject to lawsuits or criminal prosecution during the pendency of these chapter 11 cases. Even the possibility of any such lawsuit or criminal prosecution would most certainly distract the Debtors and their officers from their efforts in these chapter 11 cases.

20.     Finally, in numerous chapter 11 cases in this district, courts have exercised their equitable powers under section 105(a) of the Bankruptcy Code to authorize debtors to pay prepetition tax obligations in light of the foregoing considerations. *See, e.g., In re THQ Inc.*, Case No. 12-13398 (MFW) (Bankr. D. Del. Dec. 20, 2012). The Debtors submit that the circumstances of these chapter 11 cases warrant granting similar relief, and that doing so is in the best interests of the Debtors, their estates, and creditors, and therefore should be granted.

**B.     The Court Should Authorize the Debtors' Banks to Honor Payments in Respect of the Taxes and Fees and Any Audit Amounts.**

21.     The Debtors also request that the Court authorize the Debtors' Banks, when requested by the Debtors in their discretion, to receive, process, honor, and pay any and all checks or electronic fund transfers drawn on the Debtors' bank accounts to pay all prepetition obligations described herein, whether such checks or other requests were submitted prior to or

01:18793323.8

after the Petition Date. The Debtors further request that the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to any order of the Court granting the relief requested in this motion.

22.     Any delay in paying the outstanding Taxes and Fees would be detrimental to the Debtors, their creditors, and their estates. Indeed, the Debtors' ability to manage and run their business operations with as little disruption as possible requires, in part, that they remain in good stead with the Authorities in respect of their obligations on account of Taxes and Fees.

23.     Accordingly, for the reasons set forth herein, the Debtors submit that cause exists for granting the requested relief.

**Satisfaction of Bankruptcy Rule 6003 and Waiver of Bankruptcy Rule 6004**

24.     The Debtors seek immediate authorization for the relief requested in this motion. Pursuant to Bankruptcy Rule 6003(b), the Court cannot grant "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days of the filing of the petition unless the relief is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). For the reasons set forth above, the Debtors submit that the requirements of Bankruptcy Rule 6003(b) are met and that the relief requested in the motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

25.     In addition, by this motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). For the reasons set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

01:18793323.8

**Reservation of Rights**

26.     Nothing herein or in the Proposed Order (when and if entered), nor as a result of any payment made pursuant to the Proposed Order (when and if entered), shall be deemed or construed as (a) an admission as to the validity, priority, or amount of any claim against the Debtors or their estates or an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (b) a waiver of any of the rights of the Debtors and their estates, or shall impair the ability of the Debtors and their estates, to contest the validity, priority, and amount of any claim or any payment made pursuant to the Proposed Order (when and if entered).

**Notice**

27.     Notice of this motion has been provided to the following parties:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney General for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel to JPMorgan Chase Bank, N.A., as Administrative Agent under the Credit Agreement, dated as of October 4, 2010; (vi) counsel to BOKF, N.A., as Trustee under that certain Senior Secured Notes Indenture, dated October 4, 2010; (vii) counsel to Wells Fargo Bank, N.A., as Trustee under the Series 2015-1 Supplemental Indenture and Series 2015-2 Supplemental Indenture, each dated as of October 15, 2015, and the Second Series 2015-1 Supplemental Indenture, dated as of October 22, 2015; (viii) each of the counsel to the noteholders who are party to the Restructuring Support Agreement, dated as of August 8, 2016, and who are proposed debtor in possession lenders; (ix) the Debtors' cash management banks; and (x) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis).  Notice of this motion and any order

01:18793323.8

entered on this motion will be served as required by Local Rule 9013-1(m).  The Debtors submit

that, in light of the nature of the relief requested, no other or further notice need be given.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order,

substantially in the form attached hereto as **Exhibit A**, granting the requested relief and such

other and further relief as it deems just and proper.

Dated:    Wilmington, Delaware      */s/ Elizabeth S. Justison*
        August 8, 2016              **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
                                      Robert S. Brady (No. 2847)
                                      Edmon L. Morton (No. 3856)
                                      Ryan M. Bartley (No. 4985)
                                      Elizabeth S. Justison (No. 5911)
                                      Norah M. Roth-Moore (No. 6125)
                                      Rodney Square
                                      1000 North King Street
                                      Wilmington, Delaware 19801
                                      Tel:    (302) 571-6600
                                      Fax:    (302) 571-1253
                                      Email: rbrady@ycst.com
                                                emorton@ycst.com
                                                rbartley@ycst.com
                                                ejustison@ycst.com
                                                north-moore@ycst.com

                                    *Proposed Counsel for the Debtors and Debtors in Possession*

01:18793323.8

# **EXHIBIT A**

## **Proposed Order**

01:18793323.8

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ROADHOUSE HOLDING INC., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 16 -11819 (___)<br><br>(Jointly Administered)<br><br>**Re: Docket No. ___** |

**ORDER PURSUANT TO SECTIONS 105(a), 363(b), 507(a)(8), AND 541 OF THE**
**BANKRUPTCY CODE (I) AUTHORIZING PAYMENT OF CERTAIN PREPETITION**
**TAXES AND FEES AND (II) AUTHORIZING FINANCIAL**
**INSTITUTIONS TO PROCESS AND CASH RELATED CHECKS AND TRANSFERS**

Upon the motion (the "**Motion**")[2] of the Debtors requesting entry of an order, pursuant to sections 105(a), 363(b), 507(a)(8), and 541 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors, in their discretion, to pay the Taxes and Fees, and (ii) authorizing Banks, when requested by the Debtors in their discretion, to receive, process, honor, and pay any and all checks and electronic fund transfers related to the Taxes and Fees, all as more fully described in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion and opportunity for objection having been given under the circumstances; and this

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).  The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

01:18793323.8

Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors, and all parties in interest, and is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and any objections to the Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to pay, in the ordinary course of their businesses, all prepetition Taxes and Fees to the Authorities up to an aggregate amount of $8 million, and to maintain, in the ordinary course of their businesses, their audit reserves and satisfy any Audit Amounts up to an aggregate amount of $250,000.00.

3.      The Debtors' Banks shall be, and hereby are, authorized, when requested by the Debtors in their discretion, to receive, process, honor, and pay any and all checks or electronic fund transfers drawn on the Debtors' bank accounts to pay all prepetition Taxes and Fees and any Audit Amounts owed to the Authorities, whether those checks were presented prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

4.      The Debtors' Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Order.

5.      Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as (a) an admission as to the validity, priority, or

01:18793323.8

2

amount of any claim or lien against the Debtors or their estates or an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (b) a waiver of the rights of the Debtors and their estates, or shall impair the ability of the Debtors and their estates, to contest the validity, priority, and amount of any payment made pursuant to this Order.

6.      Notwithstanding anything to the contrary in this Order, any payment made or to be made under this Order, and any authorization contained in this Order, shall be subject to the requirements imposed on the Debtors under the orders of this Court approving the Debtors' debtor-in-possession financing facilities and use of cash collateral and budget in connection therewith.

7.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

9.      The requirements of Bankruptcy Rule 6004(a) are waived.

10.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.


Dated: _____
        Wilmington, Delaware

        _____
        UNITED STATES BANKRUPTCY JUDGE

01:18793323.8

3