**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ROADHOUSE HOLDING INC., *et al.*,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 16-11819 (BLS)<br><br>(Jointly Administered) |

**DEBTORS' JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**THIS DRAFT CHAPTER 11 PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION WILL BE MADE ONLY IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

---

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Ryan M. Bartley (No. 4985)
Elizabeth S. Justison (No. 5911)
Norah M. Roth-Moore (No. 6125)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253

Dated: August 16, 2016
       Wilmington, Delaware

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).  The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

# TABLE OF CONTENTS

**Page**

I.    DEFINITIONS AND CONSTRUCTION OF TERMS ................................................. 2

    A.    Definitions ........................................................................................................ 2
    B.    Interpretation, Application of Definitions, and Rules of Construction ............... 13
    C.    Reference to Monetary Figures ......................................................................... 13
    D.    Consent Rights of Supporting Parties ............................................................... 13

II.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............................ 13

    A.    General Rules of Classification. ....................................................................... 13
    B.    Classification of Claims and Interests .............................................................. 14

III.    TREATMENT OF ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE
      CLAIMS, PRIORITY TAX CLAIMS, DIP FACILITIES CLAIMS AND
      STATUTORY FEES .................................................................................................. 15

    A.    Administrative Claims. .................................................................................... 15
    B.    Administrative Claims Bar Date. ..................................................................... 15
    C.    Professional Fee Claims. .................................................................................. 15
    D.    Priority Tax Claims. ......................................................................................... 16
    E.    DIP Facilities Claims. ...................................................................................... 16
    F.    Payment of Statutory Fees. .............................................................................. 16

IV.    TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ............. 16

    A.    Class 1 – Other Priority Claims. ...................................................................... 16
    B.    Class 2 – Other Secured Claims ....................................................................... 17
    C.    Class 3 – Revolving Facility Lender Claims. .................................................... 17
    D.    Class 4 – GSO Notes Claims and Kelso Notes Claims. .................................... 18
    E.    Class 5 – Unexchanged Notes Claims. ............................................................. 19
    F.    Class 6 – General Unsecured Claims ................................................................ 19
    G.    Class 7 – Intercompany Claims. ....................................................................... 20
    H.    Class 8 – Subordinated Claims. ....................................................................... 20
    I.    Class 9 – Existing Equity Interests. ................................................................. 21
    J.    Class 10 – Intercompany Interests. .................................................................. 21
    K.    Special Provision Governing Claims. ............................................................... 21
    L.    Elimination of Vacant Classes. ........................................................................ 21
    M.    Acceptance or Rejection of this Plan. ............................................................... 21
    N.    Nonconsensual Confirmation ........................................................................... 22
    O.    Subordinated Claims ........................................................................................ 22

V.    PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE
      REORGANIZED DEBTORS ................................................................................... 22

    A.    Cancellation of Existing Equity Interests. ........................................................ 22
    B.    Directors and Officers of the Reorganized Debtors ........................................... 22
    C.    Powers of Officers. .......................................................................................... 23
    D.    Management Incentive Plan .............................................................................. 23

# TABLE OF CONTENTS
(continued)

**Page**

VI.    **SUBSTANTIVE CONSOLIDATION OF THE DEBTORS**..................................... **23**

VII.   **PROVISIONS REGARDING MEANS OF IMPLEMENTATION,
DISTRIBUTIONS, AND RESOLUTION OF DISPUTED CLAIMS**..................... **24**

    A.    General Settlement of Claims. ................................................................. 24
    B.    Exit Financing. ........................................................................................ 24
    C.    Issuance of New Stock............................................................................ 26
    D.    Avoidance Actions. ................................................................................. 26
    E.    Restructuring Transactions. .................................................................... 26
    F.    Corporate Action..................................................................................... 27
    G.    Effectuating Documents; Further Transactions. ..................................... 27
    H.    Reorganized Holding Certificate of Incorporation and By-Laws ........... 27
    I.    Cancellation of Securities and Agreements. ........................................... 28
    J.    Distributions in Respect of Allowed Claims. ......................................... 28
    K.    Resolution of Disputed Claims. .............................................................. 31

VIII.  **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..................... **34**

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ....... 34
    B.    Cure......................................................................................................... 34
    C.    Rejection Damage Claims........................................................................ 35
    D.    Restrictions on Assignment Void. ........................................................... 35
    E.    Benefit Plans. .......................................................................................... 35
    F.    Workers' Compensation and Insurance Programs................................... 36

IX.    **EFFECT OF CONFIRMATION OF THIS PLAN**....................................... **36**

    A.    Continued Corporate Existence. .............................................................. 36
    B.    Vesting of Assets. ................................................................................... 36
    C.    Preservation of Causes of Action............................................................ 37
    D.    Discharge of the Debtors. ........................................................................ 37
    E.    Releases by the Debtors of Certain Parties. ............................................ 37
    F.    Releases by Non-Debtors........................................................................ 38
    G.    Exculpation. ............................................................................................ 39
    H.    Injunction. ............................................................................................... 39
    I.    Term of Bankruptcy Injunction or Stays. ............................................... 40
    J.    Setoff....................................................................................................... 40
    K.    Preservation of Insurance........................................................................ 40
    L.    Indemnification Obligations. ................................................................... 40

X.    **EFFECTIVENESS OF THIS PLAN**............................................................ **41**

    A.    Conditions Precedent to Confirmation..................................................... 41
    B.    Conditions Precedent to the Effective Date. ........................................... 41
    C.    Waiver of Conditions. ............................................................................. 42
    D.    Notice of Confirmation and Effective Date. ........................................... 42
    E.    Effect of Failure of Conditions. .............................................................. 42

## TABLE OF CONTENTS
### (continued)

| | | | |
|---|---|---|---|
| | F. | Vacatur of Confirmation Order. | 42 |
| | G. | Revocation, Withdrawal, Modification or Non-Consummation. | 43 |
| **XI.** | **RETENTION OF JURISDICTION** | | **43** |
| **XII.** | **MISCELLANEOUS PROVISIONS** | | **45** |
| | A. | Payment of Fees and Expenses of Supporting Lenders, Unanimous Supporting Noteholders, Supporting Interest Holders, Revolving Facility Agent, DIP Agent, and Indenture Trustees. | 45 |
| | B. | Modification of this Plan. | 45 |
| | C. | Dissolution of Creditors' Committee. | 45 |
| | D. | Votes Solicited in Good Faith. | 46 |
| | E. | Obligations Incurred After the Effective Date. | 46 |
| | F. | Request for Expedited Determination of Taxes. | 46 |
| | G. | Determination of Tax Filings and Taxes. | 47 |
| | H. | Governing Law. | 47 |
| | I. | Filing or Execution of Additional Documents. | 47 |
| | J. | Exemption From Transfer Taxes. | 47 |
| | K. | Exemption for Issuance of New Stock and New Secured Notes. | 47 |
| | L. | Waiver of Federal Rule of Civil Procedure 62(a). | 48 |
| | M. | Exhibits/Schedules. | 48 |
| | N. | Notices. | 48 |
| | O. | Plan Supplement. | 49 |
| | P. | Further Actions; Implementations. | 49 |
| | Q. | Severability. | 49 |
| | R. | Entire Agreement. | 49 |
| | S. | Binding Effect. | 49 |
| | T. | No Change in Ownership or Control. | 50 |
| | U. | Substantial Consummation. | 50 |
| | V. | Conflict. | 50 |

## Plan Supplement

A. Litigation Rights
B. Schedules of Rejected Contracts and Leases
C. Exit First Lien Facility
D. Exit Second Lien Facility
E. Exit Financing Intercreditor Agreement
F. Terms of New Stock
G. Reorganized Holding Certificate of Incorporation
H. Reorganized Holding By-Laws
I. Reorganized Holding Shareholder Agreement

## **INTRODUCTION**

Roadhouse Holding Inc., Roadhouse Intermediate Inc., Roadhouse Midco Inc., Roadhouse Parent Inc., LRI Holdings, Inc., Logan's Roadhouse, Inc., Logan's Roadhouse of Texas, Inc., and Logan's Roadhouse of Kansas, Inc., the above- captioned debtors and debtors in possession, propose the following joint plan of reorganization under section 1121(a) of the Bankruptcy Code.[2]

The Chapter 11 Cases are being jointly administered pursuant to an order of the Court, and this Plan is being presented as a joint plan of reorganization of the Debtors.  Claims against, and Interests in, the Debtors (other than DIP Facilities Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims) are classified in Article II hereof and treated in Article IV hereof.

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, financial projections of future operations, and risk factors, together with a summary and analysis of this Plan.  All Claim and Interest holders entitled to vote on this Plan are encouraged to review the Disclosure Statement and to read this Plan carefully before voting to accept or reject this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE COURT, HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

Subject to certain restrictions and requirements set forth herein and section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation (as such term is defined in section 1101 of the Bankruptcy Code).

---

[2]    Capitalized terms used in this Introduction shall have the meanings ascribed to them below.

# I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    <u>Definitions.</u>

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

1.    *"2010 Indenture"* means that certain Senior Secured Notes Indenture, dated as of October 4, 2010, among Logan's Roadhouse, Inc. (as successor by merger to Roadhouse Financing, Inc.), LRI Holdings, Inc. (as successor by merger to Roadhouse Merger, Inc.) and BOKF, NA, as trustee and collateral agent, and all exhibits, amendments, and supplements thereto.

2.    *"2015 Indenture"* means that certain Indenture, dated as of October 15, 2015, among Logan's Roadhouse, Inc., LRI Holdings, Inc., the subsidiary guarantors from time to time party thereto and Wells Fargo Bank, N.A., as trustee and collateral agent, and all exhibits, amendments, and supplements thereto.

3.    *"Administrative Claim"* means a Claim for costs and expenses of administration of the Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving and operating the Estates; (b) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their businesses after the Petition Date, including for wages, salaries, or commissions for services, and payments for goods and other services and leased premises to the extent such indebtedness or obligations provided a benefit to the Debtors' estates; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

4.    *"Administrative Claims Bar Date"* means the first Business Day that is thirty (30) days after the Effective Date.

5.    *"Allowed"* means, with reference to a Claim, (i) a Claim against a Debtor that has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not Disputed or contingent and for which no contrary Proof of Claim has been timely filed, (ii) a Claim with respect to which a Proof of Claim that has been timely filed by the applicable Bar Date (or for which Claim under this Plan, the Bankruptcy Code or Final Order of the Court a Proof of Claim is or shall not be required to be filed), which Proof of Claim has not been withdrawn and as to which Proof of Claim no objection to allowance, request for estimation, or motion or other effort to subordinate or reclassify has been interposed prior to the expiration of the time for filing any such objection, or (iii) any Claim expressly Allowed by a Final Order or Allowed under this Plan, <u>provided</u> that any Claim that is Allowed for the limited purpose of voting to accept or reject this Plan pursuant to an order of the Court shall not be considered "Allowed" for the purpose of Distributions hereunder.

6.      ***"Alternative Exit Facility"*** means a new first lien credit facility to be provided by parties other than the Revolving Facility Lenders in lieu of the Exit Revolving Facility, the proceeds of which shall be used to, among other things repay the Revolving Facility Lenders Claims in accordance with this Plan, on terms reasonably acceptable to the Debtors, the Unanimous Supporting Noteholders, and the Supporting Interest Holders.

7.      ***"Avoidance Actions"*** means any Causes of Action pursuant to chapter 5 of the Bankruptcy Code.

8.      ***"Ballots"*** means each of the ballot forms distributed with the Disclosure Statement to each holder of an Impaired Claim (other than to holders not entitled to vote on this Plan) for, among other things, voting on the acceptance or rejection of this Plan.

9.      "***Bankruptcy Code***" means chapter 11 of title 11 of the United States Code.

10.     "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Court.

11.     "***Bar Date"*** means the applicable date on which a Proof of Claim must be filed as may be specifically fixed by an order of the Court.

12.     ***"Budget"*** has the meaning set forth in the DIP Credit Agreement.

13.     "***Business Day***" means any day, other than a Saturday, Sunday or Legal Holiday (as defined in Bankruptcy Rule 9006(a)(6)).

14.     ***"Business Plan"*** means the business plan incorporated in the Disclosure Statement.

15.     "***Cash***" means the legal tender of the United States of America.

16.     ***"Cash-Out Payment"*** means the Pro Rata share of the value of Plan Equity Value to be paid to each Noteholder in Subclass 5(b) in either (i) Cash upon emergence if Subclass 5(b) votes to accept this Plan, or (ii) New Secured Notes if Subclass 5(b) votes to reject this Plan.

17.     ***"Causes of Action"*** means any and all actions, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, now-owned, hereafter acquired, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law, equity, or otherwise, including Avoidance Actions or any other cause of action arising under the Bankruptcy Code, unless otherwise waived or released by the Debtor(s), with the consent of the Required Supporting Noteholders, the Supporting Lenders, and the Supporting Interest Holders, or by the Reorganized Debtor(s) to the extent such Cause of Action is a Cause of Action held by one or more Debtors or Reorganized Debtors.

18.     "***Chapter 11 Cases***" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Court.

19.     "***Claim***" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

20.     "***Claims Agent***" means Donlin, Recano & Company, Inc. or any successor thereto.

21.     "***Class***" means a class of Claims or Equity Interests as classified under this Plan.

22.     "***Collateral***" means any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

23.     "***Confirmation Date***" means the date upon which the Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

24.     "***Confirmation Hearing***" means the confirmation hearing held by the Court pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

25.     "***Confirmation Order***" means the order of the Court in form and substance satisfactory to the Required Supporting Parties, the DIP Agent, and the Required Lenders confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

26.     "***Court***" means, (a) the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States District Court for the District of Delaware; and (c) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein.

27.     "***Credit Agreement***" means that certain Credit Agreement, dated as of October 4, 2010, by and among Logan's Roadhouse, Inc. (as successor by merger to Roadhouse Financing, Inc.), LRI Holdings, Inc. (as successor by merger to Roadhouse Merger, Inc.), the Revolving Facility Agent, and the other parties thereto, and all exhibits, amendments, and supplements thereto.

28.     "***Creditors' Committee***" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Cases, as constituted from time to time.

29.     "***CRO Fee Equity Award***" means any equity awarded, at the election of the Debtors, to Mackinac Partners, LLC to satisfy a portion of Mackinac Partners, LLC's fees under and in accordance with the terms of the Engagement Letter dated May 25, 2016.

30.     *"Debtors"* means Roadhouse Holding, Inc., Roadhouse Intermediate, Inc., Roadhouse Midco, Inc., Roadhouse Parent, Inc., LRI Holdings, Inc., Logan's Roadhouse, Inc., Logan's Roadhouse of Kansas, Inc., and Logan's Roadhouse of Texas, Inc.

31.     *"DIP Agent"* means Cortland Capital Market Services LLC, in its capacity as Administrative Agent and Collateral Agent under the under the DIP Credit Agreement.

32.     *"DIP Credit Agreement"* means that certain Debtor-in-Possession Credit Agreement, dated as of August 10, 2016, by and among Logan's Roadhouse, Inc. the guarantors from time to time party thereto, the DIP Lenders and the DIP Agent, and all exhibits, amendments, and supplements thereto.

33.     *"DIP Facilities"* means the debtor-in-possession financing provided to the Debtors during the Chapter 11 Cases pursuant to the DIP Credit Agreement consisting of the New Money Facility (as defined in the DIP Credit Agreement) in an amount not less than $25 million and the Roll Up Facility.

34.     *"DIP Facilities Claims"* means all Claims arising under or relating to the DIP Facilities, whether pursuant to the DIP Credit Agreement, any other DIP Loan Document, any notes, the Final DIP Order, or otherwise.

35.     *"DIP Lenders"* means the lenders under the DIP Facilities.

36.     *"DIP Loan Documents"* means the DIP Credit Agreement and all related documents, including guarantees, security agreements, and the Agent Fee Letter (as defined in the DIP Credit Agreement), the Interim DIP Order, and the Final DIP Order.

37.     *"Disbursing Agent"* means the Debtors or the Reorganized Debtors, or any Person designated by the Debtors (with the consent of the Required Supporting Noteholders, the Supporting Lenders, and the Supporting Interest Holders) or the Reorganized Debtors to serve as a disbursing agent, or to assist the Debtors or the Reorganized Debtors in the making of Distributions, under this Plan.

38.     *"Disclosure Statement"* means the written disclosure statement that relates to this Plan in form and substance reasonably satisfactory to the Required Supporting Parties, the DIP Agent, and the Required Lenders, as approved by the Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time subject to the prior written consent of the Required Supporting Parties, the DIP Agent, and the Required Lenders.

39.     *"Disputed"* means, with reference to any Claim, any Claim that has not been Allowed.

40.     *"Distributions"* means the distribution in accordance with this Plan of (a) Cash, (b) New Stock, (c) New Secured Notes, (d) rights and obligations with respect to the Exit Revolving Facility, (e) rights and obligations with respect to the Exit Second Lien Facility or (f) other forms of consideration, as the case may be

41.    ***"Effective Date"*** means the date on which all conditions to the effectiveness of this Plan are either (a) satisfied or (b) waived by each of the Debtors, the Required Supporting Parties, the DIP Agent and the Required Lenders, and on which this Plan is declared effective.

42.    ***"Equity Interest"*** or ***"Interest"*** means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors (or Reorganized Debtors, as applicable), whether or not transferable, any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest, and any and all Claims that are otherwise determined by the Court to be an equity interest, including any Claim or debt that is recharacterized as an equity interest.

43.    ***"Estates"*** means the chapter 11 estates of the Debtors, individually or collectively, as is appropriate in the context created by the commencement of and in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

44.    ***"Exculpated Party"*** means each of:  (a) the Debtors; (b) the Debtors' current and former officers and directors; (c) the Creditors' Committee; (d) each member of the Creditors' Committee in its capacity as such; and (e) the Professionals retained by the Debtors and the Creditors' Committee.

45.    ***"Existing Equity Interests"*** means all issued and outstanding Equity Interests in Roadhouse Holding, including any vested or unvested and exercised or unexercised options or warrants to acquire such Equity Interests.

46.    ***"Exit Financing Facility Documents"*** means the definitive documentation governing the Exit Financing Facilities and all related documents, including guarantees and security agreements, which shall include those terms and conditions set forth in the Exit Second Lien Financing Term Sheet and the Exit First Lien Financing Term Sheet (to the extent the Exit First Lien Facility is the Exit Revolving Facility) annexed to the Restructuring Support Agreement Term Sheet as Exhibits B and E, respectively.

47.    ***"Exit Financing Facilities"*** means the Exit First Lien Facility and the Exit Second Lien Facility.

48.    ***"Exit First Lien Facility"*** means the Exit Revolving Facility or Alternative Exit Facility, as applicable.

49.    ***"Exit Financing Intercreditor Agreement"*** means an intercreditor agreement consistent with the term sheet governing the Exit Revolving Facility attached as Exhibit E to the Restructuring Support Agreement and otherwise in form and substance reasonably satisfactory to the Revolving Facility Lenders (to the extent the Exit First Lien Facility is the Exit Revolving Facility, and if not, the lenders under the Alternative Exit Facility) and the Required Supporting Noteholders.

50.    ***"Exit Revolving Credit Agreement"*** means a credit agreement governing the Exit Revolving Facility in form and substance reasonably satisfactory to the Required Supporting Parties.

51.    *"Exit Revolving Facility"* means a new first lien revolving credit facility to be provided by the Revolving Facility Lenders pursuant to the Exit Revolving Credit Agreement entered into on the Effective Date and having the terms and conditions set forth on the term sheet attached as Exhibit E to the Restructuring Support Agreement and otherwise in form and substance reasonably satisfactory to the Required Supporting Parties.

52.    *"Exit Second Lien Facility"* means a new second lien term loan facility to be entered into on the Effective Date and having the terms and conditions set forth on the term sheet attached as Exhibit B to the Restructuring Support Agreement and otherwise in form and substance reasonably satisfactory to the Required Supporting Parties.

53.    *"Final DIP Order"* means the Final Order entered by the Court in the Chapter 11 Cases approving, on a final basis, the DIP Facilities and authorizing the use of cash collateral in accordance with the Budget, in form and substance consistent with the Interim DIP Order and otherwise reasonably satisfactory to the Required Supporting Parties, the DIP Agent, and the Required Lenders.

54.    *"Final Order"* means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending or subject to any right of further appeal, petition for certiorari or petition for review or rehearing.

55.    *"General Unsecured Claim"* means a Claim against any of the Debtors that is not a DIP Facilities Claim, Administrative Claim, Priority Tax Claim, Other Priority Claim, Revolving Facility Lender Claim, Other Secured Claim, Notes Claim (other than Notes Deficiency Claim), Intercompany Claim, or Subordinated Claim, and shall include any Claims arising from existing or potential litigation against any of the Debtors and any Notes Deficiency Claims.

56.    *"General Unsecured Claim Cash Pool"* means the $350,000 Cash pool to be distributed to holders of Allowed General Unsecured Claims if Class 6 votes in favor of this Plan.

57.    *"GSO Notes"* means the issued and outstanding Series 2015-2 Senior Secured Notes Due October 2017 issued under the 2015 Indenture.

58.    *"Impaired"* means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

59.    *"Indemnification Obligation"* means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution pursuant to charter, by-laws, contract, or otherwise.

60.    *"Indemnified Parties"* means the Indenture Trustees, the Revolving Facility Agent, the Revolving Facility Lenders, the DIP Agent and DIP Lenders under the DIP Credit

Agreement, and those individuals serving, immediately prior to the Effective Date, as members of the boards of directors (or comparable governing body) or officers of the Debtors.

61.     **"Indenture Trustees"** means the trustees for the 2010 Indenture and the 2015 Indenture.

62.     **"Initial Second Lien Facility Amount"** means the amount of all obligations under the DIP Facilities as of the Effective Date.

63.     **"Intercompany Claims"** means any Claim held by one of the Debtors against any other Debtor, including (a) any account reflecting intercompany book entries by a Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor against any other Debtor or Debtors, and (c) any derivative Claim asserted or assertable by or on behalf of a Debtor against any other Debtor or Debtors.

64.     **"Intercompany Interests"** means any Interest held by one of the Debtors in any other Debtor.

65.     **"Interim DIP Order"** means the order entered by the Court in the Chapter 11 Cases approving, on an interim basis, the DIP Facilities and authorizing the use of cash collateral in accordance with the Budget entered on the docket of the Court on August 9, 2016 [Docket No. 60].

66.     **"Kelso Notes"** means the issued and outstanding Series 2015-1 Senior Secured Zero Coupon Notes Due October 2017 issued under the 2015 Indenture.

67.     **"Lien"** has the meaning set forth in section 101(37) of the Bankruptcy Code.

68.     **"Litigation Rights"** means the Causes of Action, claims, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person (except to the extent such claims are expressly released under this Plan), which are to be retained by the Reorganized Debtors and identified in the Plan Supplement (which document shall be in form and substance acceptable to the Required Supporting Noteholders, the Supporting Lenders and the Supporting Interest Holders).

69.     **"Management Incentive Plan"** means an incentive plan for management to be implemented by the board of Reorganized Holding following the Effective Date.

70.     **"New Secured Notes"** means the new third-lien secured notes having the same collateral as, but with a junior priority to, the Exit First Lien Facility and the Exit Second Lien Facility, and with a 12% interest rate, paid in kind semi-annually, with a maturity date seven (7) years from issuance and which shall be voluntarily prepayable without premium or penalty at the option of the Reorganized Debtors.

71.     **"New Stock"** means the common stock in Reorganized Holding to be issued on or after the Effective Date.

72.     **"Note**" means any Kelso Note, GSO Note or Unexchanged Note.

73.      *"Note Claims"* means all Claims arising under or relating to the GSO Notes, Kelso Notes and Unexchanged Notes held by the Noteholders.

74.      *"Noteholder"* means any holder of a Note.

75.      *"Notes Deficiency Claim"* means the portion of a Note Claim that is not a secured claim under section 506(a) of the Bankruptcy Code.

76.      *"Other Priority Claim"* means any Claim against any of the Debtors other than an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim or a DIP Facilities Claim that is entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

77.      *"Other Secured Claims"* means any Claim (other than the DIP Facilities Claims, the Revolving Facility Lenders Claims, and the Note Claims) to the extent reflected in the Schedules or a Proof of Claim filed as a secured Claim, which is (i) secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, (ii) in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

78.      *"Person"* means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit (as defined in the Bankruptcy Code) or any political subdivision thereof, or any other entity.

79.      *"Petition Date"* means August 8, 2016.

80.      *"Plan"* means this "Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code", as it may be amended or modified from time to time in accordance with the terms hereof, together with all addenda, exhibits, schedules or other attachments, if any.

81.      *"Plan Equity Value"* means the value of the New Stock in Reorganized Holding as of the Effective Date, pursuant to the valuation set forth in Exhibit E to the Disclosure Statement accompanying this Plan.

82.      *"Plan Supplement"* means any compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan, which shall be filed by the Debtors no later than ten (10) calendar days before the Confirmation Hearing or such later date as may be consented to by the Required Supporting Parties and approved by the Court  on notice to parties in interest, and additional documents filed with the Court prior to the Effective Date as amendments to the Plan Supplement, each of which shall be consistent in all respects with, and shall otherwise contain, the terms and conditions set forth on the exhibits attached hereto, where applicable, and, without limiting the foregoing, shall be satisfactory in form and substance to the Required Supporting Parties, the DIP Agent, the Required Lenders, and the Debtors, except to the extent otherwise expressly provided herein. The Plan Supplement shall include the following documents, among others: Litigation Rights, Schedules of Rejected Contracts and Leases, Exit First Lien Facility, Exit Second Lien Facility, Exit Financing Intercreditor Agreement, Terms of

New Stock, Reorganized Holding Certificate of Incorporation, Reorganized Holding By-Laws, and Reorganized Holding Shareholder Agreement.

83. *"Priority Tax Claim"* means any unsecured Claim that is entitled to a priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

84. *"Professional"* means any professional employed in the Chapter 11 Cases pursuant to sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred during the Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

85. *"Professional Fee Claim"* means an Administrative Claim Allowed for reasonable compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date (including the reasonable, actual and necessary expenses of the members of the Creditors' Committee incurred as members of the Creditors' Committee in discharge of their duties as such).

86. *"Pro Rata"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class and in any other Class entitled to share in the same recovery as such Allowed Claim under this Plan. For the purpose of determining Pro Rata Distributions for the holders of Claims in Class 5(b), Pro Rata means the proportion that an Allowed Claim in Class 5(b) bears to the aggregate amount of Allowed Claims in Class 4, Class 5(a) and Class 5(b).

87. *"Proof of Claim"* means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

88. *"Record Date"* means, for purposes of making distributions under this Plan on account of Allowed Claims, the Confirmation Date or such other date as established by the Bankruptcy Court with respect to publicly traded securities.

89. *"Released Parties"* means:  (a) each Debtor, (b) the Supporting Noteholders, (c) the Indenture Trustees, (d) the DIP Lenders, DIP Agent and other lender-parties under the DIP Facilities, (e) the lenders, agents, issuing banks, arrangers and other lender-parties under the Exit Financing Facilities, (f) the Supporting Lenders (as well as any issuing bank) and the Revolving Facility Agent, (g) the Sponsors, and (h) with respect to each of the foregoing entities identified in subsections (a) through (g), such Person's current and former equity holders, including shareholders, partnership interest holders, and limited liability company unit holders, affiliates, partners, subsidiaries, members, officers, directors, managers serving on a board of managers, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment banks, consultants, representatives, and other professionals, together with their respective predecessors, successors, and assigns.

90. *"Reorganized Debtor"* means each of the Debtors, or any successors thereto by merger, consolidation, or otherwise, on and after the Effective Date.

91. "*Reorganized Holding By-Laws*" means the by-laws of Reorganized Holding.

92.     *"Reorganized Holding Certificate of Incorporation"* means the certificate of incorporation of Reorganized Holding.

93.     *"Reorganized Holding Constituent Documents"* means the Reorganized Holding Certificate of Incorporation and the Reorganized Holding By-Laws.

94.     *"Reorganized Holding Shareholder Agreement"* means a shareholders agreement to be entered into by all holders of New Stock issued on the Effective Date, which shall include those terms and conditions set forth in the Governance Term Sheet annexed to the Restructuring Support Agreement Term Sheet as Exhibit F.

95.     *"Reorganized Holding"* means Roadhouse Holding, as reorganized under chapter 11 of the Bankruptcy Code.

96.     *"Required Lenders"* has the meaning set forth in the DIP Credit Agreement.

97.     *"Required Supporting Noteholders"* has the meaning set forth in the Restructuring Support Agreement Term Sheet.

98.     "*Required Supporting Parties*" means as of any date of determination the Required Supporting Noteholders or the Unanimous Supporting Noteholders as provided for in the Restructuring Support Agreement Term Sheet, the Supporting Lenders, and the Supporting Interest Holders that are signatories to the Restructuring Support Agreement and remain bound by its terms as of such date.

99.     *"Restructuring Support Agreement"* means that certain Restructuring Support Agreement dated as of August 8, 2016, between the Debtors and the Supporting Parties, as the same may be amended or otherwise modified in accordance with its terms, and the Term Sheets attached as exhibits thereto, attached as Exhibit C to the Disclosure Statement.

100.    *"Restructuring Support Agreement Term Sheet"* means the term sheet attached as Exhibit A to the Restructuring Support Agreement that summarizes the terms and conditions of this Plan as amended, supplement or otherwise modified in accordance with the terms of the Restructuring Support Agreement.

101.    *"Revolving Facility Agent"* means JPMorgan Chase Bank, N.A., in its capacity as Administrative Agent and Collateral Agent under the Credit Agreement.

102.    *"Revolving Facility Lenders"* means the lenders and issuing banks party to the Credit Agreement and each other "Secured Party" (as defined in the Credit Agreement).

103.    *"Revolving Facility Lenders Claims"* means all Claims arising under or relating to the Revolving Facility Loan Documents held by the Revolving Facility Lenders or the Revolving Facility Agent.

104.    "*Revolving Facility Loan Documents*" means the Credit Agreement, all letters of credit issued thereunder and all other loan and security documents executed in connection with the Credit Agreement.

11

105.    *"Roadhouse Holding"* means Roadhouse Holding, Inc.

106.    *"Roll Up Facility"* has the meaning set forth in the DIP Credit Agreement.

107.    *"Schedule of Rejected Contracts and Leases"* means the schedule of executory contracts and unexpired leases to be rejected pursuant to this Plan to be filed in connection with the Plan Supplement, which schedule shall be acceptable in form and substance to the Required Supporting Noteholders and the Supporting Lenders.

108.    *"Schedules"* means the schedules of assets and liabilities, statements of financial affairs, lists of holders of Claims and Equity Interests and related exhibits filed with the Court by each of the Debtors, including any amendments or supplements thereto.

109.    *"Sponsors"* means Kelso Investment Associates VIII, L.P. and KEP VI, LLC.

110.    *"Subordinated Claims"* means any Claim that is subordinated by Final Order of the Court pursuant to section 510(b) or 510(c) of the Bankruptcy Code.

111.    *"Supporting Interest Holders"* means the holders of Equity Interests in Roadhouse Holding that are signatories to the Restructuring Support Agreement and remain bound by its terms.

112.    *"Supporting Lenders"* means the Revolving Facility Lenders that are signatories to the Restructuring Support Agreement and remain bound by its terms.

113.    *"Supporting Noteholders"* means the Noteholders that are signatories to the Restructuring Support Agreement and remain bound by its terms.

114.    *"Supporting Parties"* means the Supporting Noteholders, the Supporting Lenders and the Supporting Interest Holders that are signatories to the Restructuring Support Agreement and remain bound by its terms.

115.    *"Unanimous Supporting Noteholders"* means all funds or financing vehicles (or funds or accounts advised or sub-advised by such persons) that are Supporting Noteholders and are affiliated with the following entities: Carl Marks Management Company, LLC, Marblegate Asset Management, LLC, GSO Capital Partners, LP. and Kelso & Company, L.P.; provided that if any Supporting Noteholder described in this definition subsequently transfers or otherwise disposes of some or all of its Notes prior to the Effective Date such that it holds less than 5% of all outstanding Notes in the aggregate, such Supporting Noteholder shall be deemed removed from this definition and this definition shall be deemed revised to require consent from each of the remaining Supporting Noteholders described herein.

116.    *"Unexchanged Notes"* means the issued and outstanding 10.75% Senior Secured Notes due 2017 issued under the 2010 Indenture.

117.    *"Unimpaired"* means, when used with reference to a Claim or Interest, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

B.    **Interpretation, Application of Definitions, and Rules of Construction.**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and neuter, such meanings to be applicable to both the singular and plural forms of the terms defined. Capitalized terms in this Plan that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section or subsection in this Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included, and the words "includes" or "including" are deemed immediately followed by the phrase "without limitation". Captions and headings to Articles, Sections, and exhibits to this Plan are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

C.    **Reference to Monetary Figures**

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

D.    **Consent Rights of Supporting Parties**

Notwithstanding anything herein to the contrary, any and all consent rights of the respective parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement with respect to the form and substance of this Plan and the documents and instruments contained in the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers or other deviations under or from such documents, shall be incorporated herein by this reference and fully enforceable as if stated in full herein.

**II.**

**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

A.    **General Rules of Classification.**

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests. In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Facilities Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, as described below, have not been classified. These Claims will be Unimpaired and, therefore, will not be entitled to vote to accept or reject this Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest

falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

As discussed in greater detail in Article VI hereof, this Plan is premised upon the consolidation of the Debtors for purposes of this Plan only and shall not affect the legal and corporate structures of the Debtors, subject to the rights of the Debtors to effectuate the restructuring transactions contemplated herein.  Accordingly, for purposes of this Plan, the assets and liabilities of each of the Debtors are deemed assets and liabilities of a single, consolidated entity.  This consolidation treatment is designed to consensually pool the assets and liabilities of the Debtors solely to implement the settlements and compromises reached by the primary constituencies in the Chapter 11 Cases.

### B.    Classification of Claims and Interests.

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired under this Plan, (ii) entitled to vote to accept or reject this Plan, and (iii) deemed to either accept or reject this Plan.  A Claim or Interest is designated in a particular Class only to the extent it falls within the description of that Class, and is classified in any other Class to the extent (if any) that a portion of such Claim or Interest falls within the description of such other Class.

| Class | Designation | Status | Entitled to Vote |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | Revolving Facility Lender Claims | Impaired unless the Debtors enter into an Alternative Exit Facility and the Revolving Facility Lender Claims are repaid in full in cash | Yes |
| 4 | GSO Notes Claims and Kelso Notes Claims | Impaired | Yes |
| 5 | Unexchanged Notes Claims | Impaired | Yes |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Intercompany Claims | Unimpaired | No (deemed to accept) |
| 8 | Subordinated Claims | Impaired | No (deemed to reject) |
| 9 | Existing Equity Interests | Impaired | No (deemed to reject) |
| 10 | Intercompany Interests | Unimpaired | No (deemed to accept) |

## III.

## TREATMENT OF ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, DIP FACILITIES CLAIMS AND STATUTORY FEES

A.   <u>**Administrative Claims.**</u>

Except to the extent a holder of an Allowed Administrative Claim already has been paid during the Chapter 11 Cases or such holder, together with the Debtors and the Required Supporting Noteholders, agrees to less favorable treatment with respect to such holder's Claim, each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, its Administrative Claim, Cash equal to the unpaid portion of its Allowed Administrative Claim, to be paid on the latest of: (a) the Effective Date, or as soon as reasonably practicable thereafter, if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed, or as soon as reasonably practicable thereafter; (c) the date such Allowed Administrative Claim becomes due and payable, or as soon as reasonably practicable thereafter; and (d) such other date as may be agreed upon between the holder of such Allowed Administrative Claim and the Debtors (with the consent of the Required Supporting Noteholders) or the Reorganized Debtors, as the case may be.

B.   <u>**Administrative Claims Bar Date.**</u>

Unless a prior date has been established pursuant to the Bankruptcy Code, the Bankruptcy Rules or a prior order of the Court, the Confirmation Order will establish a bar date for filing notices, requests, Proofs of Claim, applications or motions for allowance of Administrative Claims (other than Professional Fee Claims, DIP Facilities Claims, Claims by any other trade creditor or customer of the Debtors whose Claim is on account of ordinary course of business goods or services provided to the Debtors during the course of these Chapter 11 Cases, and the post-Petition Date fees and expenses of the Unanimous Supporting Noteholders, the Supporting Lenders, the Supporting Interest Holders, the Revolving Facility Agent, the Indenture Trustees, the DIP Agent, the DIP Lenders, and their respective advisors), which date shall be the Administrative Claims Bar Date.  Holders of Administrative Claims not paid prior to the Confirmation Date shall file with the Court and serve upon the Debtors or Reorganized Debtors, as applicable, a motion requesting payment of such Administrative Claim on or before the Administrative Claims Bar Date or forever be barred from doing so.  The notice of entry of the Confirmation Order to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth the Administrative Claims Bar Date and constitute good and sufficient notice of the Administrative Claims Bar Date.

C.   <u>**Professional Fee Claims.**</u>

All requests for compensation or reimbursement of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, counsel to each of the Supporting Parties, counsel to the Creditors' Committee, and such other entities who are designated by the

Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date.  Holders of Professional Fee Claims that are required to file and serve applications for final allowance of their Professional Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, the Reorganized Debtors or their respective properties, and such Professional Fee Claims shall be deemed discharged as of the Effective Date.  Objections to any Professional Fee Claims must be filed and served no later than fifty (50) days following the Effective Date.  Objections must be served on the Reorganized Debtors, counsel for the Reorganized Debtors, counsel to each of the Supporting Parties, counsel to the Creditors' Committee and the holders of Professional Fee Claims requesting payment.

D.   **Priority Tax Claims.**

Except to the extent a holder of an Allowed Priority Tax Claim, together with the Debtors and the Required Supporting Noteholders, agrees to a different treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each such holder shall be paid, at the option of the Debtors, with the approval of the Required Supporting Noteholders, (i) in the ordinary course of the Debtors' business, consistent with past practice; provided, however, that in the event the balance of any such Claim becomes due during the pendency of the Bankruptcy Cases and remains unpaid as of the Effective Date, the holder of such Claim shall be paid in full in Cash on the Effective Date, or (ii) in installment payments over a period of time not to exceed five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

E.   **DIP Facilities Claims.**

Upon the Effective Date, the DIP Facilities Claims shall be deemed to be Allowed Claims and indefeasibly satisfied by an in-kind exchange on a dollar-for-dollar basis for obligations of the Reorganized Debtors under the Exit Second Lien Facility; provided, however, any fees and expenses set forth in Article XII.A hereof shall be deemed to be Allowed Claims and paid in Cash as set forth in Article XII.A.

F.   **Payment of Statutory Fees.**

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date and all such fees payable after the Effective Date shall be paid by the applicable Reorganized Debtor.

**IV.**

**TREATMENT OF CLASSIFIED CLAIMS AND
EQUITY INTERESTS**

A.   **Class 1 – Other Priority Claims.**

1.   **Classification.**  Class 1 consists of all Other Priority Claims.

2. **Treatment.** Except to the extent that a holder of an Allowed Other Priority Claim, together with the Debtors and the Required Supporting Noteholders, agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such holder shall be paid, to the extent such Claim has not already been paid during the Chapter 11 Cases, in full in Cash in the ordinary course of business by the Debtors or the Reorganized Debtors, as applicable, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such Other Priority Claim against the Debtor becomes Allowed, or (iii) such other date as may be ordered by the Court.

3. **Impairment and Voting.** Class 1 is Unimpaired under this Plan. Holders of Other Priority Claims in Class 1 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

B. **Class 2 - Other Secured Claims.**

1. **Classification.** Class 2 consists of all Other Secured Claims.

2. **Treatment.** Except to the extent that a holder of an Allowed Other Secured Claim, together with the Debtors and the Required Supporting Noteholders, agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such holder shall be Reinstated, or, at the option of the Debtors or the Reorganized Debtors with the consent of the Required Supporting Noteholders, each holder of an Allowed Other Secured Claim shall receive, either (i) Cash in the full amount of such Allowed Other Secured Claim, including any postpetition interest Allowed pursuant to section 506(b) of the Bankruptcy Code, (ii) the net proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's secured interest in such collateral, (iii) the collateral securing such Allowed Other Secured Claim, or (iv) such other Distribution as necessary to satisfy the requirements of section 1129 of the Bankruptcy Code on account of such Allowed Other Secured Claim.

3. **Impairment and Voting.** Class 2 is Unimpaired under this Plan. Holders of Other Secured Claims in Class 2 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

C. **Class 3 – Revolving Facility Lender Claims.**

1. **Classification.** Class 3 consists of all Revolving Facility Lender Claims.

2. **Allowance.** Revolving Facility Lender Claims shall be Allowed in full without set-off, defense or counterclaim in the aggregate principal amount of not less than $23,899,525 plus $5,100,475 for unreimbursed obligations on account of issued letters of credit plus all outstanding fees, accrued and unpaid pre- and post-petition interest, expenses and contingent reimbursement obligations, in each case, pursuant to and as provided in the Credit Agreement.

3.    **Treatment.** On the Effective Date except to the extent that a holder of a Revolving Facility Lender Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, each holder of a Revolving Facility Lender Claim shall receive a Pro Rata share of the Exit Revolving Facility (by having any Revolving Facility Lender Claims for outstanding principal deemed outstanding under the Exit Revolving Facility on a dollar-for-dollar basis and all letters of credit issued under the Credit Agreement deemed outstanding under the Exit Revolving Facility), *provided, however*, that all Revolving Facility Lender Claims for interest and outstanding fees and expenses shall be paid on the Effective Date in Cash to the extent not previously paid pursuant to the Interim DIP Order or Final DIP Order; and *provided further however* that if the Debtors arrange for the Alternative Exit Facility, then each holder of a Revolving Facility Lender Claim shall receive Cash in the amount of its Allowed Claim in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim and any outstanding undrawn letters of credit issued under the Credit Agreement shall be cash collateralized at 105% of the face amount thereof, pursuant to arrangements satisfactory to the issuers thereof.

4.    **Impairment and Voting.**

(a)    If the Debtors do not arrange for the Alternative Exit Facility, Class 3 will be Impaired.  Holders of Revolving Facility Lender Claims in Class 3 will be entitled to vote to accept or reject this Plan.

(b)    If the Debtors arrange for the Alternative Exit Facility, Class 3 will be Unimpaired.  Holders of Revolving Facility Lenders Claims in Class 3 will be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, will not be entitled to vote to accept or reject this Plan.

D.    **Class 4 – GSO Notes Claims and Kelso Notes Claims.**

1.    **Classification.** Class 4 consists of all GSO Notes Claims and Kelso Notes Claims, other than Notes Deficiency Claims.

2.    **Allowance.**

a.    GSO Notes Claims shall be Allowed in full without set-off, defense or counterclaim in the aggregate principal amount of not less than $119,299,000, plus all outstanding fees, interest, expenses and other amounts due in accordance with the terms of the 2015 Indenture, and less the amount of such Claims that are exchanged for loans under the Roll Up Facility, with the secured portion of such Claims receiving treatment pursuant to this Class 4.

b.    Kelso Notes Claims shall be Allowed in full without set-off, defense or counterclaim in the aggregate principal amount of not less than $122,598,000, plus all outstanding fees, interest, expenses and other amounts due in accordance with the terms of the 2015 Indenture, and less the amount of such Claims that are exchanged for loans under the Roll Up Facility, with the secured portion of such Claims receiving treatment pursuant to this Class 4.

3.    **Treatment.** On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of a GSO Notes Claim or Kelso Notes Claim agrees

to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, each holder of a GSO Notes Claim and/or a Kelso Notes Claim shall receive a Pro Rata share of the New Stock, subject to dilution for the CRO Fee Equity Award and the Management Incentive Plan (to the extent the board of directors of Reorganized Holding approves awards of New Stock thereunder).

        4.    **Impairment and Voting.** Class 4 is Impaired under this Plan. Holders of GSO Notes Claims and Kelso Notes Claims in Class 4 are entitled to vote to accept or reject this Plan.

        E.    <u>**Class 5 – Unexchanged Notes Claims.**</u>

        1.    **Classification.** Class 5 consists of all Unexchanged Notes Claims, other than Notes Deficiency Claims.

        2.    **Allowance**. Unexchanged Notes Claims shall be Allowed in full without set-off, defense or counterclaim in the aggregate principal amount of not less than $143,936,000, plus all outstanding fees, interest, expenses and other amounts due in accordance with the terms of the 2010 Indenture, and less the amount of such Claims that are exchanged for loans under the Roll Up Facility, with the secured portion of such Claims receiving treatment pursuant to this Class 5.

        3.    **Treatment.** On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of an Unexchanged Notes Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, each holder of an Unexchanged Note Claim shall receive:

        a.    Subclass 5(a). Each holder of Unexchanged Notes that, in the aggregate, holds equal to or in excess of $50,000 in principal amount of Unexchanged Notes shall receive a Pro Rata share of the New Stock, subject to dilution for the CRO Fee Equity Award and the Management Incentive Plan (to the extent the board of directors of Reorganized Holding approves awards of New Stock thereunder).

        b.    Subclass 5(b). Each holder of Unexchanged Notes that, in the aggregate, holds less than $50,000 in principal amount of Unexchanged Notes shall receive a Cash-Out Payment.

If Subclass 5(b) votes to accept this Plan, then each holder of Unexchanged Notes in Subclass 5(b) shall receive its Cash-Out Payment in the form of Cash. If Subclass 5(b) votes to reject this Plan, then each holder of Unexchanged Notes in Subclass 5(b) shall receive its Cash-Out Payment in the form of New Secured Notes.

        4.    **Impairment and Voting.** Class 5 is Impaired under this Plan. Holders of Unexchanged Notes Claims in Class 5 are entitled to vote to accept or reject this Plan.

        F.    <u>**Class 6 – General Unsecured Claims.**</u>

        1.    **Classification.** Class 6 consists of all General Unsecured Claims.

2.      **Treatment.**  On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, each holder of an Allowed General Unsecured Claim (including each holder of a Notes Deficiency Claim) shall receive:

a.      If Class 6 votes in favor of this Plan, its Pro Rata share of the General Unsecured Claim Cash Pool; or

b.      If Class 6 rejects this Plan, no distribution on account of its Allowed General Unsecured Claim.

3.      **Impairment and Voting.**  Class 6 is Impaired under this Plan.  Holders of General Unsecured Claims in Class 6 are entitled to vote to accept or reject this Plan.

G.      **Class 7 – Intercompany Claims.**

1.      **Classification.**  Class 7 consists of all Intercompany Claims.

2.      **Treatment.**  Intercompany Claims shall be reinstated, cancelled or compromised as determined by the Debtors with the consent of the Required Supporting Noteholders.

3.      **Impairment and Voting.**  Class 7 Claims are Unimpaired under this Plan. Holders of Intercompany Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

H.      **Class 8 – Subordinated Claims.**

1.      **Classification.**  Class 8 consists of all Subordinated Claims.

2.      **Treatment.**  The holders of Subordinated Claims shall neither receive Distributions nor retain any property under this Plan for or on account of such Subordinated Claims.

3.      **Impairment and Voting.**  Class 8 is Impaired under this Plan.  Holders of Subordinated Claims are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

**I.**  **Class 9 – Existing Equity Interests.**

      1.  **Classification.**  Class 9 consists of all Existing Equity Interests.

      2.  **Treatment.**  Existing Equity Interests shall be discharged, cancelled, released, and extinguished as of the Effective Date and holders of Existing Equity Interests shall neither receive any Distributions nor retain any property under this Plan for or on account of such Equity Interests.

      3.  **Impairment and Voting.**  Class 9 is Impaired under this Plan.  Holders of Existing Equity Interests are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

**J.**  **Class 10 – Intercompany Interests.**

      1.  **Classification.**  Class 10 consists of all Intercompany Interests.

      2.  **Treatment.**  Intercompany Interests shall be cancelled or reinstated, as determined by the Debtors with the consent of the Required Supporting Noteholders.

      3.  **Impairment and Voting.**  Class 10 is Unimpaired under this Plan. Holders of Intercompany Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

**K.**  **Special Provision Governing Claims.**

      Except as otherwise provided in this Plan, nothing under this Plan shall affect the Debtors' or the Reorganized Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims.

**L.**  **Elimination of Vacant Classes.**

      Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or Claim or Interest temporarily Allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**M.**  **Acceptance or Rejection of this Plan.**

      1.  **Presumed Acceptance.**  Claims in Classes 1, 2, and 7, and Interests in Class 10 are Unimpaired under the Plan.  The holders of such Claims and Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

2. **Voting Classes.** Claims in Classes 3, 4, 5, and 6 are Impaired under this Plan and the holders of such Claims are entitled to vote to accept or reject this Plan. If holders of Claims in a particular Impaired Class of Claims are given the opportunity to vote to accept or reject the Plan, but no holders of Claims in such Impaired Class of Claims vote to accept or reject this Plan, then such Class of Claims shall be deemed to have accepted this Plan.

3. **Deemed Rejection of Plan.** Subordinated Claims in Class 8 and Equity Interests in Class 9 are Impaired, and holders of such Claims and Equity Interests shall receive no Distributions. The holders in such Classes are deemed to have rejected this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

**N.**    **Nonconsensual Confirmation.**

If less than all Impaired Classes accept this Plan, but at least one (1) Class of Claims Impaired under this Plan has accepted this Plan (and which Class's acceptance is determined without inclusion of Claims of Insiders (as defined in the Bankruptcy Code)), the Debtors may seek to have the Court confirm this Plan under section 1129(b) of the Bankruptcy Code.

**O.**    **Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 510(a) or 510(b) of the Bankruptcy Code or otherwise.

**V.**

**PROVISIONS REGARDING CORPORATE GOVERNANCE OF
THE REORGANIZED DEBTORS**

**A.**    **Cancellation of Existing Equity Interests.**

On the Effective Date, all Existing Equity Interests shall be cancelled in accordance with this Plan.

**B.**    **Directors and Officers of the Reorganized Debtors.**

On the Effective Date, the term of each member of the current boards of directors of the Debtors shall expire, and the board of each of the Reorganized Debtors, as well as the officers of each of the Reorganized Debtors, shall consist of those individuals that will be identified in the Plan Supplement. Following the Effective Date, the appointment and removal of the members of the board of each of the Reorganized Debtors shall be governed by the terms of each Reorganized Debtor's respective corporate governance documents.

### C.    <u>Powers of Officers.</u>

The officers of the Debtors (with the consent of the Required Supporting Noteholders, the Supporting Lenders, the Supporting Interest Holders, the DIP Agent, and the Required Lenders) or the Reorganized Debtors, as applicable, shall have the power to (i) enter into, execute or deliver any documents or agreements that may be necessary and appropriate to implement and effectuate the terms of this Plan, and (ii) take any and all other actions that may be necessary and appropriate to effectuate the terms of this Plan, including the making of appropriate filings, applications or recordings, <u>provided</u> that such documents and agreements are in form and substance acceptable to the Required Supporting Noteholders, the Supporting Lenders, the Supporting Interest Holders, the DIP Agent, and the Required Lenders.

### D.    <u>Management Incentive Plan.</u>

Following the Effective Date, the board of directors of Reorganized Holding may adopt and implement a Management Incentive Plan, which may provide for the issuance of Cash or New Stock.  Specific awards shall be as determined by the board of directors of Reorganized Holding (or, if applicable, a compensation committee established by such board) from time to time.

## VI.

## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

Solely for purposes of voting on, confirmation of, and Distributions to be made to holders of Allowed Claims under this Plan, this Plan is predicated upon, and it is a condition precedent to confirmation of this Plan, that the Court provide in the Confirmation Order for the limited consolidation of the Estates of the Debtors into a single Estate for purposes of this Plan, the confirmation hereof and Distributions hereunder.

Pursuant to the Confirmation Order (i) all assets and liabilities of the consolidated Debtors will be deemed to be merged solely for purposes of Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the consolidated Debtors solely for purposes of Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the limited consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and Distributions made by any Debtor hereunder will be deemed to be made by the consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of assets available for Distribution to such Class without regard to which Debtor was originally liable for such Claim. Intercompany Claims shall be treated as provided in Class 7 of this Plan and Intercompany Interests shall be treated as provided in Class 10 of this Plan.

Notwithstanding the foregoing, such limited consolidation shall not affect (a) the legal and corporate structure of the Reorganized Debtors, (b) any obligations under any contracts or leases that were entered into during the Chapter 11 Cases or executory contracts or unexpired leases that have been or will be assumed pursuant to this Plan, (c) distributions from any insurance policies or proceeds of such policies, (d) the revesting of assets in the separate Reorganized Debtors pursuant to Article IX.B of this Plan, or (e) guarantees that are required to be maintained post-Effective Date (i) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed, (ii) pursuant to the express terms of this Plan, or (iii) in connection with the Exit Financing Facilities. The limited consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6), which obligation shall continue until a Final Order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

## VII.

## PROVISIONS REGARDING MEANS OF IMPLEMENTATION, DISTRIBUTIONS, AND RESOLUTION OF DISPUTED CLAIMS

### A.      General Settlement of Claims.

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to this Plan. Distributions made to holders of Allowed Claims in any Class are intended to be final.

### B.      Exit Financing.

On the Effective Date, the Debtors shall enter into the following Exit Financing Facilities:

1.      **Exit First Lien Facility.**  On the Effective Date, the Reorganized Debtors shall enter into either the Exit Revolving Facility (subject to the terms of the Exit Revolving Credit Agreement), or an Alternative Exit Facility; in each case, providing not less than $29 million of availability that shall be used to satisfy the Revolving Facility Lenders Claims (including, in the case of the Exit Revolving Facility, by deeming all Revolving Lender Claims for principal as principal outstanding under the Exit Revolving Facility on a dollar-for-dollar basis and deeming all outstanding letters of credit issued under the Credit Agreement as issued under the Exit Revolving Credit Agreement, and, in each case, subject to the terms of the Exit Revolving Facility). The terms and conditions of the Exit First Lien Facility shall be substantially in the form set forth in the Plan Supplement subject to any amendments, modifications or waivers consented to by the Supporting Lenders and the Required Supporting Noteholders.

2.    **Exit Second Lien Facility.**    On the Effective Date, the Reorganized Debtors shall enter into the Exit Second Lien Facility, which shall be used to satisfy the DIP Facility Claims through a cashless exchange of all obligations outstanding under the DIP Facilities for obligations of the Reorganized Debtors under the Exit Second Lien Facility on a dollar-for-dollar basis.  The terms and conditions of the Exit Second Lien Facility shall be substantially in the form set forth in the Plan Supplement, subject to any amendments, modifications or waivers consented to by (x) the Required Supporting Noteholders or the Unanimous Supporting Noteholders as provided for in the Restructuring Support Agreement Term Sheet, and (y) to the extent that the Exit First Lien Facility is the Exit Revolving Facility, the Supporting Lenders.  The Exit First Lien Facility, the Exit Second Lien Facility and, if applicable, the New Secured Notes shall be subject to the Exit Financing Intercreditor Agreement.

Confirmation of this Plan shall be deemed to constitute approval of the Exit Financing Facilities, and the Exit Financing Facility Documents, and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their obligations in connection with the Exit Financing Facilities.

On the Effective Date, the Exit Financing Facility Documents shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the Exit Financing Facility Documents are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Financing Facility Documents (1) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Financing Facility Documents, (2) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Financing Facility Documents, (3) shall be subject to the Exit Financing Intercreditor Agreement and (4) except as expressly permitted in the Exit Financing Facility Documents, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

C.      **Issuance of New Stock.**

The issuance of New Stock by Reorganized Holding, including pursuant to the CRO Fee Equity Award, is authorized without the need for any further corporate action or without any further action by a holder of Claims or Interests.  On the Effective Date (or as soon as reasonably practicable thereafter), the New Stock shall be issued, subject to the provisions of this Plan, to (i) the holders of Allowed GSO Notes Claims who are receiving New Stock pursuant to this Plan, (ii) the holders of Allowed Kelso Notes Claims who are receiving New Stock pursuant to this Plan and (iii) the holders of Allowed Unexchanged Notes Claims who are receiving New Stock pursuant to this Plan.  The amount of the New Stock to be issued pursuant to this Plan shall be disclosed in the Plan Supplement.

All of the New Stock issued pursuant to this Plan shall be duly authorized and validly issued.  Each Distribution and issuance referred to in this Article VII shall be governed by the terms and conditions set forth herein applicable to such Distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such Distribution or issuance, including the Reorganized Holding Certificate of Incorporation and the Reorganized Holding Shareholder Agreement, which terms and conditions shall bind each Person receiving such Distribution or issuance.  Upon the Effective Date, the Reorganized Holding Certificate of Incorporation and Reorganized Holder Shareholder Agreement shall be deemed to become valid, binding and enforceable in accordance with its terms, and each holder of New Stock shall be bound thereby, in each case, without need for execution by any party thereto other than Reorganized Holding; *provided* that any party that receives New Stock under this Plan is directed to furnish the Reorganized Debtor with such information and documents as are necessary to evidence their ownership of New Stock and their becoming a party to the Reorganized Holder Shareholder Agreement.

D.      **Avoidance Actions.**

On the Effective Date, the Reorganized Debtors shall retain the exclusive right to commence, prosecute, or settle all Causes of Action, including Avoidance Actions, as appropriate in accordance with the best interests of the Reorganized Debtors subject to the releases and exculpations contained in this Plan, the Interim DIP Order, the Final DIP Order, and the DIP Credit Agreement.

E.      **Restructuring Transactions.**

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may modify their corporate structure by eliminating certain entities and may take all actions as may be necessary or appropriate to effect such transactions, including any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the

terms of this Plan and having other terms to which the applicable parties may agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion (including related formation) or dissolution pursuant to applicable state law; and (iv) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.  Prior to the Effective Date, the Debtors shall have obtained the consent of the Supporting Lenders and the Required Supporting Noteholders or the Unanimous Supporting Noteholders as provided for in the Restructuring Support Agreement Term Sheet, regarding their intentions with respect to the restructuring transactions.

### F.    <u>Corporate Action.</u>

Upon the Effective Date, all corporate actions contemplated by this Plan shall be deemed authorized and approved in all respects, including (i) the transactions contemplated by Article VII.D hereof, (ii) the adoption and filing of appropriate certificates of incorporation and memoranda and articles of association and amendments thereto, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable law, (iii) the initial selection of managers, directors and officers for the Reorganized Debtors, (iv) the Distributions pursuant to this Plan, (v) the execution and entry into the Exit Financing Facilities, and (vi) all other actions contemplated by this Plan (whether to occur before, on, or after the Effective Date), in each case unless otherwise provided in this Plan.  All matters provided for under this Plan involving the corporate structure of the Debtors and Reorganized Debtors or corporate action to be taken by or required of a Debtor or a Reorganized Debtor will be deemed to occur and be effective as of the Effective Date, if no such other date is specified in such documents, and shall be authorized, approved, adopted and, to the extent taken prior to the Effective Date, ratified and confirmed in all respects and for all purposes without any requirement of further action by holders of Claims or Interests, directors of the Debtors or the Reorganized Debtors, as applicable, or any other Person, except to effect the filing of any new corporate governance documents respecting the Debtors, as necessary.

### G.    <u>Effectuating Documents; Further Transactions.</u>

On and after the Effective Date, the Reorganized Debtors and the officers and directors of the boards of directors thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and the securities issued pursuant to this Plan in the name of and on behalf of the Reorganized Debtors, without need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan and applicable non-bankruptcy law.

### H.    <u>Reorganized Holding Certificate of Incorporation and By-Laws</u>

On or promptly after the Effective Date, Reorganized Holding will file the Reorganized Holding Certificate of Incorporation with the Secretary of State and/or other applicable authorities in its state of incorporation in accordance with the corporate laws of that state.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the Reorganized Holding

Certificate of Incorporation will prohibit the issuance of non-voting equity securities.  After the Effective Date, Reorganized Holding may amend and restate the Reorganized Holding Certificate of Incorporation and Reorganized By-Laws as permitted by the laws of its state of incorporation, and the Reorganized Holding Constituent Documents.  The Reorganized Holding Constituent Documents shall be substantially in the form set forth in the Plan Supplement.

## I.    Cancellation of Securities and Agreements.

On the Effective Date, except as otherwise specifically provided for in this Plan, including as provided for in Article IX.L hereof: (1) the obligations of the Debtors under the Credit Agreement, the 2010 Indenture, and the 2015 Indenture and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to this Plan), shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the membership interests, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to this Plan) shall be released and discharged; provided, however, notwithstanding confirmation of this Plan or the occurrence of the Effective Date, any agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of allowing holders to receive Distributions under this Plan as provided herein; provided, further, notwithstanding confirmation of this Plan or the occurrence of the Effective Date, the Credit Agreement, the 2010 Indenture and the 2015 Indenture shall continue in effect solely for the purposes of allowing the Revolving Facility Lenders Claims, GSO Notes Claims, Kelso Notes Claims, and Unexchanged Notes Claims under this Plan; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order or this Plan, or result in any expense or liability to the Reorganized Debtors.

## J.    Distributions in Respect of Allowed Claims.

1.    **Record Date for Distributions.**  As of the close of business on the Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes made to reflect any new record holders of any Claims or Equity Interests occurring on or after the Record Date.  The Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of any Claims or Equity Interests occurring after the Record Date.

2.    **Date of Distributions.**  Except as otherwise provided herein, Distributions and deliveries under this Plan with respect to Allowed Claims shall be made before the close of business on or as soon as reasonably practicable after the Effective Date.  In the event that any

payment or act under this Plan is required to be made or performed on a date that is not a Business Day, the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

3.      **Disbursing Agent.**  Except as otherwise provided herein, all Distributions under this Plan shall be made by the Reorganized Debtors as Disbursing Agent or such other Entity (as defined in section 101(15) of the Bankruptcy Code) designated by the Reorganized Debtors to assist the Disbursing Agent on the Effective Date.  If the Disbursing Agent is an independent third party designated by the Reorganized Debtors to serve in such capacity, such Disbursing Agent shall receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to this Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Court.  If otherwise so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

4.      **Powers of Disbursing Agent.**  The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (ii) make all Distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by Final Order of the Court or pursuant to this Plan.

5.      **Delivery of Distributions.**

Except as otherwise provided herein, the Disbursing Agent shall make Distributions to holders of Allowed Claims at the address for each holder indicated on the Debtors' records as of the date of any such Distribution unless such addresses are superseded by Proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001 by the Record Date.  If any Distribution to a holder of a Claim is returned as undeliverable, no further Distributions shall be made unless and until the Disbursing Agent is notified of the then-current address of such holder of the Claim, at which time all missed distributions shall be made to such holder of the Claim without interest.  Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such Distributions are claimed.  The Reorganized Debtors shall make reasonable efforts to locate holders of undeliverable Distributions.

Except as otherwise provided herein, all Distributions to holders of DIP Facilities Claims shall be governed by the DIP Credit Agreement.

Except as otherwise provided herein, all Distributions to holders of GSO Notes Claims, Kelso Notes Claims, and Unexchanged Notes Claims shall be governed by the 2015 Indenture and the 2010 Indenture, as applicable, and shall be deemed completed when made to their respective Indenture Trustees, who shall in turn make Distributions in accordance with the 2010 Indenture and the 2015 Indenture, as applicable, for further distribution to holders of GSO Claims, Kelso Notes Claims, and Unexchanged Notes Claims; *provided* that the Debtors reserve the right to include in the Confirmation Order a protocol under which holders of Notes are

required to submit information necessary to validate their Notes holdings and to receive their New Stock.

6. **Distribution of Cash.**  Any payment of Cash by the Reorganized Debtors pursuant to this Plan shall be made at the option and in the sole discretion of the Reorganized Debtors by (i) a check drawn on, or (ii) wire transfer from, a U.S. domestic bank selected by the Reorganized Debtors; *provided that,* any Cash paid to the Revolving Facility Lenders or Revolving Facility Agent shall be made by wire transfer.

7. **Unclaimed Distributions**.  Any Distribution under this Plan, other than a distribution of New Stock to holders of Notes, which shall be subject to a Court approved distribution protocol, that is unclaimed six (6) months after the Disbursing Agent has delivered (or has attempted to deliver) such Distribution shall become the property of the Reorganized Debtor against which such Claim was Allowed notwithstanding any federal or state escheat, abandoned or unclaimed property laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim to such Distribution or any subsequent Distribution on account of such Allowed Claim shall be discharged and forever barred.  In the case of any unclaimed Distributions of New Stock that remain unclaimed for six (6) months after the Disbursing Agent has delivered (or attempted to deliver) such Distribution, such unclaimed New Stock shall be forfeited, and the holder of the Allowed Claim otherwise entitled to receive such New Stock shall have forever forfeited its right to receive any recovery or Distribution under this Plan on account of its Allowed Claim.

8. **Fractional New Stock and De Minimis Distributions.**

Notwithstanding any other provision in this Plan to the contrary, no fractional units of New Stock shall be issued or distributed pursuant to this Plan.  Whenever any payment of a fraction of a unit of New Stock would otherwise be required under this Plan, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole share (up or down), with half Interests or less being rounded down and fractions in excess of a half of an Interest being rounded up.  Any holder whose Claim has been so rounded down shall not be entitled to receive any compensation whatsoever on account of such reduction.  If two or more holders are entitled to equal fractional entitlements and the number of holders so entitled exceeds the number of whole Interests, as the case may be, which remain to be allocated, the Reorganized Debtors shall allocate the remaining whole units to such holders by random lot or such other impartial method as the Reorganized Debtors deem fair, in their sole discretion. Upon the allocation of all of the whole New Stock authorized under this Plan, all remaining fractional portions of the entitlements shall be canceled and shall be of no further force and effect.

The Debtors or the Reorganized Debtors, as the case may be, shall not be required to, but may in their discretion, make distributions to any holder of a Claim of Cash in an amount less than twenty-five dollars ($25).  In addition, the Debtors and the Reorganized Debtors shall not be required to, but may in their discretion, make any payment on account of any Claim in the event that the costs of making such payment exceeds the amount of such payment.

9. **Interest on Claims**.  Except as expressly provided for in this Plan, the Confirmation Order or any contract, instrument, release, settlement or other agreement entered

into in connection with this Plan, or as required by applicable bankruptcy law, including sections 511 and 1129(a)(9)(C)-(D) of the Bankruptcy Code, post-Petition Date interest shall not be treated as accruing in respect of any Claim for purposes of determining the allowance of, and Distribution for or on account of, such Claim.

10.     **Withholding and Reporting Requirements**.   In connection with this Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all Distributions under this Plan shall be subject to any such withholding or reporting requirements.

11.     **Setoffs.**   Except as otherwise expressly provided in this Plan, the Debtors and the Reorganized Debtors, as applicable, may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which Distribution shall be made), any claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim the Debtors or the Reorganized Debtors may have against the holder of such Claim.  Nothing in this Plan shall be deemed to expand rights to setoff under applicable non-bankruptcy law.

12.     **Allocation of Consideration**.   To the extent that any Allowed Claim entitled to a Distribution under this Plan is comprised of indebtedness and, accrued but unpaid interest thereon, the consideration distributed to the holder of such Allowed Claim shall be treated as first satisfying the principal amount of such Claim (as determined for federal income tax purposes), and any remaining consideration shall be treated as satisfying accrued but unpaid interest.

### K.     **Resolution of Disputed Claims.**

1.     **Objections to Claims.**   From and after the Effective Date, the Reorganized Debtors shall have the right to object to any and all Claims that have not been previously Allowed.  Any objections to Claims shall be filed and served on or before the later of (i) one hundred and eighty (180) days after the Effective Date, and (ii) such later date as may be fixed by the Court upon a motion by the Reorganized Debtors without notice to any party or a hearing, which later date may be fixed before or after the date specified in clause (i) above.  No objection shall be required with respect to a Proof of Claim filed after the applicable Bar Date, and any and all such Claims shall be deemed disallowed unless otherwise ordered by the Court after notice and a hearing.  Objections to Professional Fee Claims shall be filed and served in accordance with Article III.B.

2.     **Settlement of Claims.**   Notwithstanding the requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Reorganized Debtors shall have the authority to settle or compromise any claim or objections or proceedings relating to the allowance of Claims as and to the extent deemed prudent and reasonable without further review or approval of the Court and without the need to file a formal objection.  Nothing

31

in this Article VII.K shall be deemed to affect or modify the applicable Bar Dates previously established in the Chapter 11 Cases.

3.    **No Distributions Pending Allowance.**    Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the disputed portion of such Claim until the disputed portion of such Claim becomes an Allowed Claim.

4.    **General Unsecured Claim Cash Pool.**    On the Effective Date or as soon as practicable thereafter, the Reorganized Debtors shall establish the General Unsecured Claim Cash Pool.    Cash held in the General Unsecured Claim Cash Pool shall be held by the Reorganized Debtors in trust for the benefit of holders of Allowed General Unsecured Claims. Cash held in the General Unsecured Claim Cash Pool shall not constitute property of the Reorganized Debtors.    Each holder of a Disputed General Unsecured Claim that becomes an Allowed General Unsecured Claim shall have recourse only to the undistributed Cash in the General Unsecured Claim Cash Pool for satisfaction of such Allowed General Unsecured Claim and not to any Reorganized Debtor.

5.    **Distributions after Allowance.**    In the event that a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim such holder's Pro Rata portion of the property distributable with respect to the Class in which such Claim is classified herein.    To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any Distributions on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated Pro Rata to the holders of Allowed Claims in the same Class. Nothing set forth herein is intended to, nor shall it, prohibit the Reorganized Debtors, in their sole discretion, from making a Distribution on account of any Claim at any time after such Claim becomes an Allowed Claim.    Notwithstanding anything to the contrary in this Plan, no distributions shall be made from the General Unsecured Claim Cash Pool until all Disputed General Unsecured Claims are resolved and either become Allowed or disallowed by Final Order or estimated by Final Order for purposes of distribution.

6.    **Interest on Disputed Claims.**    Unless otherwise specifically provided for in this Plan or as otherwise required by sections 506(b), 511 or 1129(a)(9)(C)-(D) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes and Allowed Claim.

7.    **Estimation of Claims.**    The Debtors or the Reorganized Debtors may at any time request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim or whether the Court has ruled on any such objection.    The Court will retain jurisdiction to estimate any Claim at any time during the pendency of litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.    In the event that the Court estimates any Disputed Claim, such estimated amount shall constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to this

Plan or (c) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court.

**L.     Issuance of New Secured Notes.**

**1.**     Subject to the terms hereof, on the Effective Date, to the extent applicable, the Reorganized Debtors shall execute and deliver the New Secured Notes on the terms set forth herein and otherwise in form and substance satisfactory to the Supporting Lenders and the Required Supporting Noteholders. If applicable, confirmation of this Plan shall be deemed to constitute approval of the New Secured Notes, and, subject to the occurrence of the Effective Date, authorization for the Reorganized Debtors to enter into and perform their obligations in connection with the New Secured Notes. All parties receiving the New Secured Notes under the Plan, upon receipt thereof, are deemed bound to the terms of the New Secured Notes and subject to the terms of the Exit Financing Intercreditor Agreement.

On the Effective Date, to the extent that they are executed and delivered by the Reorganized Debtors, the New Secured Notes shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. The financial accommodations to be extended pursuant to the New Secured Notes are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever, and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Secured Notes (1) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Secured Notes, (2) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Secured Notes, and (3) except as expressly permitted in the New Secured Notes, shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

## VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption and Rejection of Executory Contracts and Unexpired Leases.

Except as otherwise provided herein or in any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, as of the Effective Date, all executory contracts and unexpired leases governed by section 365 of the Bankruptcy Code to which any of the Debtors are parties are hereby assumed except for any executory contract or unexpired lease that (i) previously has been assumed or rejected by the Debtors in the Chapter 11 Cases, (ii) previously expired or terminated pursuant to its own terms; (iii) is specifically identified on the Schedule of Rejected Contracts and Leases, or (iv) is the subject of a separate motion to assume or reject such executory contract or unexpired lease filed by the Debtors under section 365 of the Bankruptcy Code prior to the Effective Date.   The Debtors reserve the right to amend the Schedule of Rejected Contracts and Leases at any time prior to the Effective Date, subject to the consent of the Required Supporting Noteholders, the Supporting Lenders, and the Supporting Interest Holders.

### B.    Cure.

Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Article VIII.A hereof, not less than fifteen (15) Business Days prior to the Confirmation Hearing, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code, and consistent with the requirements of section 365 of the Bankruptcy Code, file and serve a notice with the Court listing the cure amounts of all executory contracts or unexpired leases to be assumed.   The parties to such executory contracts or unexpired leases to be assumed by the Debtors shall have ten (10) Business Days from service of such pleading to object to the cure amounts listed by the Debtors.   If there are any objections filed with respect thereto, the Court shall conduct a hearing to consider such cure amounts and any objections thereto.   The Debtors shall retain their right to reject any of their executory contracts or unexpired leases, including any executory contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults.

C. __Rejection Damage Claims.__

Any and all Claims for damages arising from the rejection of an executory contract or unexpired lease must be filed with the Court in accordance with the terms of the Final Order authorizing such rejection, but in no event later than thirty (30) days after the Effective Date to the extent an earlier time has not been established by the Court. Any Claims for damages arising from the rejection of an executory contract or unexpired lease that is not filed within such time period will be forever barred from assertion against the Debtors, their respective Estates and the Reorganized Debtors. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as General Unsecured Claims.

D. __Restrictions on Assignment Void.__

Any executory contract or unexpired lease assumed or assumed and assigned shall remain in full force and effect to the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment, including based on any change of control provision. Any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease, terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition thereof (including on account of any change of control provision) on any such transfer or assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

No sections or provisions of any executory contract or unexpired lease that purport to provide for additional payments, penalties, charges, rent acceleration, or other financial accommodations in favor of the non-debtor third party thereto shall have any force and effect with respect to the transactions contemplated hereunder, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and are otherwise unenforceable under section 365(e) of the Bankruptcy Code.

E. __Benefit Plans.__

As of and subject to the Effective Date, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, including agreements and programs subject to section 1114 of the Bankruptcy Code, as in effect on the Effective Date, including all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, and life, accidental death, and dismemberment insurance plans, and senior executive retirement plans, but expressly excluding any nonqualified deferred compensation plans that are treated as unfunded plan for tax purposes and Title I of ERISA, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under this Plan, and the Debtors' obligations under all such agreements and programs shall survive the Effective Date of this Plan, without prejudice to the Reorganized Debtors' rights under applicable nonbankruptcy law to modify, amend, or terminate the foregoing arrangements in accordance with the terms and

provisions thereof, except for (i) such executory contracts or plans specifically rejected pursuant to this Plan (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, benefits, contracts, or programs.

F.      **Workers' Compensation and Insurance Programs.**

(i) All applicable workers' compensation laws in states in which the Reorganized Debtors operate and (ii) all of the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds and any other policies, programs and plans regarding or relating to workers' compensation, workers' compensation insurance, and all other forms of insurance are treated as executory contracts under this Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, with a cure amount of zero dollars.

## IX.

## EFFECT OF CONFIRMATION OF THIS PLAN

A.      **Continued Corporate Existence.**

Except as otherwise provided herein, including as provided with respect to Reorganized Holding in Article V.B hereof, or as may be provided in the Confirmation Order, each Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate corporate entity, or limited liability company, as the case may be, with all the powers thereof, pursuant to the applicable law in the jurisdiction in which each applicable Reorganized Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificates of incorporation and by-laws (or other formation documents) are amended by the Plan and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

B.      **Vesting of Assets.**

Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date all property in each Estate, all Causes of Action, and any other property acquired by any of the Debtors pursuant to this Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens granted to secure the Exit Financing Facilities and any Liens applicable to any capitalized leases existing on the Effective Date).  On and after the Effective Date, except as otherwise provided in this Plan, each Reorganized Debtor may operate its business and conduct its affairs, and may use, acquire, or dispose of its property and assets and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

C.      **Preservation of Causes of Action.**

        Subject to the releases and exculpations set forth in the Plan, the Interim DIP Order, the Final DIP Order, and the DIP Credit Agreement, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Debtors and the Reorganized Debtors shall retain all Litigation Rights, and nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such Litigation Rights.  The Debtors may (but are not required to) enforce all Litigation Rights and all other similar claims arising under applicable state laws, including fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code.  Except as otherwise set forth in this Plan, the Reorganized Debtors, as applicable, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce any such Litigation Rights (or decline to do any of the foregoing), and shall not be required to seek further approval of the Court for such action.  Except as otherwise set forth in this Plan, the Debtors, the Reorganized Debtors, or any successors thereof may pursue such Litigation Rights in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.

D.      **Discharge of the Debtors.**

        Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of any and all Claims and Causes of Action (whether known or unknown) against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property or assets shall have been distributed or retained pursuant to this Plan on account of such Claims, rights, and Interests, including Claims and Interests that arose before the Effective Date, any liability (including withdrawal liability to the extent such Claims relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program which occurred prior to the Effective Date), and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest was filed, is filed, or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interests based upon such Claim, debt, right, or Interest is Allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted this Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the terms thereof and the occurrence of the Effective Date.

E.      **Releases by the Debtors of Certain Parties.**

        **TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, PURSUANT TO SECTION 1123(B)(3) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE ACTIONS OF THE RELEASED PARTIES TO FACILITATE THE REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, EFFECTIVE AS OF THE EFFECTIVE DATE,**

EACH DEBTOR, IN ITS INDIVIDUAL CAPACITY AND AS A DEBTOR IN POSSESSION FOR ITSELF AND ON BEHALF OF ITS ESTATE, AND ANY PERSON CLAIMING THROUGH, ON BEHALF OF, OR FOR THE BENEFIT OF EACH DEBTOR AND ITS ESTATE, SHALL RELEASE AND DISCHARGE AND BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED ALL RELEASED PARTIES FOR AND FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ARISING FROM OR RELATED TO ANY ACTIONS, TRANSACTIONS, EVENTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE RELATING TO THE DEBTORS, THE CHAPTER 11 CASES OR THE OBLIGATIONS UNDER THE 2010 INDENTURE, THE 2015 INDENTURE, THE DIP FACILITIES, AND THE CREDIT AGREEMENT; <u>PROVIDED</u>, <u>HOWEVER</u>, THE FOREGOING RELEASE SHALL NOT APPLY TO POST-EFFECTIVE DATE OBLIGATIONS ARISING UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT AND THE EXIT FINANCING FACILITIES) EXECUTED TO IMPLEMENT THE PLAN.  THE REORGANIZED DEBTORS SHALL BE BOUND, TO THE SAME EXTENT THAT THE DEBTORS ARE BOUND, BY THE RELEASES AND DISCHARGES SET FORTH ABOVE.

      F.    <u>Releases by Non-Debtors</u>.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE ACTIONS OF THE RELEASED PARTIES TO FACILITATE THE REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, ON THE EFFECTIVE DATE, EACH PERSON WHO DIRECTLY OR INDIRECTLY, HAS HELD, HOLDS, OR MAY HOLD ANY CLAIM AGAINST THE DEBTORS OR INTEREST IN THE DEBTORS SHALL RELEASE AND DISCHARGE AND BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED ALL RELEASED PARTIES FOR AND FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ARISING FROM OR RELATED TO ANY ACTIONS, TRANSACTIONS, EVENTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE RELATING TO THE DEBTORS, THE CHAPTER 11 CASES OR THE OBLIGATIONS UNDER THE 2010 INDENTURE, THE 2015 INDENTURE, THE DIP FACILITIES, AND THE CREDIT AGREEMENT; <u>PROVIDED</u>, <u>HOWEVER</u>, THE FOREGOING RELEASE SHALL NOT APPLY TO POST-EFFECTIVE DATE OBLIGATIONS ARISING UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT AND THE EXIT FINANCING FACILITIES) EXECUTED TO IMPLEMENT THE PLAN.

G.   <u>Exculpation</u>.

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, NO EXCULPATED PARTY SHALL HAVE OR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, OR ARISING OUT OF THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, FILING, IMPLANTATION, ADMINISTRATION, CONFIRMATION OR CONSUMMATION OF THIS PLAN, THE DISCLOSURE STATEMENT, THE EXHIBITS TO THIS PLAN AND THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT DOCUMENTS, ANY EMPLOYEE BENEFIT PLAN, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED, MODIFIED, AMENDED OR ENTERED INTO IN CONNECTION WITH THIS PLAN, EXCEPT FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER AND EXCEPT WITH RESPECT TO OBLIGATIONS ARISING UNDER CONFIDENTIALITY AGREEMENTS, JOINT INTEREST AGREEMENTS, OR PROTECTIVE ORDERS, IF ANY, ENTERED DURING THE CHAPTER 11 CASES; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO, OR IN CONNECTION WITH, THE ABOVE REFERENCED DOCUMENTS, ACTIONS, OR INACTIONS.

H.   <u>Injunction</u>.

THE SATISFACTION, RELEASE, AND DISCHARGE PURSUANT TO THIS ARTICLE IX SHALL ACT AS A PERMANENT INJUNCTION AGAINST ANY ENTITY COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS, OR ACT TO COLLECT, OFFSET OR RECOVER ANY CLAIM, INTEREST, OR CAUSE OF ACTION SATISFIED, RELEASED, OR DISCHARGED UNDER THIS PLAN TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED BY THE BANKRUPTCY CODE, INCLUDING TO THE EXTENT PROVIDED FOR OR AUTHORIZED BY SECTIONS 524 OR 1141 OF THE BANKRUPTCY CODE.

WITHOUT LIMITING THE FOREGOING, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS AND INTERESTS THAT HAVE BEEN RELEASED OR DISCHARGED PURSUANT TO THIS ARTICLE IX, OR ARE SUBJECT TO EXCULPATION PURSUANT TO THIS ARTICLE IX, SHALL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE RELEASED PARTIES OR THE EXCULPATED PARTIES: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON

**ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (D) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN.**

      I.        <u>**Term of Bankruptcy Injunction or Stays.**</u>

      All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

      J.        <u>**Setoff.**</u>

      Notwithstanding anything herein, in no event shall any holder of a Claim be entitled to setoff any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, unless such holder preserves its right to setoff by filing a motion  for authority to effect such setoff on or before the Confirmation Date (regardless of whether such motion is heard prior to or after the Confirmation Date), and notwithstanding any indication in any proof of claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

      K.        <u>**Preservation of Insurance.**</u>

      Except as otherwise provided herein, the Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors or the Reorganized Debtors, including their officers and current and former directors, or any other person or entity.

      L.        <u>**Indemnification Obligations.**</u>

      The Debtors' obligations to indemnify the Indemnified Parties shall survive and shall continue in full force and effect for the benefit of the Indemnified Parties, notwithstanding confirmation of and effectiveness of the Plan, and such indemnification shall include, but not be limited to, all actions taken in connection with the Restructuring Support Agreement, the Restructuring Support Agreement Term Sheet, the filing of the Chapter 11 Cases, the DIP Facilities, the Interim DIP Order, the Final DIP Order and the DIP Credit Agreement.

## X.

### EFFECTIVENESS OF THIS PLAN

**A.**     <u>**Conditions Precedent to Confirmation.**</u>

It shall be a condition to confirmation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C hereof:

1.     the Confirmation Order, in form and substance reasonably acceptable to the Debtors, the Required Supporting Noteholders, the Supporting Lenders, the Supporting Interest Holders, the DIP Agent, and the Required Lenders shall have been entered and shall be in full force and effect and there shall not be a stay or injunction in effect with respect thereto; and

2.     this Plan, the Plan Supplement, and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance reasonably acceptable to the Debtors, the Required Supporting Noteholders, the Supporting Lenders, the Supporting Interest Holders, the DIP Agent, and the Required Lenders.

**B.**     <u>**Conditions Precedent to the Effective Date.**</u>

It shall be a condition to the Effective Date of this Plan that the following provisions, terms and conditions are approved or waived pursuant to the provisions of Article X.C hereof:

1.     the Confirmation Order, in form and substance reasonably acceptable to the Debtors, the Required Supporting Noteholders, the Supporting Lenders, the Supporting Interest Holders, the DIP Agent, and the Required Lenders shall have been entered by the Court;

2.     the Confirmation Order shall have become a Final Order;

3.     the Confirmation Order shall have approved the limited substantive consolidation of the Debtors provided under Article VI of this Plan;

4.     the Exit First Lien Facility shall be executed, all conditions precedent to the consummation thereof shall been waived or satisfied in accordance with the terms thereof, the closing shall have occurred and the loans thereunder shall be funded or scheduled for funding upon consummation of this Plan (or, with respect to the Exit Revolving Facility, deemed funded as contemplated by Article IV.B.3 of this Plan);

5.     the Exit Second Lien Facility shall be executed, all conditions precedent to the consummation thereof shall been waived or satisfied in accordance with the terms thereof, the closing shall have occurred and the loans thereunder shall be deemed funded as contemplated by Article III.E of this Plan;

6.     the Reorganized Debtors shall be private, non-SEC reporting companies on the Effective Date;

7.    the Debtors shall have paid all fees and reasonable and documented out-of-pocket expenses payable to the Unanimous Supporting Noteholders, the Supporting Lenders, the Supporting Interest Holders, the Revolving Facility Agent, the DIP Agent, and the Indenture Trustees, including all reasonable and documented out-of-pocket fees and expenses of counsel and other professionals of the Unanimous Supporting Noteholders, the Supporting Lenders, the Supporting Interest Holders, the Revolving Facility Agent, the DIP Agent, and the Indenture Trustees;

8.    all authorizations, consents and regulatory approvals required (if any) for this Plan's effectiveness shall have been obtained; and

9.    the formation and governance documents for each of the Reorganized Debtors shall be consistent with this Plan and the Restructuring Support Agreement Term Sheet, and shall be reasonably acceptable to the Required Supporting Parties.

### C.    Waiver of Conditions.

The conditions to confirmation of this Plan and to the Effective Date set forth in Article X.A and X.B hereof may be waived by the Debtors (with the consent of the Required Supporting Parties, the DIP Agent, and the Required Lenders) without notice, leave or order of the Court or any formal action other than proceeding to confirm or consummate this Plan.

### D.    Notice of Confirmation and Effective Date.

On or before five (5) Business Days after the occurrence of the Effective Date, the Reorganized Debtors shall mail or cause to be mailed to all holders of Claims and Interests a notice that informs such holders of (i) the entry of the Confirmation Order, (ii) the occurrence of the Effective Date, (iii) the occurrence of the Administrative Claims Bar Date and deadline for submission of Professional Fee Claims, and (iv) such other matters as the Debtors deem appropriate.

### E.    Effect of Failure of Conditions.

In the event that the Effective Date does not occur:  (a) the Confirmation Order shall be vacated; (b) no Distributions under this Plan shall be made; (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (d) the Debtors' obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained in this Plan shall (i) constitute or be deemed a waiver or release of any Claims against or any Equity Interests in  the Debtors or any other Person, (ii) prejudice in any manner any right, remedy or claim of the Debtors or any Person in any further proceedings involving the Debtors or otherwise, or (iii) be deemed an admission against interest by the Debtors or any other Person.

### F.    Vacatur of Confirmation Order.

If a Final Order denying confirmation of this Plan is entered, or if the Confirmation Order is vacated, then this Plan shall be null and void in all respects, and nothing

contained in this Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors, (b) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors, (c) prejudice in any manner any right, remedy or claim of the Debtors, or (d) be deemed an admission against interest by the Debtors.

### G.   Revocation, Withdrawal, Modification or Non-Consummation.

The Debtors reserve the right to revoke, withdraw, amend or modify this Plan at any time prior to the Confirmation Date (in each case subject to the consent of the Required Supporting Parties, the DIP Agent, and the Required Lenders, except as otherwise provided in Article XII.C of this Plan). If the Debtors revoke or withdraw this Plan, the Confirmation Order is not entered, or the Effective Date does not occur, (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting the amount of any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute or be deemed a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (b) prejudice in any manner any right, remedy or claim of the Debtors or any other Person in any further proceeding involving the Debtors or otherwise, or (c) constitute an admission against interest by the Debtors or any other Person.

## XI.

## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes:

1.   to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom;

2.   to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date;

3.   to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

4.   to resolve disputes as to the ownership of any Claim or Equity Interest;

5.   to hear and determine timely objections to Claims;

6.   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7. to issue such orders in aid of execution of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

8. to consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

9. to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 328, 330, 331 and 503(b) of the Bankruptcy Code;

10. to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

11. to hear and determine any issue for which this Plan requires a Final Order of the Court;

12. to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

13. to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for the Supporting Lenders, the Unanimous Supporting Noteholders, the Supporting Interest Holders, the Revolving Facility Agent, the DIP Agent, and the Indenture Trustees for services rendered and expenses incurred during the period commencing on the Petition Date through and including the Effective Date;

14. to hear and determine any Causes of Action preserved under this Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3);

15. to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge;

16. to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article IX of this Plan; and

17. to enter a final decree closing the Chapter 11 Cases.

Notwithstanding anything to the contrary in this Article XI, the Exit Revolving Facility, the Exit Revolving Credit Agreement and the Exit Second Lien Facility (and all related loan documents) shall be governed by the jurisdictional provisions therein and the Court shall not retain jurisdiction for matters under those agreements.

If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, then Article XI of this Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**XII.**

**MISCELLANEOUS PROVISIONS**

**A.**      **Payment of Fees and Expenses of Supporting Lenders, Unanimous Supporting Noteholders, Supporting Interest Holders, Revolving Facility Agent, DIP Agent, and Indenture Trustees.**

On the Effective Date and from time to time thereafter, the Debtors or the Reorganized Debtors shall promptly pay in Cash in full (following receipt of an appropriate invoice in reasonable detail) all reasonable and documented fees and expenses incurred by the Supporting Lenders, the Unanimous Supporting Noteholders, the Supporting Interest Holders, the Revolving Facility Agent, the DIP Agent, and the Indenture Trustees and their advisors in connection with the restructuring described herein that have not previously been paid.   All amounts distributed and paid to the foregoing parties pursuant to this Plan shall not be subject to setoff, recoupment, reduction or allocation of any kind and shall not require the filing or approval of any fee application; *provided* that such amounts shall be subject to the fee review provisions in Paragraph 10(c) of the Interim DIP Order prior to payment.

**B.**      **Modification of this Plan.**

Subject to the limitations contained in this Plan: (1) the Debtors (with the consent of the Required Supporting Parties, the DIP Agent, and the Required Lenders) reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, revoke or withdraw this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors (with the consent of the Required Supporting Parties, the DIP Agent, and the Required Lenders)  or the Reorganized Debtors, as the case may be, may, upon order of the Court, amend or modify this Plan, in accordance with Section 1127(b) of the Bankruptcy Code.

Entry of a Confirmation Order shall result in all modifications or amendments to this Plan occurring after the solicitation thereof being approved pursuant to section 1127(a) of the Bankruptcy Code.

Notwithstanding anything to the contrary herein, the Debtors may revoke or withdraw this Plan upon the occurrence of an unwaived "Termination Event" under (and as defined in) the Restructuring Support Agreement (other than a Termination Event caused by a breach by the Debtors); provided, however, that the Debtors reserve the right to fully or conditionally waive, on a prospective or retroactive basis, the effects of this paragraph in respect of any such Termination Event, with any such waiver effective only if in writing and signed by the Debtors.

**C.**      **Dissolution of Creditors' Committee.**

The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code.  On the Effective Date, the Creditors' Committee shall be dissolved and its members shall

be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, and other agents shall terminate as of the Effective Date.

**D.    Votes Solicited in Good Faith.**

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  The Debtors (and each of their respective affiliates, agents, directors, managers, officers, members, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities offered and sold under this Plan and, therefore, are not, and on account of such offer and issuance will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer or issuance of the securities offered and distributed under this Plan.

**E.    Obligations Incurred After the Effective Date.**

Except as otherwise specifically provided for in this Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash all obligations including the reasonable legal, professional, or other fees and expenses related to the implementation of this Plan incurred by the Reorganized Debtors.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation of services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Court.

**F.    Request for Expedited Determination of Taxes.**

The Reorganized Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns (other than federal tax returns) filed by any of them, or to be filed by any of them, for any and all taxable periods ending after the Petition Date through the Effective Date.

G.      **Determination of Tax Filings and Taxes.**

(a) For all taxable periods ending on or prior to, or including, the Effective Date, the Reorganized Debtors shall prepare and file (or cause to be prepared and filed) on behalf of the Debtors, all combined, consolidated or unitary tax returns, reports, certificates, forms or similar statements or documents for any group of entities that include the Debtors (collectively, "***Group Tax Returns***") required to be filed or that the Reorganized Debtors otherwise deem appropriate, including the filing of amended Group Tax Returns or requests for refunds.

(b) The Reorganized Debtors shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes of the Debtors, including for any taxable period ending on or prior to, or including, the Effective Date.

H.      **Governing Law.**

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Delaware shall govern the construction and implementation of this Plan, any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements or instruments, in which case the governing law of such agreements shall control). Corporate governance matters shall be governed by the laws of the state of incorporation or formation of the applicable Debtor.

I.      **Filing or Execution of Additional Documents.**

On or before the Effective Date, the Debtors (with the consent of the Required Supporting Noteholders, the Supporting Lenders, the Supporting Interest Holders, the DIP Agent, and the Required Lenders) or the Reorganized Debtors, shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

J.      **Exemption From Transfer Taxes.**

Pursuant to section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange under this Plan of the New Stock, (b) the making or assignment of any lease or sublease, or (c) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with this Plan shall not be subject to any stamp, real estate transfer, mortgage, recording sales or use or other similar tax.

K.      **Exemption for Issuance of New Stock and New Secured Notes.**

The issuance of the New Stock and Distribution thereof to holders of Allowed GSO Notes Claims, Allowed Kelso Notes Claims, Allowed Unexchanged Notes Claims and, if applicable, with respect to the CRO Fee Equity Award  under this Plan, to the extent that they are deemed Securities (as defined in the Securities Act of 1933, as amended), shall be authorized and exempt from registration under the securities laws solely to the extent permitted under section 1145 of the Bankruptcy Code, as of the Effective Date without further act or action by any person, unless required by provision of the relevant governance documents or applicable law,

regulation, order or rule; and all documents evidencing the same shall be executed and delivered as provided for in this Plan or the Plan Supplement.

The issuance of the New Secured Notes, if any, and Distribution thereof to holders of Allowed Unexchanged Notes Claims under this Plan, to the extent that they are deemed Securities (as defined in the Securities Act of 1933, as amended), shall be authorized and exempt from registration under the securities laws solely to the extent permitted under section 1145 of the Bankruptcy Code, as of the Effective Date without further act or action by any person, unless required by provision of the relevant governance documents or applicable law, regulation, order or rule; and all documents evidencing the same shall be executed and delivered as provided for in this Plan or the Plan Supplement.

**L.**    **Waiver of Federal Rule of Civil Procedure 62(a).**

The Debtors may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate this Plan immediately after entry of the Confirmation Order.

**M.**    **Exhibits/Schedules.**

All Exhibits and schedules to this Plan and the Plan Supplement are incorporated into and constitute a part of this Plan as if set forth herein.

**N.**    **Notices.**

All notices, requests, and demands hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

To the Debtors:
c/o Logan's Roadhouse, Inc.
3011 Armory Drive, Suite 300
Nashville, Tennessee 37204
Fax No.: (615) 884-9813
Attention: Keith Maib, Chief Restructuring Officer of Finance

with a copy to:

Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Attention:  Robert S. Brady, Esq. and Edmon L. Morton, Esq.
rbrady@ycst.com
emorton@ycst.com

O.     **Plan Supplement.**

The Plan Supplement will be filed with the Clerk of the Court no later than ten (10) calendar days prior to the Confirmation Hearing, unless such date is further extended by order of the Court on notice to parties in interest.  The Plan Supplement may be inspected in the office of the Clerk of the Court during normal court hours and shall be available online at "https://ecf.deb.uscourts.gov."  Holders of Claims or Existing Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtors in accordance with Article XII.N of this Plan or by accessing the website maintained by the Debtors' claims and noticing agent at https://www.donlinrecano.com/Clients/lr/Index.

P.     **Further Actions; Implementations.**

The Debtors shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other or further actions as may be necessary to effectuate or further evidence the terms and conditions of this Plan.  From and after the Confirmation Date, the Debtors shall be authorized to take any and all steps and execute all documents necessary to effectuate the provisions contained in this Plan.

Q.     **Severability.**

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court, at the request of the Debtors (with the consent of the Required Supporting Parties, the DIP Agent, and the Required Lenders), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

R.     **Entire Agreement.**

Except as otherwise indicated, this Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

S.     **Binding Effect.**

This Plan shall be binding on and inure to the benefit of the Debtors, the holders of Claims against and Equity Interests in the Debtors, and each of their respective successors and assigns, including each of the Reorganized Debtors, and all other parties in interest in the Chapter 11 Cases.

Subject to Article X of this Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan, the Plan Supplement and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected this Plan), all entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in this Plan, and any and all non-Debtor parties to the executory contracts and unexpired leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any holder of a Claim or debt has voted on this Plan.

**T.**     **No Change in Ownership or Control.**

Consummation of this Plan is not intended to and shall not constitute a change in ownership or change in control, as defined in any employment or other agreement or plan in effect on the Effective Date to which a Debtor is a party.

**U.**     **Substantial Consummation.**

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code; provided, however, that nothing herein shall prevent the Debtors or any other party in interest from arguing that substantial consummation of this Plan has occurred prior to the Effective Date.

**V.**     **Conflict.**

The terms of this Plan shall govern in the event of any inconsistency with the summaries of this Plan set forth in the Disclosure Statement. In the event of any inconsistency or ambiguity between and among the terms of this Plan, the Disclosure Statement, and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

IN WITNESS WHEREOF, each Debtor has executed this Plan this 16th day of August, 2016.

ROADHOUSE HOLDING INC.

By: */s/ Keith A. Maib*
Name: Keith A. Maib
Title: Chief Restructuring Officer of Finance

LOGAN'S ROADHOUSE, INC.

By: */s/ Keith A. Maib*
Name: Keith A. Maib
Title: Chief Restructuring Officer of Finance


ROADHOUSE INTERMEDIATE INC.

By: */s/ Keith A. Maib*
Name: Keith A. Maib
Title: Chief Restructuring Officer of Finance

LOGAN'S ROADHOUSE OF KANSAS, INC.

By: */s/ Keith A. Maib*
Name: Keith A. Maib
Title: Chief Restructuring Officer of Finance


ROADHOUSE MIDCO INC.

By: */s/ Keith A. Maib*
Name: Keith A. Maib
Title: Chief Restructuring Officer of Finance

LOGAN'S ROADHOUSE OF TEXAS, INC.

By: */s/ Keith A. Maib*
Name: Keith A. Maib
Title: Chief Restructuring Officer of Finance


ROADHOUSE PARENT INC.

By: */s/ Keith A. Maib*
Name: Keith A. Maib
Title: Chief Restructuring Officer of Finance


LRI HOLDINGS, INC.

By: */s/ Keith A. Maib*
Name: Keith A. Maib
Title: Chief Restructuring Officer of Finance