## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ROADHOUSE HOLDING INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-11819 (BLS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 12 & 60** |

**FINAL ORDER (I) PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 507 AND 552 AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING, (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (C) USE CASH COLLATERAL OF PREPETITION SECURED PARTIES, AND (D) GRANT ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; AND (II) GRANTING RELATED RELIEF**

Upon the motion dated August 8, 2016 (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-referenced chapter 11 cases (the "**Bankruptcy Cases**"), for entry of an interim order (the "**Interim Order**") and a final order (this "**Final Order**"), under sections 105, 361, 362, 363, 364, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001(b), 4001(c), 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**") and Rules 4001-2 and 9013-1(m) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"):

(i)     authorizing the Debtors to (A) obtain postpetition financing pursuant to the terms and conditions of that certain Debtor-in-Possession Credit Agreement to be entered into on or about the date hereof substantially in the form attached hereto as Exhibit 1 (as further amended, restated,

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).  The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

[2]   Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Motion or the DIP Credit Agreement (as defined below), as applicable.

supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**") among Logan's Roadhouse, Inc. (a debtor in possession), as borrower (the "**Borrower**"), Cortland Capital Market Services LLC, as administrative agent and collateral agent (the "**DIP Agent**"), the lenders party thereto from time to time (the "**DIP Lenders**") and the Guarantors (as defined below), the obligations of the Borrower under which are guaranteed pursuant to the Guaranty Agreement executed in connection therewith by the guarantors party thereto (the "**Guarantors**" and, together with the Borrower, the "**Loan Parties**"), and (B) incur the Obligations under (and as defined in) the DIP Credit Agreement;

(ii)     authorizing the Debtors to execute and deliver the DIP Loan Documents (as defined in the DIP Credit Agreement as "Loan Documents") and to perform their respective obligations thereunder and such other and further acts as may be required in connection with the DIP Loan Documents, including, without limitation, the payment of all principal, interest, fees, expenses, and other amounts payable under the DIP Loan Documents as such amounts become due and payable;

(iii)    authorizing the Debtors to grant security interests, liens, and super-priority claims, including a super-priority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code (including priming liens pursuant to section 364(d)(1)) of the Bankruptcy Code to the DIP Agent, for the benefit of the DIP Lenders), in the DIP Collateral as set forth herein, including, without limitation, all property constituting "cash collateral," as defined in Bankruptcy Code section 363(a) (the "**Cash Collateral**"), to secure all obligations under the DIP Loan Documents, subordinated on a junior basis only to the Revolving Facility Liens, Revolving Facility Adequate Protection Liens, the Carve-Out and Permitted Liens (each as defined below);

(iv)    authorizing the Debtors' use of Cash Collateral of the Prepetition Secured Parties (as defined below) and the provision of adequate protection to the Prepetition Secured Parties for any diminution in value of their interests in the Prepetition Collateral, including Cash Collateral;

(v)     authorizing the Debtors to borrow under the New Money Facility up to an aggregate principal amount of $25 million (the "**New Money Facility**"), $10 million of which was available following entry of the Interim Order and the satisfaction of the other applicable conditions in the DIP Credit Agreement, with the remainder of the New Money Facility to be made available upon entry of this Final Order and the satisfaction of the other applicable conditions in the DIP Credit Agreement and, in each case, to

2

use the proceeds thereof in accordance with the DIP Budget (as defined herein);

(vi)    authorizing the Debtors to issue new loans (the "**Roll Up Facility**" and together with the New Money Facility, the "**DIP Facilities**"), upon entry of the Interim Order, in exchange for each DIP Lender's claim, or Roll Up Affiliate's claim, for notes issued under the Prepetition Indentures (as defined below) on a dollar-for-dollar basis for every dollar of borrowings actually disbursed under the New Money Facility, and upon entry of this Final Order granting such relief and the corresponding exchange of notes issued under the Prepetition Indentures, additional loans under the Roll Up Facility so that the total loans under the Roll Up Facility received by each DIP Lender that has a claim, or that has a Roll Up Affiliate with a claim, for notes issued under the Prepetition Indentures shall result in an exchange on a 2:1 basis for every dollar of borrowings actually disbursed under the New Money Facility;

(vii)   modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents, the Interim Order and this Final Order; and

(viii)  granting related relief.

An interim hearing on the Motion having been held by this Court on August 9, 2016 (the "**Interim Hearing**") and the Court having entered the Interim Order on August 9, 2016 [Docket No. 60] that, among other things, scheduled a final hearing (the "**Final Hearing**") to consider entry of this Final Order; and this Court having found that the relief requested in the Motion is in the best interest of the Debtors, their estates, their creditors and other parties-in-interest; and this Court having determined that the legal and factual bases set forth in the Motion and all pleadings related thereto, including the *Declaration of Keith A. Maib in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 2], filed contemporaneously with the Motion, and on the record made at the Interim Hearing and Final Hearing, adequately establish just cause for the relief granted herein; and all objections, if any, to entry of this Final Order

having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

### THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[3]

A.    On August 8, 2016 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Each Debtor's bankruptcy case (collectively, the "**Bankruptcy Cases**") is being jointly administered for procedural purposes only under case number 16-11819 (BLS). On August 19, 2016, the Office of the United States Trustee for Region 3, serving the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Committee**"), as provided for under section 1102 of the Bankruptcy Code.

B.    This Court has jurisdiction over the Bankruptcy Cases, the Motion and the parties and property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution. Venue of the Bankruptcy Cases is proper before this District pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The Debtors filed the Motion with this Court pursuant to Rules 2002, 4001 and 9014, and provided notice of the Motion, entry of the Interim Order and the Final Hearing by facsimile, electronic mail or overnight mail to the following parties and/or their respective

---

[3]    The findings and conclusions set forth in this Final Order constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

counsel as indicated below: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to GSO Capital Partners LP ("**GSO**"); (iv) counsel to Kelso & Company, L.P. ("**Kelso**"); (v) counsel to Carl Marks Management Company, LLC ("**Carl Marks**") and Marblegate Asset Management, LLC ("**Marblegate**"); (vi) counsel to JPMorgan Chase Bank, N.A., in its capacity as Administrative Agent and Collateral Agent (in such capacity, the "**Revolving Facility Agent**") under the Credit Agreement dated as of October 4, 2010, among Roadhouse Financing, Inc. (now known as Logan's Roadhouse, Inc.), Roadhouse Merger, Inc. (now known as LRI Holdings, Inc.), JPMorgan Chase Bank, N.A., as Administrative Agent and the lenders party thereto (the "**Revolving Facility Lenders**"), and all exhibits, amendments, and supplements thereto (the "**Credit Agreement**"), (vii) counsel to the trustee (the "**2015 Trustee**") under that certain Indenture dated as of October 15, 2015, among Logan's Roadhouse, Inc., LRI Holdings, Inc. and Wells Fargo Bank, N.A., as trustee and collateral agent, and all exhibits, amendments, and supplements thereto, including, without limitation, the Series 2015-1 Supplemental Indenture dated October 15, 2015, the Second Series 2015-1 Supplemental Indenture dated October 15, 2015 and the Series 2015-2 Supplemental Indenture dated October 15, 2015 (collectively, the "**2015 Indenture**"), (viii) counsel to the trustee (the "**2010 Trustee**," together with the 2015 Trustee, the "**Trustees**," and the Trustees together with the Revolving Facility Agent, the "**Prepetition Agents**") under that certain Senior Secured Notes Indenture, dated as of October 4, 2010, among Roadhouse Financing, Inc., Roadhouse Merger, Inc. and BOKF, N.A., as trustee and collateral agent, and all exhibits, amendments, and supplements thereto (the "**2010 Indenture**," and together with the 2015 Indenture, the "**Prepetition Indentures**"); (ix) counsel to the DIP Agent; (x) counsel to the DIP Lenders; (xi) the creditors (excluding insiders) holding the 30 largest unsecured claims against the Debtors on a consolidated basis; (xii) the United

5

States Attorney's Office for the District of Delaware; (xiii) the United States Attorney General; (xiv) the Internal Revenue Service; (xv) the Securities and Exchange Commission; (xvi) all entities known or reasonably believed to have asserted a security interest or lien against property of the Debtors; and (xvii) all parties entitled to notice pursuant to Local Rule 9013-1(m) (the parties set forth in the preceding clauses (i) through (xvii), collectively, the "**Notice Parties**"). Given the nature of the relief sought in the Motion and the exigent circumstances underlying the relief requested thereby, this Court concludes that no further notice is necessary for entry of this Final Order.

D.    The Debtors and (i) the Revolving Facility Lenders, (ii) the Revolving Facility Agent, and (iii) affiliates of, or funds managed, controlled or sub-advised by, (1) GSO, (2) Kelso, (3) Carl Marks and (4) Marblegate have entered into that certain Restructuring Support Agreement dated August 8, 2016 (as amended, supplemented, modified, extended, renewed, restated and/or replaced in accordance therewith (including as amended by the terms of the Committee Settlement (defined below)), together with any schedules and exhibits thereto, (collectively, the "**RSA**")), pursuant to which the parties have, among other things, agreed to support a restructuring and recapitalization of the Debtors and the other transactions contemplated therein, including the relief requested in the Motion pursuant to the terms thereof.

E.    Subject to paragraph 27 below, the Debtors hereby, and, pursuant to the DIP Loan Documents, admit, stipulate and agree that:

> (1)    <u>First Lien Revolving Credit Facility</u>:  Prior to the commencement of the Bankruptcy Cases, pursuant to the Credit Agreement, the Revolving Facility Lenders extended to Logan's Roadhouse, Inc. ("**Logan's Roadhouse**") a $30.0 million Senior Secured First Lien Revolving Facility (the "**Revolving Facility**"). The Revolving Facility is guaranteed by certain affiliates, including LRI Holdings, Inc. and certain subsidiaries, of Logan's Roadhouse (together with Logan's Roadhouse, the "**Existing**

Loan Parties" and each an "**Existing Loan Party**") and secured by liens on substantially all of the assets of the Existing Loan Parties, with certain exceptions to the extent set forth in the Revolving Facility Loan Documents (as defined below). All Obligations (as such term is defined in the Credit Agreement) of the Existing Loan Parties arising under the Credit Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Revolving Facility Lenders, including, without limitation, mortgages, security agreements, guaranties and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively the "**Revolving Facility Loan Documents**"), including, without limitation, all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Revolving Facility Loan Documents), L/C Exposure (as defined in the Credit Agreement) indemnification obligations and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts arising under the Revolving Facility Loan Documents to the Revolving Facility Agent or Revolving Facility Lenders by the Existing Loan Parties, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "**Revolving Facility Obligations**."

(2)     2010 Indenture:   Prior to the commencement of the Bankruptcy Cases, pursuant to the 2010 Indenture, Logan's Roadhouse issued $355.0 million in principal of 10.75% senior secured notes due 2017 (the "**2010 Notes**"), of which $143.936 million of principal amount remain issued and outstanding. The 2010 Notes were guaranteed by the other Existing Loan Parties and secured by liens on substantially all of the assets of the Existing Loan Parties, with certain exceptions to the extent set forth in the 2010 Indenture Documents (as defined below). All Obligations (as such term is defined in the 2010 Indenture) of the Existing Loan Parties arising under the 2010 Indenture and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the holders of the 2010 Notes (the "**2010 Noteholders**"), including, without limitation, mortgages, security agreements, guaranties and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively the "**2010 Indenture Documents**"), including, without limitation, all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any

and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the 2010 Indenture Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts arising under the 2010 Indenture to the 2010 Trustee or 2010 Noteholders by the Existing Loan Parties, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "**2010 Note Obligations**."

(3)    2015 Indenture:   Prior to the commencement of the Bankruptcy Cases, pursuant to the 2015 Indenture, Logan's Roadhouse refinanced certain of the 2010 Notes and issued $112.547 million in principal of Series 2015-1 senior secured notes due 2017 and $109.732 million in principal of Series 2015-2 senior secured notes due 2017 (collectively, the "**2015 Notes**," and the 2015 Notes and 2010 Notes are collectively referred to as the "**Prepetition Notes**"). The 2015 Notes were guaranteed by the Existing Loan Parties and secured by liens on substantially all of the assets of the Existing Loan Parties, with certain exceptions to the extent set forth in the 2015 Indenture Documents (as defined below).  All Obligations (as such term is defined in the 2015 Indenture) of the Existing Loan Parties arising under the 2015 Indenture and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the holders of the 2015 Notes (the "**2015 Noteholders**" and together with the 2010 Noteholders, the "**Prepetition Noteholders**"), including, without limitation, mortgages, security agreements, guaranties and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively the "**2015 Indenture Documents**" and together with the 2010 Indenture Documents, the "**Prepetition Indenture Documents**"), including, without limitation, all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the 2015 Indenture Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts arising under the 2015 Indenture to the 2015 Trustee or 2015 Noteholders by the Existing Loan Parties, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to as the "**2015 Note Obligations**" and together with the 2010 Note Obligations, the "**Prepetition Note Obligations**," and the Prepetition Note Obligations together with the Revolving Facility Obligations, the "**Prepetition Secured Obligations**").

(4)    Revolving Facility Collateral: Pursuant to certain Revolving Facility Loan Documents, including that certain First Lien Guarantee and Collateral Agreement dated as of October 4, 2010, and entered into by and among the Revolving Facility Agent, for the benefit of itself and the Revolving Facility Lenders, Logan's Roadhouse and each other party signatory thereto, each Existing Loan Party granted to the Revolving Facility Agent, for the benefit of itself and the Revolving Facility Lenders and the other holders of the Revolving Facility Obligations (the "**Revolving Facility Secured Parties**"), to secure such Revolving Facility Obligations, a security interest in and continuing lien on substantially all of such Existing Loan Party's assets (subject to certain exceptions to the extent set forth in the Revolving Facility Loan Documents).    All collateral granted or pledged by the Existing Loan Parties pursuant to the Revolving Facility Loan Documents shall collectively be referred to herein as the "**Revolving Facility Collateral**."

(5)    2010 Notes Collateral: Pursuant to certain 2010 Indenture Documents, including that certain Security Agreement dated as of October 4, 2010, and entered into by and among the 2010 Trustee, for the benefit of itself and the 2010 Noteholders, Logan's Roadhouse and each other party signatory thereto, each Existing Loan Party granted to the 2010 Trustee, for the benefit of itself and the 2010 Noteholders (the "**2010 Note Secured Parties**"), to secure such 2010 Note Obligations, a security interest in and continuing lien on substantially all of such Existing Loan Party's assets (subject to certain exceptions to the extent set forth in the 2010 Indenture Documents).    All collateral granted or pledged by the Existing Loan Parties pursuant to the 2010 Indenture Documents shall collectively be referred to herein as the "**2010 Note Collateral**."

(6)    2015 Notes Collateral: Pursuant to certain 2015 Indenture Documents, including that certain Security Agreement dated as of October 15, 2015, and entered into by and among the 2015 Trustee, for the benefit of itself and the 2015 Noteholders, Logan's Roadhouse and each other party signatory thereto, each Existing Loan Party granted to the 2015 Trustee, for the benefit of itself and the 2015 Noteholders (the "**2015 Note Secured Parties**," and together with the 2010 Note Secured Parties, the "**Prepetition Note Secured Parties**," and the Prepetition Note Secured Parties together with the Revolving Facility Secured Parties, the "**Prepetition Secured Parties**"), to secure such 2015 Note Obligations, a security interest in and continuing lien on substantially all of such Existing Loan Party's assets (subject to certain exceptions to the extent set forth in the 2015 Indenture Documents).    All collateral granted or pledged by the Existing Loan Parties pursuant to the 2015 Indenture Documents shall collectively be referred to herein as the "**2015 Note Collateral**," and together with the 2010 Note Collateral, the "**Prepetition Note**

9

**Collateral**," and the Revolving Facility Collateral together with the Prepetition Note Collateral, the "**Prepetition Collateral**."

(7)    Intercreditor Agreement:  That certain Intercreditor Agreement, dated as of October 4, 2010 (as amended by Amendment No. 1 to Intercreditor Agreement, dated as of October 15, 2015), by and among the Revolving Facility Agent, the Trustees, the Borrower, LRI Holdings, Inc., Logan's Roadhouse of Texas, Inc. and Logan's Roadhouse of Kansas, Inc., as will be further amended by that certain Waiver to Intercreditor Agreement, dated as of August 9, 2016, by and among the Existing Loan Parties, the Revolving Facility Agent, for the benefit of itself and the Revolving Facility Secured Parties, the 2010 Trustee, for the benefit of itself and the 2010 Note Secured Parties, and the 2015 Trustee, for the benefit of itself and the 2015 Note Secured Parties (the "**Intercreditor Agreement Waiver**," substantially in the form attached hereto as <u>Exhibit 2</u>) (collectively, as further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, and including the Intercreditor Agreement Waiver, the "**Intercreditor Agreement**" and, together with the Revolving Facility Loan Documents and the Prepetition Indenture Documents, the "**Prepetition Credit Documents**"). The Intercreditor Agreement shall be enforceable among the parties thereto in determining the relative priorities and rights of the Revolving Facility Secured Parties and the Prepetition Note Secured Parties (including, without limitation, the relative priorities and rights of the Revolving Facility Secured Parties and the Prepetition Note Secured Parties with respect to the Adequate Protection Obligations (as defined below) granted hereunder), and such priorities and rights shall continue to be governed by the Prepetition Credit Documents, the Intercreditor Agreement, and all related agreements and documents.

(8)    Validity of Prepetition Credit Documents:    All Prepetition Credit Documents executed and delivered by the Debtors to the Prepetition Secured Parties are valid, binding and enforceable in accordance with their terms by the Prepetition Secured Parties against each of the applicable Debtors and not subject to avoidance, whether under the Bankruptcy Code or otherwise. The Prepetition Secured Parties duly and validly perfected their liens upon and security interests in the Prepetition Collateral (other than funds in the Excluded Accounts[4]) by, among other things, filing financing statements, entering into deposit account control agreements and, where necessary, possessing the relevant instruments, certificates, or other property. All of such financing statements were validly authorized

---

[4]    The "Excluded Accounts" are those zero-balance accounts held at Wells Fargo Bank, N.A. with account numbers ending (5730), (5743), (0119), (8546) and (1449) and depository accounts at Fifth-Third Bank, N.A. with account numbers ending (6796) and (5998).

by authorized representatives of the applicable Debtors.  Pursuant to the Prepetition Credit Documents, the Prepetition Secured Parties have properly perfected and non-avoidable security interests in and liens on all of the Prepetition Collateral, including, without limitation, Cash Collateral (other than funds in the Excluded Accounts).

(9)     Liens on Prepetition Collateral:  The liens and security interests of the Prepetition Secured Parties in the Prepetition Collateral, including the Cash Collateral (other than funds in the Excluded Accounts), as security for the Prepetition Secured Obligations, constitute valid, binding, enforceable and properly perfected liens and security interests and are not subject to any challenge or defense including, without limitation, impairment, recoupment, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, attack, offset, counterclaim, cross-claim, Claim,[5] avoidance, disallowance or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated as set forth in the Prepetition Credit Documents and subordinated to the DIP Liens and the Carve-Out in accordance with the provisions of the Interim Order and this Final Order).  The Debtors further admit, acknowledge and agree that (A) the Prepetition Secured Obligations constitute legal, valid and binding obligations of each of the Existing Loan Parties, (B) no offsets, defenses, reductions, impairments, grounds for avoidance, recoupments, subordinations (except as set forth in the Prepetition Credit Documents) or disallowance (whether under the Bankruptcy Code or otherwise), Claims, crossclaims or counterclaims with respect to the Prepetition Secured Obligations exist and (C) no portion of the Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, impairment, recoupment, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, attack, offset, counterclaim, cross-claim, Claim, avoidance, disallowance or subordination (whether equitable or otherwise, except as set forth in the Prepetition Credit Documents) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(10)    Cash Collateral:  All cash proceeds of the Prepetition Collateral, including all such cash proceeds held in any of the Existing Loan Parties banking, checking or other deposit accounts with financial institutions (in each case, other than trust, escrow and custodial funds held as of the Petition Date in properly established trust, escrow and custodial accounts or funds held in the Excluded Accounts), wherever located, are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the

---

[5]     The term "Claim" as used in this Final Order shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

Bankruptcy Code. The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, including the Cash Collateral, for any diminution in the value thereof.

(11)     Priming of DIP Facilities: In entering into the DIP Loan Documents, and as consideration therefor, each of the Debtors hereby agrees that until such time as all outstanding obligations under the DIP Facilities (the "**DIP Obligations**") have been indefeasibly paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lenders in their sole and exclusive discretion have been made) and the DIP Credit Agreement has been terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the claims, security interests and DIP Liens provided to the DIP Lenders under the Interim Order, this Final Order or the DIP Loan Documents by offering a subsequent lender or a party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(c)(1) or section 364(d) of the Bankruptcy Code or otherwise, except as provided for in the DIP Loan Documents, the Interim Order or this Final Order.

(12)     No Valid Claims: The Debtors have no valid Claims, counterclaims, cross-claims, recoupments, causes of action, defenses or setoff rights against the Prepetition Secured Parties, and their respective shareholders, affiliates, partners, members, officers, directors, employees, financial advisors, attorneys, agents and other representatives, with respect to the Revolving Facility Loan Documents, the 2010 Indenture Documents and the 2015 Indenture Documents, whether arising at law or at equity, including, without limitation, any recharacterization, subordination (whether equitable or otherwise), avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code or any theory of "lender liability" under applicable state law or otherwise.

(13)     Amount of Prepetition Secured Obligations: As of the Petition Date, the aggregate principal balance of the Prepetition Secured Obligations for which the Debtors were truly and justly indebted to the Prepetition Secured Parties, without defense, counterclaim, cross-claim, Claim, challenge, recoupment or offset of any kind, are comprised of not less than approximately (A) an aggregate principal balance of $23,899,525 of Loans and $5,100,475 of L/C Exposure under the Revolving Facility, plus all other Revolving Facility Obligations, (B) an aggregate principal balance of no less than $143.936 million on account of the 2010 Notes, plus all other 2010 Note Obligations, and (C) an aggregate principal balance of no less than $234.089 million on account of the 2015 Notes, plus all other 2015 Note Obligations.

12

(14)   <u>No Claims</u>.  Subject to paragraph 27 below, the admissions, stipulations and agreements set forth in paragraph E of this Final Order are based upon and consistent with the Debtors' due diligence and analysis of the Prepetition Secured Parties' liens and claims and determination that subject to paragraph 14 below, the Debtors have no Claims, counterclaims, cross-claims, recoupments, causes of action, challenges, grounds for subordination (whether equitable, contractual or otherwise), defenses or setoff rights with respect to the Prepetition Secured Parties' liens and claims.

(15)   <u>Release</u>.  Each Debtor and anyone who claims an interest by, through or under their estates forever and irrevocably release, discharge, and acquit each of the former, current, or future DIP Agents, DIP Lenders and Secured Parties (as such term is defined in the DIP Credit Agreement), the Prepetition Secured Parties (solely in their capacity as such) and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, successors, assigns, and predecessors in interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with or relating to the DIP Facilities, the DIP Loan Documents, the Revolving Facility Loan Documents and/or the Prepetition Indenture Documents or the transactions contemplated hereunder or thereunder including, without limitation, (i) any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), so-called "lender liability" claims, counterclaims, cross-claims, recoupment, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity, (ii) any and all claims and causes of action arising under title 11 of the United States Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Agent, the DIP Lenders, and/or other Secured Parties (as such term is defined in the DIP Credit Agreement).

F.       Good cause has been shown for the entry of this Final Order.  The Debtors have a critical need to obtain postpetition financing under the DIP Facilities and to use Cash Collateral to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, independent contractors and customers, make payroll, make capital expenditures, satisfy other working capital and operational needs and fund the administration and prosecution of these Bankruptcy Cases.  The Debtors' access to sufficient working capital and liquidity through the incurrence of postpetition financing under the DIP Facilities and the use of Cash Collateral under the terms of the Interim Order and this Final Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates, the orderly operation of the Debtors' businesses and, ultimately, the success of the Debtors' reorganization efforts.   Consequently, without access to the DIP Facilities and the continued use of Cash Collateral, to the extent authorized pursuant to the Interim Order, this Final Order and the terms of the DIP Loan Documents, the Debtors and their estates would suffer harm.

G.       The DIP Facilities are the best source of debtor in possession financing available to the Debtors.   The Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets of their estates under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code, except with respect to the Revolving Facility Obligations and the Revolving Facility Adequate Protection Obligations (as defined below), from sources other than the DIP Agent and the DIP Lenders on terms more

14

favorable than the terms of the DIP Facilities.  The best and only available source of secured credit available to the Debtors is the DIP Facilities.  The Debtors are not able to operate and manage their business solely with the use of Cash Collateral.  The Debtors require both additional financing under the DIP Facilities and the continued use of Cash Collateral under the terms of the Interim Order, this Final Order and the DIP Loan Documents in order to satisfy their postpetition liquidity needs.

H.    The DIP Lenders have indicated a willingness to provide the DIP Facilities, but solely on the terms and conditions set forth in the Interim Order, this Final Order and in the DIP Loan Documents.  After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment consistent with their fiduciary duties, that the financing to be provided by the DIP Lenders pursuant to the terms of the Interim Order, this Final Order and the DIP Loan Documents represents the best financing presently available to the Debtors.

I.    Solely on the terms and conditions set forth in the Interim Order, this Final Order and in the DIP Loan Documents, including without limitation, compliance with the DIP Budget, the Revolving Facility Secured Parties, the 2010 Trustee, Carl Marks and Marblegate as 2010 Noteholders who hold approximately 57.8% of the issued and outstanding 2010 Notes, the 2015 Trustee, and the 2015 Noteholders (collectively, the "**Prepetition Consenting Parties**" and each, a "**Prepetition Consenting Party**")  are prepared to consent to: (i) the imposition of the DIP Liens (as defined below), which liens will prime the Primed Liens (as defined below) and (ii) the Debtors' use of the Prepetition Collateral (including the Cash Collateral); provided, in each case, that this Court authorizes the Debtors, pursuant to sections 361, 363 and 364(d) of the Bankruptcy Code, to grant to the Revolving Facility Agent, the 2010 Trustee and the 2015

15

Trustee, on a joint and several basis, for the benefit of themselves and the Revolving Facility Secured Parties, the 2010 Note Secured Parties and the 2015 Note Secured Parties, respectively, as and for adequate protection, which shall have the priorities set forth in paragraph 10 hereof and without in any way limiting the Prepetition Secured Parties' rights under section 552 of the Bankruptcy Code, but subject to the Revolving Facility Liens, the Permitted Liens and the Carve-Out, (1) a security interest in and lien and mortgage upon the DIP Collateral (as defined below) in favor of the Prepetition Secured Parties (the "**Adequate Protection Lien**"), (2) superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claims**"), and (3) the Adequate Protection Payments (as defined in paragraph 10 hereof).

J.      The security interests and liens granted pursuant to the Interim Order and this Final Order to the DIP Agent, for the benefit of itself and the DIP Lenders and other Secured Parties (as such term is defined in the DIP Credit Agreement), are appropriate under section 364(d) of the Bankruptcy Code because, among other things:  (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates; (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and DIP Liens, including the Priming Liens, granted pursuant to the Interim Order, this Final Order and the DIP Loan Documents to the DIP Agent for the benefit of itself and the DIP Lenders; and (iii) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected.  In particular, the security interests and liens of the Prepetition Secured Parties are adequately protected by the Prepetition Secured Parties' Adequate Protection Liens and the Adequate Protection Claims.

K.    Good cause has been shown for entry of this Final Order.  In particular, the authorization granted herein for the Debtors to continue to perform their obligations under the DIP Loan Documents, to continue using Cash Collateral and to obtain financing, including on a priming lien basis, is necessary to avoid harm to the Debtors and their estates.  Entry of this Final Order is in the best interest of the Debtors, their estates and their creditors.  The terms of the DIP Loan Documents (including the Debtors' continued use of Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

L.    The Debtors, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties, with the assistance and counsel of their respective advisors, have negotiated the terms and conditions of the DIP Loan Documents (including the Debtors' continued use of Cash Collateral), the Interim Order and this Final Order, in good faith and at arm's-length, and any credit extended and loans made to the Debtors pursuant to the Interim Order, this Final Order and the DIP Loan Documents shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and the DIP Agent and the DIP Lenders shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order, this Final Order or any provision thereof is vacated, reversed, amended or modified, whether on appeal or otherwise.

M.    As set forth in paragraph 16, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties request a waiver of the surcharge provisions of sections 105 and

506(c) of the Bankruptcy Code and the "equities of the case" exception in section 552(b) of the Bankruptcy Code in connection with the DIP Facilities.

      N.      Based on the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor:

### IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

      1.      *Approval of Motion.* The Motion is granted on a final basis on the terms and conditions set forth in this Final Order and the DIP Loan Documents; provided however that, if there are any inconsistencies between the terms of this Final Order, the Interim Order and the DIP Loan Documents, the terms of this Final Order shall govern. Any objections or responses to the relief requested in the Motion that have not been previously resolved, withdrawn, addressed hereby, waived or settled are hereby overruled on the merits and denied with prejudice. This Final Order shall become effective immediately upon its entry.

      2.      *Authority to Enter Into DIP Loan Documents, Authority Thereunder.* The Debtors are hereby authorized to be parties to and continue to perform under the DIP Loan Documents, including the DIP Credit Agreement, the Intercreditor Agreement, and such additional documents, instruments and agreements as may be reasonably required by the DIP Agent to implement the terms or effectuate the purposes of this Final Order. The Borrower is hereby authorized to borrow money under the DIP Credit Agreement, on a final basis, up to an aggregate principal or face amount not to exceed $25 million under the New Money Facility and to issue in exchange for each DIP Lender's claim, or Roll Up Affiliate's claim, for notes issued under the Prepetition Indentures, on a 2:1 basis for every dollar of borrowing under the New Money Facility, a corresponding amount of new loans under the Roll Up Facility. The

18

Guarantors are hereby authorized to guaranty such borrowings and the other outstanding DIP Obligations, all in accordance with the terms of the Interim Order, this Final Order, the DIP Credit Agreement and all other DIP Loan Documents. Nothing in this Final Order shall limit the Committee's right to challenge the confirmability of any chapter 11 plan that is not materially consistent with the Committee Settlement, and each Prepetition Consenting Party fully reserves all of its rights and defenses with respect to any such challenge.

3.    *Use of Cash Collateral and DIP Loans*.    Subject to the terms and conditions of the Interim Order and this Final Order, the Debtors are hereby authorized to use the Cash Collateral and proceeds of the New Money Facility to (a) fund the costs of the administration of the Bankruptcy Cases and (b) provide working capital to the Debtors, in each case, solely to the extent set forth in, and in accordance with, the budget approved in accordance with the terms of the DIP Credit Agreement (the "**DIP Budget**"), including any variances to the DIP Budget (as the same may be amended, supplemented and/or updated in accordance with the DIP Credit Agreement, the Interim Order and this Final Order) that are permitted under the DIP Credit Agreement, the Interim Order and this Final Order unless otherwise ordered by the Court, which DIP Budget shall be in form and substance reasonably satisfactory to the Required Lenders (as defined in the DIP Credit Agreement) and the Revolving Facility Lenders after consultation with the Committee; provided, however, that the initial DIP Budget shall be in form and substance reasonably satisfactory to the DIP Lenders and the Revolving Facility Lenders. Additionally, subject to the terms and conditions of the Interim Order and this Final Order, the Debtors are hereby authorized to use the Cash Collateral and proceeds of the New Money Facility to (x) fund interest, fees and other payments contemplated in respect of the DIP Facilities; (y) fund the payment of current interest owing to the Revolving Facility Agent at the

19

default contract rate under the Revolving Facility Loan Documents; and (z) fund the payment of fees and reasonable and documented (in summary form) out-of-pocket expenses and indemnities payable to any Prepetition Consenting Party (including, without limitation, the prepetition and postpetition fees and disbursements of legal counsel and financial advisors advising any Prepetition Consenting Party, as permitted herein) as adequate protection.    An updated DIP Budget is attached hereto as Exhibit 3.

        4.     *Payment of DIP Fees and Expenses.*    The Debtors are hereby authorized to pay or otherwise incur all fees, expenses and other amounts payable under the terms of the DIP Credit Agreement or any other DIP Loan Documents, including, without limitation, the fees in section 2.07 of the DIP Credit Agreement, which includes a commitment fee (the "**Commitment Fee**"), backstop fee (the "**Backstop Fee**") and Unused Commitment Fee (as defined in the DIP Credit Agreement), and all reasonable out-of-pocket costs and expenses of the DIP Agent and the DIP Lenders in accordance with the terms of the DIP Credit Agreement and the Agent Fee Letter (as defined in the DIP Credit Agreement) (including, without limitation, the prepetition and postpetition fees and disbursements of legal counsel and financial advisors advising the DIP Agent and DIP Lenders who are Prepetition Consenting Parties) (collectively, the "**DIP Fees and Expenses**"), in each case to the extent such DIP Fees and Expenses have not already been paid.  Subject to the same protocol regarding payment of the fees and expenses of the Prepetition Secured Parties provided for in paragraph 10(c) hereof, none of the DIP Fees and Expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. In addition, the Debtors are hereby authorized to indemnify the DIP Agent, the DIP Lenders and their respective affiliates and their respective affiliates' related parties, on the terms set forth in

section 11.04 of the DIP Credit Agreement. All such unpaid fees, expenses and indemnities of the DIP Agent shall constitute DIP Obligations and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under the Interim Order, this Final Order and the DIP Loan Documents.

5. *Validity of DIP Loan Documents.* Upon execution and delivery of the DIP Loan Documents and entry of the Interim Order, the DIP Loan Documents constituted, and pursuant to this Final Order, the DIP Loan Documents shall, on a final basis, constitute, legal, valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms thereof, including all terms and provisions pertaining to the New Money Facility and the Roll Up Facility. Subject to paragraph 27, no obligation, payment, transfer or grant of security under the DIP Loan Documents as approved under the Interim Order or this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

6. *DIP Loans.* All loans made to or for the benefit of the Debtors on or after the Petition Date under the DIP Loan Documents, including, without limitation, amounts owing under the New Money Facility and the Roll Up Facility (collectively, the "**DIP Loans**"): (a) shall be evidenced by the books and records of the DIP Agent; (b) shall bear interest payable at the rates set forth in the DIP Credit Agreement; (c) shall be secured in the manner specified in paragraph 8 below and in the DIP Loan Documents; (d) shall be payable in accordance with the terms of the DIP Loan Documents; and (e) shall otherwise be governed by the terms set forth herein and in the DIP Loan Documents. All Prepetition Noteholders that are not DIP Lenders but are accredited investors or qualified institutional buyers (each, a "**Non-Backstop DIP**

Lender") shall have an opportunity to fund their pro rata share of the DIP Facilities based upon the amount of Prepetition Notes, including principal and accrued interest to the Petition Date (but excluding any interest on interest required on overdue cash interest payments), held by such Prepetition Noteholders; provided, that (x) such commitment to fund is received no later than thirty (30) days following the entry of the Interim Order and such funding is received no later than two (2) business days following the entry of this Final Order (the "**Funding Participation**") and (y) in connection with such Funding Participation, such Non-Backstop Lender executes a joinder to the RSA and becomes a Supporting Party (as defined in the RSA) thereunder. Each DIP Lender must surrender, either physically or electronically, to the applicable Indenture Trustee the Prepetition Notes deemed exchanged for obligations under the Roll Up Facility by the Effective Date, or such other date as determined by the Indenture Trustees and the Debtors. If any DIP Lender fails to surrender to the applicable Indenture Trustee by the Effective Date, or such other date as determined by the Indenture Trustees and the Debtors, the Prepetition Notes that were deemed to have been exchanged for obligations under the Roll Up Facility, those obligations under the Roll Up Facility shall be deemed null and void and such DIP Lender shall not participate in the Exit Second Lien Facility (as defined in the RSA) on account of the obligations under the Roll Up Facility that otherwise would have been issued with respect to such Prepetition Notes. Consistent with the Debtors' fiduciary duties, the Funding Participation is appropriate, fair and reasonable to the Debtors and all holders of 2010 Notes, and reflects the Debtors' and the 2010 Trustee's exercise of prudent business judgment. The terms of the Funding Participation have been negotiated in good faith and at arms' length by and among the Debtors, the DIP Agent, the DIP Lenders and the 2010 Trustee, with all parties being represented by counsel.

7.    *Continuation of Prepetition Liens and Prepetition Liens Securing DIP Obligations.*  Until (a) all DIP Obligations have been indefeasibly paid in full in cash (or the DIP Loans have been applied on a dollar-for-dollar basis to loans to be made under the Exit Second Lien Facility upon consummation of the chapter 11 plan of reorganization for the Debtors that is consistent with the RSA, as may be amended from time to time (the "**Plan**")) and all Prepetition Secured Obligations shall have received the treatment specified by the terms and conditions of the Plan, (b) the DIP Lenders' commitments under the DIP Facilities have terminated, (c) all objections and challenges to (i) the liens and security interests of the Prepetition Secured Parties (including, without limitation, liens granted for adequate protection purposes) and (ii) the Prepetition Secured Obligations have been waived, denied or barred, and (d) all of the Debtors' stipulations contained in paragraph E hereof (collectively, the "**Debtors' Stipulations**") have become binding upon their estates and parties-in-interest in accordance with paragraph 27 below, all liens and security interests of the Prepetition Secured Parties (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein, subject to the rights of a party in interest to bring a Challenge (as defined below) in accordance with paragraph 27.  Without limiting the foregoing, notwithstanding any payment of all or any portion of the Prepetition Secured Obligations, the liens on the Prepetition Collateral in favor of the Prepetition Secured Parties shall continue in full force and effect and shall be deemed to, secure the full and timely payment of the DIP Obligations (separate from and in addition to the DIP Liens granted to the DIP Agent and the DIP Lenders in paragraph 8 below) until (x) the payment in full in cash of all of the DIP Obligations (or the DIP Loans have been applied on a dollar for dollar basis to loans made under

the Exit Second Lien Facility upon consummation of the Plan) and (y) the termination of the DIP Lenders' commitments under the DIP Facilities.

        8.    *DIP Liens and DIP Collateral.*  To secure the DIP Obligations, effective immediately upon entry of the Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, was granted on an interim basis, and upon entry of this Final Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, is granted on a final basis, the following continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on all prepetition and postpetition property of the Debtors, wherever located, whether existing on the Petition Date or thereafter acquired, including the Excluded Accounts (all property identified in clauses (a), (b), and (c) below being collectively referred to as the "**DIP Collateral**"), subject only to (w) the liens of the Revolving Facility Secured Parties on the Revolving Facility Collateral (the "**Revolving Facility Liens**"); (x) the Adequate Protection Liens granted to the Revolving Facility Secured Parties (the "**Revolving Facility Adequate Protection Liens**"); (y) the Carve-Out; and (z) the Permitted Liens (as defined below), as set forth in the DIP Loan Documents (all such liens and security interests granted to the DIP Agent, for the benefit of itself, and the DIP Lenders, pursuant to the Interim Order, this Final Order and the DIP Loan Documents, the "**DIP Liens**") and notwithstanding any agreement that may purport to prevent, hinder, or attach obligations with respect to the incurrence of the DIP Liens, and with respect to the Debtors' non-residential real property leases, no liens or encumbrances shall be granted or extend to such leases themselves under this Final Order except as permitted in the applicable lease or pursuant to applicable law

but rather any liens granted shall extend only to the proceeds realized upon the sale, assignment, termination, or other disposition of such leases:

        (a)    <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all DIP Collateral that, on or as of the Petition Date, is not subject to valid, perfected, and non-avoidable liens, including, without limitation, all real and personal property, inventory, plant, fixtures, machinery, equipment, cash, any investment of such cash, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, postpetition intercompany claims of the Debtors), deposit accounts, the Excluded Accounts, investment property, supporting obligations, causes of action (including those arising under section 549 of the Bankruptcy Code and any related action under section 550 of the Bankruptcy Code), chattel paper, contracts, general intangibles, documents, instruments, interests in leaseholds, letter of credit rights, patents, copyrights, trademarks, trade names, other intellectual property, capital stock and stock equivalents of subsidiaries, books and records pertaining to the foregoing, and to the extent not otherwise included, all proceeds, products, offspring, and profits of any and all of the foregoing (the "**Unencumbered Property**") subject to the Revolving Facility Adequate Protection Liens.  Notwithstanding the prior sentence, Unencumbered Property shall in any event exclude the Debtors' claims and causes of action under chapter 5 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but upon entry of this Final Order, Unencumbered Property shall include any proceeds or property recovered, unencumbered, or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement, or otherwise.

(b)    <u>Liens Priming Liens of Prepetition Note Secured Parties</u>.    Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all DIP Collateral that is subject to valid, perfected, and non-avoidable liens presently held for the benefit of the Prepetition Note Secured Parties (such priming liens granted to pursuant to this paragraph 8(b), the "**Priming Liens**" and such primed liens of the Prepetition Note Secured Parties, the "**Primed Liens**").  The priming security interests and liens granted pursuant to this paragraph 8(b) shall be senior in all respects to the interests in such property of any of the Prepetition Note Secured Parties (including, without limitation, any and all forms of adequate protection granted to the foregoing), but shall be junior to (i) the Revolving Facility Liens, (ii) the Revolving Facility Adequate Protection Liens, (iii) the Carve-Out, and (iv) any valid, perfected, and non-avoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected, and non-avoidable interests in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code or otherwise arising by operation of law (the "**Permitted Liens**").

(c)    <u>Liens Junior to Certain Other Liens</u>.    Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all DIP Collateral (other than the property described in clause (a) or (b) of this paragraph 8, as to which the liens and security interests in favor of the DIP Agent will be as described in such clauses), whether existing on the Petition Date or thereafter acquired, that is junior only to the Revolving Facility Liens, the Revolving Facility Adequate Protection Liens, the Carve-Out, and the Permitted Liens.

26

(d)     _Liens Senior to Certain Other Liens_.   The DIP Liens are legal, valid, binding, continuing, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be junior only to the Revolving Facility Liens, Revolving Facility Adequate Protection Liens, Permitted Liens and the Carve-Out.   Pursuant to section 364(d) of the Bankruptcy Code, the DIP Liens shall be senior to the liens of the Prepetition Note Secured Parties, and any and all forms of adequate protection granted to the Prepetition Note Secured Parties in the Bankruptcy Cases.   For purposes of this Final Order, it shall be an Event of Default if, other than as set forth in this Final Order, the DIP Liens shall be made junior to, or _pari passu_ with, any lien or security interest heretofore or hereinafter granted in the Bankruptcy Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Bankruptcy Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"), upon the conversion of any of the Bankruptcy Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Bankruptcy Cases or Successor Cases.   Upon entry of this  Final Order, no lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be _pari passu_ with or senior to the DIP Liens or the Revolving Facility Adequate Protection Liens.

9.     _DIP Lenders' Superpriority Claims_.   Upon entry of the Interim Order, the DIP Agent and the DIP Lenders were granted on an interim basis, and upon entry of this Final Order, the DIP Agent and the DIP Lenders are hereby granted on a final basis, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Bankruptcy Cases and any Successor Cases against each of the Debtors and their

estates on a joint and several basis (collectively, the "**DIP Superpriority Claims**") for all DIP

Obligations:  (a) except as set forth in the Interim Order and this Final Order, with priority over

any and all administrative expense claims, diminution claims, unsecured claims, and all other

claims against the Debtors or their estates in any of the Bankruptcy Cases or any Successor

Cases, existing on the Petition Date or thereafter arising, of any kind or nature whatsoever,

including, without limitation, administrative expenses of the kinds specified in, or ordered

pursuant to, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c),

546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy

Code, whether or not such expenses or claims may become secured by a judgment lien or other

non-consensual lien, levy, or attachment, which allowed claims shall be payable from, and have

recourse to, all prepetition and postpetition property of the Debtors and all proceeds thereof,

including without limitation, upon entry of this Final Order, the proceeds of Avoidance Actions;

and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any

successor trustee or other estate representative to the extent permitted by law.  Notwithstanding

the foregoing, the DIP Superpriority Claims shall be subject only to the payment of the Adequate

Protection Claims of the Revolving Facility Lenders, the Revolving Facility Obligations and the

Carve-Out.

　　　　10.    *Adequate Protection for Prepetition Secured Parties*.  Without in any way

limiting the Prepetition Secured Parties' respective rights under the Bankruptcy Code, the

Prepetition Secured Parties are entitled, pursuant to sections 361, and 363(e) of the Bankruptcy

Code, to adequate protection of their interests in their Prepetition Collateral and are hereby

granted the following:

(a)     Effective and perfected upon the date of entry of the Interim Order and without the necessity of the execution or filing of any mortgages, security agreements, pledge agreements, financing statements or other agreements, the Prepetition Secured Parties' Adequate Protection Liens and the Adequate Protection Claims against each of the Debtors and their estates on a joint and several basis, which shall secure the payment of an amount equal to the diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date, including, without limitation, any such diminution resulting from:  (1) the use, sale or lease by the Debtors of such collateral and cash and property constituting proceeds of such collateral, (2) the imposition of the Priming Liens granted to the DIP Lenders, (3) the Carve-Out and/or (4) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code (the "**Adequate Protection Obligations**"; and the Adequate Protection Obligations in respect of the Credit Agreement, the "**Revolving Facility Adequate Protection Obligations**"); *provided* that any claim for diminution in value shall be allowed only after notice, an opportunity to object, and a hearing.

(b)     To give effect to the Prepetition Secured Parties' intent to recognize the priorities established in the Intercreditor Agreement, the priority of the Adequate Protection Liens shall be as follows:  pursuant to section 364 of the Bankruptcy Code, and subject only to the Permitted Liens, and the Carve-Out, (1) the Revolving Facility Adequate Protection Liens granted to the Revolving Facility Agent and the Revolving Facility Lenders shall constitute senior first-priority perfected security interests in and liens upon DIP Collateral, and are senior to the DIP Liens and (2) the Adequate Protection Liens granted to the Prepetition Note Secured Parties shall constitute perfected security interests in and liens upon DIP Collateral, subordinate to the Revolving Facility Adequate Protection Liens, Revolving Facility

29

Liens, and the DIP Liens.  For the avoidance of doubt: (i) the Adequate Protection Liens of the Prepetition Note Secured Parties shall be subject and junior in priority in all respects to the Revolving Facility Adequate Protection Liens, the Revolving Facility Liens and the DIP Liens; (ii) the Adequate Protection Claims of the Prepetition Note Secured Parties shall be subject and junior in priority in all respects to the Adequate Protection Claims of the Revolving Facility Secured Parties and the DIP Superpriority Claims; (iii) the Revolving Facility Adequate Protection Liens and Revolving Facility Liens shall be senior in priority in all respects to the DIP Liens; and (iv) the Adequate Protection Claims of the Revolving Facility Secured Parties shall be senior in priority in all respects to the DIP Superpriority Claims.

(c)     As additional adequate protection, the Debtors shall pay to the Prepetition Consenting Parties (i) immediately upon entry of this Final Order, in the form of cash payments equal to all accrued and unpaid reasonable and documented (in summary form) fees and out-of-pocket expenses for the fees owed to the Revolving Facility Agent for its services as administrative agent and collateral agent, the Trustees for their services as indenture and collateral trustees, fees and disbursements of legal counsel (including Delaware local counsel) for each of the Prepetition Consenting Parties, and the financial advisor to the Revolving Facility Agent owing to such parties and incurred before the Petition Date; (ii) when due after the Petition Date, in the form of cash payments equal to all reasonable and documented (in summary form) fees and out-of-pocket expenses owing to such parties (including, but not limited to, the fees owed to the Revolving Facility Agent for its services as administrative agent and collateral agent, the Trustees for their services as indenture and collateral trustees, fees and disbursements of legal counsel (including Delaware local counsel) for each of the Prepetition Consenting Parties, and the financial advisor to the Revolving Facility Agent); and (iii) on September 30,

30

2016, and on the last day of each subsequent calendar month, cash payment to the Revolving Facility Agent for prompt distribution to the Revolving Facility Lenders of all of the interest accruing on the Revolving Facility Obligations under the Revolving Facility Loan Documents from and after the Petition Date at the default contract rate(s) set forth therein (all such payments in (i) through (iii), the "**Adequate Protection Payments**").   None of the interest, fees and expenses paid or payable pursuant to this paragraph 10 shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses) or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with this Court with respect thereto.  The Prepetition Consenting Parties shall submit copies of their professional fee invoices in summary form (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines, it being expressly understood that provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine) to the Debtors, the U.S. Trustee and the Committee; and the Debtors, U.S. Trustee and the Committee, may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within fourteen (14) days from receipt of the Invoiced Fees (such fourteen (14) day period, the "Review Period") (i) the Debtors pay in full the Invoiced Fees, excluding the Disputed Invoiced Fees, and (ii) the Debtors, the U.S. Trustee or the Committee, by written notice, dispute the reasonableness of such fees and expenses and such dispute cannot be resolved within ten (10) days following delivery of such written notice, file with the Court a motion or other pleading, on at least ten (10) days prior written notice of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.  Failure to object with specificity or to quantify the undisputed amount of the invoice subject to such

31

objection will constitute a waiver of any objection to such invoice. Payment of the difference between the Invoiced Fees and the Disputed Invoiced Fees shall not be delayed based on any objections thereto. The Debtors shall only pay the relevant professional's Disputed Invoiced Fees upon being "so ordered" pursuant to a final non-appealable order of this Court. The same protocol for payment of fees and expenses provided for in this paragraph 10(c) shall apply to the fees and expenses provided for in paragraph 4 hereof.

(d)     The consent of the Prepetition Note Secured Parties that are Prepetition Consenting Parties (the "Consenting Note Secured Parties") to the priming of their liens by the DIP Liens is limited to the DIP Facilities presently before this Court and shall not extend to any other postpetition financing or to any modified version of the DIP Facilities (except for any amendment authorized in accordance with paragraph 26 of this Final Order). Furthermore, the consent of the Consenting Note Secured Parties to the priming of their liens by the DIP Liens does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Consenting Note Secured Parties that their interests in the Prepetition Note Collateral are adequately protected pursuant to the Interim Order, this Final Order or otherwise, and, to the extent of any dispute regarding the payment or entitlement to adequate protection, including adequate protection granted pursuant to the Interim Order or this Final Order, the Debtors shall retain the burden of proof.

11.     *Payment Priority.* Until the Revolving Facility Obligations and the Revolving Facility Adequate Protection Obligations are paid in full in cash (including all post-petition interest) and all issued and undrawn letters of credit under the Credit Agreement are either released or cash collateralized at 105% of the face amount thereof, pursuant to arrangements satisfactory to the issuer(s) thereof (collectively, the "**Discharge of Revolving**

Facility Obligations"), the DIP Agent and the DIP Lenders shall not receive or retain any payments, distributions, or other amounts on account of the DIP Loans, whether such payments, distributions, or amounts are from proceeds of the DIP Collateral or from any other source (including debt or equity issued or distributed in connection with a plan of reorganization or any proceeds of such debt or equity or from any refinancing of the DIP Loans) and whether such payments, distributions, or amounts are distributed or made in connection with or pursuant to a plan of reorganization or liquidation, sale pursuant to section 363 of the Bankruptcy Code, foreclosure or otherwise, other than (a) funds deposited in or otherwise credited to the Segregated Pre-Funding Account (as defined in the DIP Credit Agreement) at the time of such payment or other distribution to the DIP Agent or the DIP Lenders, (b) the Carve-Out, (c) the Commitment Fee, Backstop Fee, and the Unused Commitment Fee, (d) interest that is paid in kind, (e) the fees and expenses required to be paid pursuant to the DIP Loan Documents (including, without, limitation any fees and expenses payable to the DIP Agent under the DIP Loan Documents), and (f) any other funds, provided that such funds are to be applied first to repay the Revolving Facility Obligations prior to the DIP Obligations other than specified exceptions set forth herein, in accordance with the terms of the Interim Order, this Final Order and the DIP Credit Agreement (including the payment priorities set forth in section 9.03 of the DIP Credit Agreement).   If the DIP Agent or any DIP Lender receives any payments, distributions or other amounts in violation of the payment priority schemes set forth herein or in any provision of the DIP Credit Agreement, then the DIP Agent or such DIP Lender, as applicable, shall hold such amounts in trust for the benefit of the Revolving Facility Agent and the Revolving Facility Lenders and shall promptly turn over such amounts to the Revolving Facility Agent.

12.    *Automatic Effectiveness of Liens.*  Except as expressly set forth herein (including, without limitation, with respect to the Carve-Out), the liens granted pursuant to the Interim Order and this Final Order shall not be (a) subject to any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (b) subordinated to or made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code other than as explicitly provided herein.  The DIP Liens and the Adequate Protection Liens shall not be subject to challenge and shall attach and become legal, valid, properly perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors, the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, guaranty agreements, security agreements, pledge agreements, federal or state notices, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents or the taking of possession or control of any DIP Collateral or the taking of any other actions.  All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except the Prepetition Liens (as defined below), the Revolving Facility Adequate Protection Liens, the Carve-Out and the Permitted Liens.  With respect to DIP Collateral that is also Prepetition Collateral, the Revolving Facility Agent shall act as the DIP Agent's bailee for purposes of perfection.  If the DIP Agent (acting at the direction of the Required Lenders) hereafter requests that the Debtors execute and deliver to the DIP Agent (and/or authorize the filing of) financing statements, guaranty agreements, security agreements, collateral assignments, mortgages or other instruments and documents considered by the DIP Agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized to execute and deliver (and/or authorize the filing of)

such financing statements, security agreements, mortgages, collateral assignments, instruments and documents, and the DIP Agent is hereby authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the Interim Order; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. Acting at the direction of the Required Lenders, the DIP Agent may file, record or present a certified copy of the Interim Order or this Final Order with any filing or recording office and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of the Interim Order or this Final Order in accordance with applicable law; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens.

13.    *Carve-Out.* Notwithstanding anything to the contrary contained herein or in the DIP Credit Documents, the DIP Collateral, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Claims, and the Adequate Protection Liens shall be subject to the payment of the Carve-Out. For the avoidance of doubt, if at any time the Carve-Out is not adequately funded in accordance with the provisions of this Final Order, upon a realization against the Carve-Out, the unpaid portion of the Carve-Out shall be funded out of the DIP Collateral having priority over the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Claims, and the Adequate Protection Liens. For purposes of this Final Order, the "**Carve-Out**"[6] shall mean, collectively, the sum total of (i) all fees required to be paid to the clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States

---

[6]    For purposes of the Carve-Out, references to the DIP Budget for Professional Fees shall mean the accrual fee schedule with the header "Logan's Roadhouse, Inc., Professional Payments," which is annexed to the DIP Budget, as amended in accordance with the DIP Loan Documents.

Code and 31 U.S.C. §3717 in an amount agreed upon by the U.S. Trustee or ordered by the Court, (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000 (iii) all fees, costs, disbursements, charges and expenses incurred at any time before the Carve-Out Trigger Date (as defined below) that are provided for in the DIP Budget (which shall include a budget cap for the Committee's professionals of $950,000), or any monthly or success or transaction fees payable to estate professionals that are provided for in the DIP Budget, in each case, by persons or firms retained by the Debtors or the Committee whose retention is approved by this Court pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the "**Professionals**," and the fees, costs and expenses of Professionals, the "**Professional Fees**"), to the extent such Professional Fees are allowed by this Court at any time (whether before or after the Carve-Out Trigger Date) on a final basis; and (iv) all Professional Fees that are consistent with the DIP Budget and incurred on and after the Carve-Out Trigger Date by Professionals and allowed by this Court at any time, whether before or after the Carve-Out Trigger Date, whether by interim order, procedural order or otherwise; provided, that, the payment of any Professional Fees of the Professionals (but excluding fees and expenses of third party professionals employed by individual members of the Committee) incurred on or after the Carve-Out Trigger Date and allowed by the Court at any time, whether before or after the Carve-Out Trigger Date, on a final basis, shall not exceed $500,000 in the aggregate (the "**Professional Expense Cap**"); provided, further, that (A) any payments actually made in respect of Professional Fees incurred on or after the Carve-Out Trigger Date in accordance with the DIP Budget and allowed by this Court at any time, whether before or after the Carve-Out Trigger Date, on a final basis, shall reduce the Professional Expense Cap on a dollar-for-dollar basis; (B) any success or transaction fees that

may become due and payable to Professionals employed by the Debtors shall not be included in or subject the Professional Expense Cap and the payment of such fees shall not reduce the Professional Expense Cap pursuant to the prior clause (A); and (C) for the avoidance of doubt, so long as a Carve-Out Trigger Date has not occurred, the payment of Professional Fees shall not reduce the Professional Expense Cap.  For the avoidance of doubt, there shall be no success or transaction fee payable to Jefferies, LLC from the Carve-Out in the event of a liquidation of the Debtors that is not implemented through a chapter 11 plan or does not follow a going concern sale of assets pursuant to section 363 of the Bankruptcy Code, including through a credit bid by secured lenders.  For the purposes of the foregoing, "**Carve-Out Trigger Date**" means the first business day after delivery of written notice (which notice may be delivered to the Debtors by facsimile or other electronic means of communication or otherwise in accordance with the DIP Credit Agreement) of the occurrence of an Event of Default (as defined below) (such notice, a "**Carve-Out Trigger Notice**") by the DIP Agent to (1) the U.S. Trustee, (2) the Borrower and counsel to the Debtors, and (3) counsel for the Committee.  For the avoidance of doubt, the Carve-Out shall be senior to any claims arising under or relating to and liens securing the DIP Facilities and the Prepetition Secured Obligations, including, without limitation, any administrative or superpriority claims and all forms of adequate protection liens or security interests.  In any event, the DIP Agent and the DIP Lenders reserve the right to review and object to any fee application or statement, interim application or monthly application issued or filed by estate professionals.  Any funding or payment of the Carve-Out shall be added to, and made a part of, the DIP Obligations and adequate protection and shall be otherwise entitled to the protections granted under the Interim Order, this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.  Neither the Carve-Out nor any proceeds of the DIP

Facilities, Cash Collateral or DIP Collateral proceeds shall be used in connection with preventing, hindering or delaying the DIP Lenders', DIP Agent's, Prepetition Agents', Revolving Facility Lenders' or Prepetition Noteholders' enforcement or realization upon the DIP Collateral once an Event of Default has occurred and is continuing under the DIP Loan Documents, subject to the Remedies Notice Period (as defined below).

14.    *Investigation of Prepetition Liens.*    The Debtors shall not assert or prosecute, and, except for the amount set forth in paragraph 27(b), no portion of the DIP Facilities, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with (a) asserting or prosecuting any claims or causes of action against the Prepetition Secured Parties, the DIP Agent, or the DIP Lenders, or (b) challenging or raising any defenses to the Prepetition Secured Obligations or the DIP Obligations, the DIP Liens, the Adequate Protection Liens or the liens and security interests of the Prepetition Secured Parties with respect to the Prepetition Collateral (such liens and security interests, the "**Prepetition Liens**").  Notwithstanding the foregoing, the Debtors or the Committee shall be permitted to contest the occurrence and/or continuance of an Event of Default in accordance with the terms and conditions of this Final Order; provided, however, that nothing in the DIP Loan Documents, the Interim Order or this Final Order shall vest or confer on the Committee, or any representative of the estates, standing or authority to pursue any cause of action belonging to the Debtors or their estates.

15.    *Shared Control Between Prepetition Agents and DIP Agent; Access; Insurance.*  The DIP Agent shall immediately have dominion and control with respect to each depository account of the Debtors or other third party that was subject to a deposit account

38

control agreement with the Prepetition Agents as of the Petition Date, and each of such deposit account control agreements shall hereafter be enforceable by the DIP Agent against, and binding upon, each depository institution party thereto until the DIP Obligations have been indefeasibly paid in full in cash and the DIP Credit Agreement shall have been terminated, after which such deposit account control agreements shall again be solely enforceable by the Prepetition Agents but subject to the rights of the Prepetition Agent to exercise rights and remedies to the extent set forth in paragraph 23.  Upon entry of the Interim Order, the Prepetition Agents and the DIP Agent were, and were deemed to be, on an interim basis, and upon entry of this Final Order, the Prepetition Agents and the DIP Agent are, and are deemed to be, on a final basis, without any further action or notice of any kind, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

16. _Section 506(c) and 552(b) Waivers._  (a) The Debtors (on behalf of themselves and their estates) irrevocably waive, and are prohibited from asserting in the Bankruptcy Cases or any Successor Cases, any surcharge claim under sections 105(a) and/or 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties upon, the DIP Collateral or the Prepetition Collateral, and (b) the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or DIP Collateral.

17.    _Restrictions on Granting Post-Petition Liens._   Except for the Carve-Out, liens and claims otherwise permitted pursuant to section 8.01 of the DIP Credit Agreement or as expressly set forth in the Interim Order or this Final Order, it shall constitute an Event of Default if any Debtor incurs or requests authority to incur a claim or grants a lien (or a claim or lien is allowed) having a priority superior to or _pari passu_ with those granted pursuant to the Interim Order, this Final Order and the DIP Loan Documents to the DIP Agent and the DIP Lenders, or the Prepetition Secured Parties, respectively, at any time during which any portion of the DIP Facilities (or any refinancing thereof), the DIP Obligations, the Adequate Protection Obligations or the Adequate Protection Payments owing to the Prepetition Secured Parties remains outstanding; provided, however, that the Debtors shall be entitled to incur such liens or request such authority in connection with obtaining postpetition financing, loans or financial accommodations (or a request therefor) that will indefeasibly repay in full all DIP Obligations in cash; provided, further, however, that in connection with the seeking or obtaining of such postpetition financing, loans, or financial accommodations, the Debtors may not rely on the consent of the Prepetition Secured Parties to the relief granted in the Interim Order or this Final Order, and any and all such consent shall be deemed to have automatically terminated.

18.    _Binding Nature of Order; Order Controls._   The provisions of the Interim Order and this Final Order shall be binding in any Successor Case and upon the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of any Debtor's estate or with respect to its property). In the event of any inconsistency between the provisions of this Final Order, the Interim Order and any of the DIP Loan Documents, the provisions of this Final Order shall govern.

19.    _No Marshaling_.  In no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or Prepetition Collateral, as applicable.

20.    _Survival of Order_.  The provisions of the Interim Order, this Final Order and the DIP Loan Documents, and any actions taken pursuant hereto or thereto (a) shall survive the entry of any order:  (i) confirming any plan of reorganization in any of the Bankruptcy Cases or any Successor Cases; (ii) converting any of the Bankruptcy Cases or any Successor Cases to a case under chapter 7 of the Bankruptcy Code; (iii) dismissing any of the Bankruptcy Cases or any Successor Cases; or (iv) pursuant to which this Court abstains from hearing any Bankruptcy Case or any Successor Case; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to the Interim Order and this Final Order shall maintain their priority as provided by the Interim Order, this Final Order and the DIP Loan Documents until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the terms of the DIP Credit Agreement.  The DIP Obligations shall not be discharged by the entry of any order confirming any plan of reorganization in any of the Bankruptcy Cases, and the Debtors shall, and shall be deemed to, waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

21.    _Protection under Section 364(e) of the Bankruptcy Code_.  If any or all of the provisions of the Interim Order or this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or adequate protection obligations owing to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties incurred prior to the actual receipt by the DIP Agent or the Prepetition Agents, as applicable, of written notice of the effective date of such reversal,

41

modification, vacatur or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations or adequate protection rights of the Prepetition Secured Parties, including, without limitation, with respect to the use of Cash Collateral. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral or the incurrence of DIP Obligations or adequate protection rights of the Prepetition Secured Parties prior to the actual receipt by the DIP Agent or the Prepetition Agents, as applicable, of written notice of the effective date of such reversal, modification, vacatur or stay, shall be governed in all respects by the provisions of the Interim Order, this Final Order and the DIP Loan Documents, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, the Interim Order, this Final Order and the DIP Loan Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and adequate protection obligations owing to the Prepetition Secured Parties.

22.     *Events of Default*.  Except as otherwise provided in this Final Order or to the extent the DIP Agent (acting at the direction of the Required Lenders  or such other level of consent as required by the terms of the DIP Credit Agreement) may otherwise agree in writing, any occurrence of an "Event of Default" pursuant to the DIP Credit Agreement shall constitute an event of default hereunder, unless the DIP Agent (acting at the direction of the Required Lenders or such other level of consent as required by the terms of the DIP Credit Agreement) has waived such default in accordance with the DIP Loan Documents (each, an "**Event of Default**"). Any of the following shall constitute an Event of Default:

(a)    Non-Payment.  The Borrower or any other Loan Party fails to pay (i) any principal of any DIP Loan when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof or by acceleration thereof or otherwise, or (ii) pay any interest on any DIP Loan or any fee or other amount (other than an amount referred to in the foregoing clause (i)) payable under the DIP Credit Agreement or under any other DIP Loan Document, when and as the same shall become due and payable, and such failure shall continue unremedied for a period of five (5) or more business days; or

(b)    Specific Covenants.  Any Loan Party fails to perform or observe any term, covenant or agreement contained in any of sections 7.02(a), 7.04(a) (solely with respect to the Borrower), 7.10, 7.12, 7.15, 7.16, 7.17, 7.18 or Article VIII of the DIP Credit Agreement; or

(c)    Other Defaults.  Any Loan Party fails to perform or observe any other term, covenant or agreement (not specified in section 9.01(a) or (b) of the DIP Credit Agreement) contained in any DIP Loan Document on its part to be performed or observed and such failure continues for 10 days; provided that an Event of Default under Article VI of the DIP Credit Agreement (other than under sections 6.01(d) and section 6.06 under the DIP Credit Agreement) is subject to a grace period of 5 business days and an Event of Default under sections 6.01(d) or 6.06 of the DIP Credit Agreement is subject to a grace period of 2 business days; or

(d)    Representations and Warranties.  Any representation, warranty, certification or statement of fact made or deemed made by or on behalf of the Borrower or any other Loan Party in the DIP Credit Agreement, in any other DIP Loan Document, or in any document delivered in connection therewith shall be incorrect or misleading in any material respect when made or deemed made; or

(e)    Judgments.  There is entered against any Loan Party or any subsidiary thereof a final judgment or order for the payment of money in an aggregate amount exceeding $250,000 (to the extent not covered by independent third-party insurance as to which the insurer is rated at least "A" by A.M. Best Company, has been notified of the potential claim and does not dispute coverage), or any one or more non-monetary final judgments that have, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect (as defined in the DIP Credit Agreement) and there is a period of 30 consecutive days during which a stay of enforcement of such judgment, by reason of a pending appeal or otherwise, is not in effect, or enforcement of such judgment is not subject to the automatic stay provided in the Bankruptcy Code; or

43

(f)    ERISA.   (i) An ERISA Event (as defined in the DIP Credit Agreement) occurs with respect to a Pension Plan or Multiemployer Plan (each as defined in the DIP Credit Agreement)  which has resulted or could reasonably be expected to result in liability of any of the Loan Parties under Title IV of ERISA to the Pension Plan, Multiemployer Plan or the Pension Benefit Guaranty Corporation in an aggregate amount in excess of $250,000, (ii) any Loan Party or any ERISA Affiliate (as defined in the DIP Credit Agreement) fails to pay when due, after the expiration of any applicable grace period, any installment payment with respect to its withdrawal liability under section 4201 of ERISA under a Multiemployer Plan in an aggregate amount in excess of $250,000, (iii) there is or arises an Unfunded Pension Liability (as defined in the DIP Credit Agreement) (taking into account only Plans (as defined in the DIP Credit Agreement) with positive Unfunded Pension Liability) of $250,000 or more, or (iv) there is or arises any potential withdrawal liability under section 4201 of ERISA, if any Loan Party, any subsidiary thereof or any ERISA Affiliate were to withdraw completely from any and all Multiemployer Plan of $250,000 or more; or

(g)    Invalidity of Loan Documents and Collateral Documents.  (i) Any DIP Loan Document shall cease to be in full force and effect (other than pursuant to the terms hereof or thereof), or any Loan Party shall deny or disaffirm in writing the validity of any DIP Loan Document or that it has any further liability under any such DIP Loan Document (other than, in the case of a Guarantor Subsidiary (as defined in the DIP Credit Agreement), as a result of the discharge of a Guarantor Subsidiary in accordance with the terms of the DIP Loan Documents) or otherwise attempt to invalidate or otherwise impair the DIP Loans or of the validity or perfection of the liens granted thereunder or (ii) any material provision of any Collateral Document (as defined in the DIP Credit Agreement), at any time after its execution and delivery and for any reason other than as expressly permitted hereunder or thereunder or as a result of acts or omissions by the DIP Agent or any DIP Lender or satisfaction in full of all the DIP Obligations, ceases to be in full force and effect or ceases to create a valid and perfected DIP Lien (subject to Permitted Liens) on the DIP Collateral to be covered thereby; or any Loan Party or any other person contests in any manner the validity or enforceability of any material provision of any Collateral Document or of the validity or perfection of the liens granted thereunder; or any Loan Party denies that it has any or further liability or obligation under any provision of any Collateral Document, or purports to revoke, terminate or rescind any Collateral Document; or

(h)    Change of Control.   There occurs any Change of Control (as defined in the DIP Credit Agreement); or

(i)     Bankruptcy Matters.  The Court shall enter an order authorizing, approving or granting (or the Debtors shall file a motion seeking such authorization, approval or grant of) (i) additional post-Petition Date financing not otherwise permitted herein or in the DIP Credit Agreement, (ii) any liens on the DIP Collateral not otherwise permitted herein or in the DIP Credit Agreement, (iii) dismissal of the Bankruptcy Cases or conversion of any Bankruptcy Case to one under chapter 7 of the Bankruptcy Code, (iv) appointment of a chapter 11 trustee in any of the Bankruptcy Cases, (v) any other superpriority claim senior to or pari passu with superpriority claims of the DIP Agent, the DIP Lenders, the Revolving Facility Agent, the Revolving Facility Lenders, the Trustees or the Prepetition Noteholders, (vi) modification of the DIP Facilities (other than pursuant to section 11.01 of the DIP Credit Agreement) or this Final Order, (vii) any action materially adverse to the DIP Agent, the DIP Lenders, the Revolving Facility Agent, the Revolving Facility Lenders, the Trustees or the Prepetition Noteholders, or their rights and remedies with respect to or interest in the DIP Collateral, (viii) appointment of an examiner having powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code in any of the Bankruptcy Cases, (ix) relief from the automatic stay for the benefit of any creditor with a security interest in the DIP Collateral without the consent of the DIP Agent and the Required Lenders, or (x) termination of the use of cash collateral by the Loan Parties; or

(j)     Prepetition Debts.  Any Debtor shall make any Pre-Petition Payment (as defined in the DIP Credit Agreement) or otherwise pay any claim accrued prior to the Petition Date without the prior written consent of the DIP Agent and the Required Lenders in their sole discretion or other than as permitted by the DIP Budget (and any Permitted Variances (as defined in the DIP Credit Agreement) thereto); or

(k)     Actions against DIP Agent.  Any Debtor shall commence any action against the DIP Agent, the DIP Lenders, the Revolving Facility Agent, the Revolving Facility Lenders, the Trustees or the Prepetition Noteholders, on behalf of itself or any of its affiliates, officers or employees; or

(l)     Material Adverse Effect. Any Material Adverse Effect shall have occurred; or

(m)     RSA.  The RSA (i) shall be terminated pursuant to its terms or shall otherwise cease to be in full force and effect (other than a Termination Event (as defined in the RSA) as a result of the occurrence of the Effective Date (as defined in the RSA)), or (ii) shall have been amended, supplemented or otherwise modified in any material manner that

45

adversely affects the interests, rights or remedies of any of the DIP Agent or the DIP Lenders; or

(n)     Plan Milestones. The failure of the Debtors to comply with any of the Plan Milestones (as defined in the DIP Credit Agreement), regardless of whether the Debtors used commercially reasonable efforts to comply with any such Plan Milestone; or

(o)     506(c) Claims. A claim under section 506(c) of the Bankruptcy Code or otherwise shall have been allowed against any of all of the DIP Agent, the DIP Lenders or the DIP Collateral, or against the Revolving Facility Agent, the Revolving Facility Lenders, the Trustees or the Prepetition Noteholders or the Prepetition Collateral; or

(p)     Competing Plans. The filing by any Debtor of any plan of reorganization or related disclosure statement or any direct or indirect amendment, modification, waiver or other change to the Plan or related disclosure statement, or the entry of an order confirming any such plan of reorganization or approving any such disclosure statement or approving any such amendment, modification, waiver or other change in each case to the extent that such filing is not the Plan or treats the claims of the DIP Agent, any of the DIP Lenders, any of the Trustees or any of the Prepetition Noteholders in any manner to which they do not consent in their respective sole discretion; or

(q)     Exclusivity. The Bankruptcy Court shall enter an order that results in any termination or modification of the exclusivity periods set forth in section 1121 of the Bankruptcy Code except as provided in this Final Order or any such exclusivity periods shall have expired; or

(r)     Bankruptcy Orders Not In Full Force and Effect. The Interim Order (prior to entry of this Final Order) or this Final Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment, without the prior written consent of the Required Lenders; or

(s)     Compliance with Interim Order and Final Order. The failure of any Loan Party to comply in any material respect with the Interim Order (prior to entry of this Final Order) or this Final Order; or

(t)     Asset Sales. Any sale or other disposition of all or a material portion of the Collateral pursuant to sections 363 or 1129 of the Bankruptcy Code other than as permitted by the Interim Order or this Final Order (or pursuant to a transaction expressly permitted herein); or

46

(u)    Administrative Expense or Priority Claims.  A claim against any Debtor arising prior to the Effective Date of a kind specified under or entitled to priority or superpriority pursuant to sections 364(c)(1), 503(b), 507(a), 507(b) or 1114(e)(2) of the Bankruptcy Code or otherwise shall have been allowed in excess of $50,000 against such Debtor as a result of litigation with employees or former employees of any Debtor (including, without limitation, wage and hour collective or class action litigation involving one or more Debtors); or

(v)    Schedule of Assumption/Rejection of Executory Contracts and Unexpired Leases.  The filing of any schedule of assumption, assumption and assignment, or rejection of executory contracts and unexpired leases in any of the Bankruptcy Cases that materially adversely affects the interests, rights or remedies of the DIP Agent or any DIP Lender that is not reasonably satisfactory to the DIP Agent and the Required Lenders; or

(w)    Challenge Under Final Order.  If forty-five (45) days after the Committee or a party in interest obtains standing to assert a Challenge and such Challenge is not resolved.

23.    *Modification of Stay.*  The automatic stay provisions of section 362 of the Bankruptcy Code shall be and hereby are automatically vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, upon the occurrence and during the continuation of any Event of Default and, in each case, after the provision by the DIP Agent (acting at the direction of the Required Lenders) to the Debtors of five (5) days' prior written notice of such Event of Default (such five (5) day period, the "**Remedies Notice Period**"), which written notice shall be served by the DIP Agent via electronic mail or facsimile on the Debtors, counsel to the Debtors, counsel to the Revolving Facility Lenders, counsel to the Revolving Facility Agent, counsel to the GSO, Kelso, Carl Marks and Marblegate, counsel to the 2010 Trustee, counsel to the 2015 Trustee, counsel to the Committee and the U.S. Trustee, all rights and remedies provided for in the DIP Loan Documents, and to take any or all of the following actions without further order of or application to this Court following the conclusion of the Remedies Notice Period and in the absence of a determination by the Court that an Event of

47

Default has not occurred and/or is not continuing:  (a) immediately terminate the Debtors' use of Cash Collateral and cease making any DIP Loans to the Debtors; (b) immediately declare all DIP Obligations to be immediately due and payable; (c) immediately terminate the commitment to enter into the Exit Second Lien Facility; (d) immediately set off any and all amounts in accounts maintained by the Debtors with the DIP Agent or any of the DIP Lenders against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of any of the DIP Agent or the DIP Lenders for application towards the Revolving Facility Obligations and the Revolving Facility Adequate Protection Obligations and after the Discharge of Revolving Facility Obligations, toward the DIP Obligations; and (e) take any other actions or exercise any other rights or remedies permitted under the Interim Order, this Final Order, the DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations.  The automatic stay under section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided above unless and until this Court has determined that an Event of Default has not occurred and/or is not continuing.  For the avoidance of doubt, neither the DIP Agent nor any of the DIP Lenders shall exercise any such rights and remedies on account of an Event of Default until after expiration of the Remedies Notice Period.  During the Remedies Notice Period, the Debtors or the Committee shall be entitled to (x) contest the occurrence and/or continuance of the an Event of Default and (y) seek and obtain an emergency hearing before this Court, upon notice to the DIP Agent and the DIP Lenders.  The rights and remedies of the DIP Agent and the DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and the DIP Lenders may have under the DIP Loan Documents or otherwise.  The Borrower shall cooperate fully with the DIP Agent and the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.  Notwithstanding anything

contained herein to the contrary, the Revolving Facility Agent and Revolving Facility Lenders agree not to exercise remedies with respect to DIP Collateral after an Event of Default so long as Adequate Protection Payments are made, provided that after November 23, 2016 the standstill of the Revolving Facility Agent and the Revolving Facility Lenders shall terminate.

24.    *No Waiver of Remedies*.  The delay in or the failure of the Prepetition Secured Parties, the DIP Agent or the DIP Lenders to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the Prepetition Secured Parties', the DIP Agent's or DIP Lenders' rights and remedies.  Notwithstanding anything herein, but subject to the terms of the RSA as it relates to the Prepetition Secured Parties party thereto, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly or otherwise impair the rights and remedies of the Prepetition Secured Parties, the DIP Agent or the DIP Lenders under the Bankruptcy Code or under applicable non-bankruptcy law, including without limitation, the rights of the Prepetition Secured Parties, the DIP Agent and the DIP Lenders to (a) request conversion of the Bankruptcy Cases to a case under chapter 7 of the Bankruptcy Code, dismissal of these Bankruptcy Cases, or the appointment of a trustee in these Bankruptcy Cases, (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, an alternative plan, or (c) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) the Prepetition Secured Parties, the DIP Agent and the DIP Lenders may have.

25.    *Limitations on Borrowings*.  It shall constitute an Event of Default if any of the Debtors obtains authorization from the Court for the Debtors or their estates to borrow money (other than in accordance with the DIP Credit Agreement or through credit terms in the ordinary course of business from any vendor, supplier, customer or the like) from any person

other than the DIP Lenders; provided, however, that the Debtors may request and obtain such authorization in connection with postpetition financing, loans or financial accommodations that will indefeasibly repay in full all Revolving Facility Obligations, Revolving Facility Adequate Protection Obligations, and DIP Obligations; provided, further, however, that in connection with the seeking or obtaining of such postpetition financing, loans, or financial accommodations, the Debtors may not rely on the consent of the Prepetition Secured Parties to the relief granted in the Interim Order or this Final Order and any and all such consent shall be deemed to have automatically terminated.

26. _Modifications of DIP Loan Documents and DIP Budgets._  The Debtors are hereby authorized, without further order of this Court, to enter into written agreements with the DIP Agent, with the consent of the Required Lenders, providing for (a) any non-material modifications to the DIP Loan Documents or of any other modifications to the DIP Loan Documents necessary to conform the DIP Loan Documents to this Final Order or (b) any other modification to the DIP Loan Documents; provided, however, that notice of any material modification or amendment to the DIP Loan Documents shall be provided by the Debtors to counsel to the Committee, the Revolving Facility Agent and the U.S. Trustee, each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment unless the Committee, the Revolving Facility Agent and the U.S. Trustee agree to a shorter period.  If any of the Committee, the Revolving Facility Agent or the U.S. Trustee timely objects to any material modification or amendment to the DIP Financing Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.  Any modification or amendment to the DIP Budget shall require the consent of the Required Lenders and the Revolving Facility Lenders, which consent shall not be unreasonably

withheld or delayed. Any modification or amendment to the Permitted Variances in respect of the DIP Budget shall require the consent of the Required Lenders and the Revolving Facility Lenders, in each case in their sole and absolute discretion.

27. *Committee Settlement; Stipulations Regarding Prepetition Secured Obligations and Prepetition Liens Binding on Parties-in-Interest.*

(a)    Prior to entry of this Final Order, the Debtors, the Committee, the DIP Lenders, and the Prepetition Secured Parties agreed to the terms of a global settlement, which terms were announced on the record of the hearing on September 23, 2016, to address the Committee's potential challenges to this Final Order and the Plan (the "Committee Settlement"). As a result of the Committee Settlement, the Committee has agreed not to assert a Challenge (as defined below) provided that the amended Plan, including terms materially consistent with the Committee Settlement, is confirmed and becomes effective. Notwithstanding the entry of this Final Order in advance of the confirmation hearing and the Plan effective date, the Committee, as set forth in paragraph 27(b) below, fully reserves its right to assert a Challenge in the event such amended plan does not become effective, and each Prepetition Consenting Party fully reserves all of its rights and defenses with respect to any such Challenge. Additionally, the Debtors, Committee, DIP Lenders and Prepetition Secured Parties agree that any chapter 11 plan proposed in the Bankruptcy Cases shall include a provision that from and after the effective date of such plan all Avoidance Actions shall be deemed released and waived.

(b)    The Debtors' Stipulations shall be binding on the Debtors' estates and all parties-in-interest, including, without limitation, the Committee, unless (a) the Committee, or another party-in-interest (other than any of the Debtors) has timely filed a motion (with a draft complaint attached) (a "**Standing Motion**") seeking standing to prosecute a

51

contested matter or adversary proceeding (subject to the limitations set forth in paragraph 14 hereof) (a "**Challenge**") (i) challenging the liens or claims of any or all of the DIP Agent and/or the DIP Lenders, or the initiation or prosecution of any claim or cause of action against any or all of the DIP Agent, the DIP Lenders, the Prepetition Agents, the Revolving Facility Lenders and the Prepetition Noteholders, including any claim under chapter 5 of the Bankruptcy Code, (ii) asserting any claims or causes of actions (including any claims or causes of action under chapter 5 of the Bankruptcy Code) against any or all of the Prepetition Agents, the Revolving Facility Lenders and the Prepetition Noteholders, their respective advisors, agents and sub-agents, including formal discovery proceedings in anticipation thereof, (iii) asserting any claims or challenges relating to the allocation of value as between encumbered and unencumbered assets (if any), and (iv) seeking to recharacterize any Adequate Protection Payments made to the Prepetition Secured Parties as payment of principal, no later than the date that is (A) October 22, 2016, for parties-in-interest other than the Committee or (B) for the Committee, December 1, 2016 (the periods set forth in clauses (A) and (B), as applicable, the "**Challenge Period**"); provided, however, if a chapter 11 trustee or chapter 7 trustee is appointed during the Challenge Period, such trustee shall have the later of (X) the expiration of the Challenge Period or (Y) twenty (20) days after the appointment of such trustee, to file a Standing Motion and shall be substituted as a party-in-interest in the Challenge, and (b) this Court rules in favor of the plaintiff in any such timely and properly filed Standing Motion; provided, further, that the entry of an order by the Court confirming the Plan including terms materially consistent with the Committee Settlement and such Plan becoming effective shall automatically terminate the Challenge Period. If no Standing Motion is timely filed during the Challenge Period, or the Court does not rule in favor of the plaintiff in any such proceeding, then, without further order of this Court, (x) the

claims, liens and security interests of the Prepetition Secured Parties shall be deemed to be finally allowed for all purposes in these Bankruptcy Cases and any Successor Cases, and (y) the Debtors and their estates shall be deemed to have released any and all claims or causes of action against Prepetition Secured Parties with respect to the Prepetition Credit Documents or any related transactions. Notwithstanding anything to the contrary herein, if a Standing Motion is not timely filed, the Debtors' Stipulations shall be binding on the Debtors' estates, the Committee and all parties-in-interest. If a Standing Motion is timely filed, the Debtors' Stipulations shall be binding on the Debtors' estates and all parties-in-interest except to the extent such stipulations are specifically challenged in such Challenge as and when originally filed. To the extent a Standing Motion or Challenge is withdrawn, denied or overruled, the Debtors' Stipulations specifically challenged in such Standing Motion or Challenge also shall be binding on the Debtors' estates and all parties-in-interest. For the avoidance of doubt, the Court shall not be required to enter an order with respect to a Standing Motion or Challenge within the Challenge Period.

(c)     No portion of the Carve-Out, any proceeds of the DIP Facilities, Cash Collateral or other DIP Collateral or Prepetition Collateral (collectively, "**Collateral**") proceeds may be used for the payment of the fees and expenses of any Standing Motion or Challenge. Notwithstanding any provision in the Interim Order or this Final Order to the contrary (including paragraph 14 of this Final Order), no more than $100,000 in the aggregate of the amounts set forth in the DIP Budget, the Carve-Out, the Cash Collateral or other Collateral proceeds may be used by the Committee, or any representative of the estates, to investigate, but not prosecute (or prepare for the prosecution of, including the preparation of a Standing Motion) any Challenge. Nothing in the DIP Loan Documents, the Interim Order or this Final Order shall

53

vest or confer on the Committee, or any representative of the estates, standing or authority to pursue any cause of action belonging to the Debtors or their estates.

28.   *Termination of Commitments and Right to Use Cash Collateral.*   All commitments of the DIP Lenders and any consent or right of the Debtors to use Cash Collateral shall terminate and all amounts owing under the DIP Facilities shall be due and payable, on the earliest to occur of the following events (collectively, the "**Cash Collateral Termination Events**"): (a) the effective date of any plan of reorganization for the Debtors, (b) subject to the other terms and conditions of this Final Order, the Borrower's receipt of a Carve-Out Trigger Notice, (c) the payment in full in cash of the Revolving Facility Obligations, Revolving Facility Adequate Protection Obligations, and DIP Obligations, (d) the date on which a sale of all or substantially all of the Debtors' assets under section 363 of title 11 of the Bankruptcy Code is consummated, (e) November 23, 2016, (f) the date that all loans and other DIP Obligations shall become due and payable in full under the DIP Loan Documents, (g) as otherwise provided in the DIP Credit Agreement and (h) the Debtors shall permit any Variance (as defined in the DIP Credit Agreement) to exist other than a Permitted Variance (unless waived by the Required Lenders and Revolving Facility Lenders); provided that the Cash Collateral Termination Events set forth in the immediately preceding clauses (c), (g), (h), and (i) shall be subject to the Remedies Notice Period.

29.   *Indemnification.*   The Debtors agree to jointly and severally indemnify and hold the DIP Agent, the DIP Lenders (solely in their capacity as such), any of their affiliates, and the respective shareholders, directors, members, principals, agents, advisors, officers, subsidiaries and affiliates of each solely in their respective capacities as such (each, an "**Indemnified Person**") harmless from and against any and all damages, losses, settlement

54

payments, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an Indemnified Person by reason of or resulting from the Bankruptcy Cases, the DIP Facilities, DIP Credit Agreement, the transactions contemplated thereby or hereby or by the DIP Facilities or any claim, litigation, investigation or proceeding relating to any of the foregoing, whether or not any of such Indemnified Person is a party thereto and whether or not brought by the Debtors or any other person, except to the extent resulting from the gross negligence or willful misconduct of such Indemnified Person as determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Agent exercising discretionary rights granted under the DIP Facilities. In all such litigation, or the preparation therefor, the DIP Agent and each DIP Lender shall be entitled to select its own counsel and, in addition to this foregoing indemnity, the Debtors agree to pay promptly the reasonable fees and expenses of such counsel. All indemnities of the Indemnified Persons shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under the Interim Order, this Final Order and the DIP Loan Documents.

30.    *Master Proof of Claim.*  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Bankruptcy Cases or any Successor Cases to the contrary, none of the Prepetition Secured Parties will be required to file proofs of claim or requests for payment of administrative expenses in any of the Bankruptcy Cases or any Successor Cases for any claims arising under the Prepetition Credit Documents or with respect to any Adequate Protection Obligations or Adequate Protection Payments, and the Debtors' Stipulations and the provisions of the Interim Order and this Final Order shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Parties with regard to all

claims arising under the Prepetition Credit Documents, the Interim Order and this Final Order. Notwithstanding the foregoing, the Revolving Facility Agent, for the benefit of itself and the Revolving Facility Lenders, the 2010 Trustee for the benefit of itself and the 2010 Noteholders, and the 2015 Trustee, for the benefit of itself and the 2015 Noteholders, are authorized and entitled, in their sole discretion, but are not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or proofs of claim and/or requests for payment of administrative expenses in each of the Bankruptcy Cases or any Successor Cases for any claim or administrative expense described herein. The failure to file any such proof of claim or request for payment of an administrative expense shall not affect the validity or enforceability of any of the Prepetition Loan Documents, the Interim Order, this Final Order, the Prepetition Obligations or any other obligations hereunder, or prejudice or otherwise adversely affect the Prepetition Secured Parties' rights, remedies, powers, or privileges under the Prepetition Credit Documents, the Interim Order or this Final Order; provided further that, for the avoidance of doubt, the filing of any proof of claim or request for payment of an administrative expense by any of the Prepetition Secured Parties shall not in any way prejudice or otherwise adversely affect the Prepetition Secured Parties' rights, remedies, powers, or privileges under the Prepetition Credit Documents, the Interim Order or this Final Order. The DIP Agent and the DIP Lenders shall not be required to file proofs of claim in the Bankruptcy Cases or any Successor Cases in order to maintain their respective claims for payment of the DIP Obligations under the Interim Order or applicable DIP Loan Documents. The statements of claim in respect of the DIP Obligations set forth in the Interim Order and this Final Order, together with the evidence accompanying the Motion and presented at the Interim Hearing and the Final Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such obligations and secured status.

31.    *Access to Collateral.*  Subject to the Remedies Notice Period, upon the occurrence of an Event of Default, the DIP Agent and the DIP Lenders are authorized to exercise their remedies and proceed under or pursuant to the Interim Order, this Final Order the DIP Credit Agreement and the DIP Loan Documents; except that with respect to any DIP Collateral located on the Debtors' leasehold locations, the DIP Agent and DIP Lenders' rights shall be limited to such rights (i) as may be ordered by this Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances, (ii) to which the applicable landlord agrees in writing with the DIP Agent or (iii) which the DIP Agent and the DIP Lenders have under applicable non-bankruptcy law.

32.    *Enforceability.*  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedures, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

33.    *Binding Effect.*  The terms of this Final Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties-in-interest from and after the entry of this Final Order by this Court.  In the event the provisions of this Final Order are reversed, stayed, modified or vacated following any further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted pursuant to this Final Order.

34.     _No Third Party Rights_.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary, other than the Debtors, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties.

35.     _No Liability to Third Parties_.  None of the Prepetition Agents or other Prepetition Secured Parties, solely in their capacity as such, shall (i) be deemed to be in "control" of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act (as amended), or any similar Federal or state statute), or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.

36.     _Sale, Conversion, Dismissal, Plan_.  It shall constitute an Event of Default if any order is entered by the Court providing for the sale of the ownership of the stock of any of the Debtors or their affiliates or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code and (i) such order does not provide that in connection and concurrently with any such event, the proceeds of such sale shall be used to satisfy, in cash, the Revolving Facility Obligations, Revolving Facility Adequate Protection Obligations, and DIP Obligations in accordance with the Revolving Facility Loan Documents, the Interim Order, this Final Order and the DIP Loan Documents, respectively, and (ii) such sale is not expressly permitted by the DIP Loan Documents.  If an order dismissing or converting any of these Bankruptcy Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time proposed,

and unless otherwise agreed to by the DIP Agent with the consent of the Required Lenders, any such order shall provide that (i) the DIP Liens, the Adequate Protection Liens, DIP Superpriority Claim, the Adequate Protection Claims and the Adequate Protection Payments granted hereunder, in the Interim Order and in the DIP Loan Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in the Interim Order and this Final Order until all DIP Obligations and Prepetition Secured Obligations, as applicable, are indefeasibly paid in full in cash and completely satisfied and all commitments under the DIP Loan Documents and the Prepetition Credit Documents are terminated in accordance with the DIP Loan Documents and the Prepetition Credit Documents, respectively, (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claims, the Adequate Protection Claims and the Adequate Protection Payments and (iii) all postpetition indebtedness, obligations or liabilities incurred by any of the Debtors to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties prior to the date of such order, including without limitation, the DIP Obligations, shall be governed in all respects by the original provisions of the Interim Order and this Final Order, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liabilities.

37.    *Headings*.  The headings of this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

38.    *Retention of Jurisdiction*.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Final Order.

39.    _Joint and Several Liability_.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Loan Documents.

40.    _Rights Under Sections 363(k) and 1129(b)_.    Absent a successful Challenge, the full amount of the DIP Obligations and the Prepetition Note Obligations may be used to "credit bid" for the assets and property of the Debtors as provided for in section 363(k) of the Bankruptcy Code by the DIP Agent (with respect to a credit bid of the DIP Obligations) (acting at the direction of the Required Lenders) and the Trustees (with respect to a credit bid of their respective Prepetition Note Obligations), in accordance with the terms of the DIP Loan Documents, Revolving Facility Loan Documents and the Prepetition Credit Documents, without the need for further Court order authorizing the same and whether such sale is effectuated through section 363(k) and/or section 1129(b) of the Bankruptcy Code or otherwise; provided that any such credit bid provides for the payment in full and in cash of the Revolving Facility Obligations and the Revolving Facility Adequate Protection Obligations.

Dated:  September 28, 2016

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE