**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ROADHOUSE HOLDING INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16 -11819 (BLS)<br><br>Jointly Administered<br><br>**Confirmation Hearing Date:  Nov. 9, 2016 at 10:30 a.m. (ET)**<br>**Confirmation Obj. Deadline:  Nov. 2, 2016 at 4:00 p.m. (ET)** |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT,
(II) DEADLINE FOR VOTING ON THE PLAN, (III) HEARING TO
CONSIDER CONFIRMATION OF THE PLAN, AND (IV) DEADLINE FOR
FILING OBJECTIONS TO CONFIRMATION OF THE PLAN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

**APPROVAL OF DISCLOSURE STATEMENT**

1.     By Order dated September 28, 2016 [Docket No. 334] (the "**Disclosure Statement Order**"), the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") approved the *Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated September 28, 2016 [Docket No. 330] (including all exhibits thereto and as amended, modified, or supplemented from time to time, the "**Disclosure Statement**") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), and authorized the Debtors to solicit votes to accept or reject the *Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code,* dated September 28, 2016 [Docket No. 329] (including all exhibits thereto and amended, modified, or supplemented from time to time, the "**Plan**"), annexed as Exhibit A to the Disclosure Statement.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement Order, as applicable.  Terms that are defined in the Plan or in the Disclosure Statement (other than defined terms commonly used herein) will appear in italics when presented in all-capitalized typeface herein.

**RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS CONTAINED IN PLAN**

2.     **PLEASE TAKE FURTHER NOTICE THAT ARTICLE IX OF THE PLAN CONTAINS CERTAIN RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS, WHICH ARE SET FORTH BELOW.  YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, INJUNCTION, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

3.     **For the purposes of the Plan sections excerpted below, "Released Parties" is defined to mean: (a) each Debtor, (b) the Supporting Noteholders, (c) the Indenture Trustees, (d) the DIP Lenders, DIP Agent and other lender-parties under the DIP Facilities, (e) the lenders, agents, issuing banks, arrangers and other lender-parties under the Exit Financing Facilities, (f) the Supporting Lenders (as well as any issuing bank) and the Revolving Facility Agent, (g) the Sponsors, and (h) with respect to each of the foregoing entities identified in subsections (a) through (g), such Person's current and former equity holders, including shareholders, partnership interest holders, and limited liability company unit holders, affiliates, partners, subsidiaries, members, officers, directors, managers serving on a board of managers,**

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716). The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

principals, employees, agents, managed funds, advisors, attorneys, accountants, investment banks, consultants, representatives, and other professionals, together with their respective predecessors, successors, and assigns.

4. For the purposes of the Plan sections excerpted below, "Exculpated Party" is defined to mean: (a) the Debtors; (b) the Debtors' current and former officers and directors; (c) the Creditors' Committee; (d) each member of the Creditors' Committee in its capacity as such; and (e) the Professionals retained by the Debtors and the Creditors' Committee.

5. <u>Article IX.E and IX.F of the Plan contains the following releases:</u>

<u>Releases by the Debtors of Certain Parties</u>. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, PURSUANT TO SECTION 1123(B)(3) OF THE BANKRUPTCY CODE, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE ACTIONS OF THE *RELEASED PARTIES* TO FACILITATE THE REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, EFFECTIVE AS OF THE *EFFECTIVE DATE*, EACH DEBTOR, IN ITS INDIVIDUAL CAPACITY AND AS A DEBTOR IN POSSESSION FOR ITSELF AND ON BEHALF OF ITS *ESTATE*, AND ANY PERSON CLAIMING THROUGH, ON BEHALF OF, OR FOR THE BENEFIT OF EACH DEBTOR AND ITS *ESTATE* SHALL RELEASE AND DISCHARGE AND BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED ALL *RELEASED PARTIES* FOR AND FROM ANY AND ALL *CLAIMS* OR *CAUSES OF ACTION* EXISTING AS OF THE *EFFECTIVE DATE* OR THEREAFTER WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ARISING FROM OR RELATED TO ANY ACTIONS, TRANSACTIONS, EVENTS OR OMISSIONS OCCURRING ON OR BEFORE THE *EFFECTIVE DATE* RELATING TO THE DEBTORS, THE *CHAPTER 11 CASES* OR THE OBLIGATIONS UNDER THE *2010 INDENTURE*, THE *2015 INDENTURE*, THE *DIP FACILITIES*, AND THE *CREDIT AGREEMENT*; <u>PROVIDED</u>, <u>HOWEVER</u>, THE FOREGOING RELEASE SHALL NOT APPLY TO THE POST-*EFFECTIVE DATE* OBLIGATIONS ARISING UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE *PLAN SUPPLEMENT* AND THE *EXIT FINANCING FACILITIES*) EXECUTED TO IMPLEMENT THE PLAN. THE REORGANIZED DEBTORS SHALL BE BOUND, TO THE SAME EXTENT THAT THE DEBTORS ARE BOUND, BY THE RELEASES AND DISCHARGES SET FORTH ABOVE.

<u>Releases by Non-Debtors</u>. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, INCLUDING THE ACTIONS OF THE *RELEASED PARTIES* TO FACILITATE THE REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING CONTEMPLATED BY THE PLAN, ON THE *EFFECTIVE DATE*, EACH PERSON WHO DIRECTLY OR INDIRECTLY, HAS HELD, HOLDS, OR MAY HOLD ANY *CLAIM* AGAINST THE DEBTORS OR INTEREST IN THE DEBTORS SHALL RELEASE AND DISCHARGE AND BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED ALL *RELEASED PARTIES* FOR AND FROM ANY AND ALL *CLAIMS* OR *CAUSES OF ACTION* EXISTING AS OF THE *EFFECTIVE DATE* OR THEREAFTER WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ARISING FROM OR RELATED TO ANY ACTIONS, TRANSACTIONS, EVENTS OR OMISSIONS OCCURRING ON OR BEFORE THE *EFFECTIVE DATE* RELATING TO THE DEBTORS, THE *CHAPTER 11 CASES* OR THE OBLIGATIONS UNDER THE *2010 INDENTURE*, THE *2015 INDENTURE*, THE *DIP FACILITIES*, AND THE *CREDIT AGREEMENT*; <u>PROVIDED</u>, <u>HOWEVER</u>, THE FOREGOING RELEASE SHALL NOT APPLY TO POST-*EFFECTIVE DATE* OBLIGATIONS ARISING UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE *PLAN SUPPLEMENT* AND THE *EXIT FINANCING FACILITIES*) EXECUTED TO IMPLEMENT THE PLAN; <u>PROVIDED</u>, <u>FURTHER</u>, <u>HOWEVER</u>, THAT NOTWITHSTANDING ANY LANGUAGE TO THE CONTRARY CONTAINED IN THE DISCLOSURE STATEMENT, THE PLAN, AND/OR CONFIRMATION ORDER, NO PROVISION OF THE DISCLOSURE STATEMENT, THE PLAN, OR CONFIRMATION ORDER SHALL (A) PRECLUDE THE SECURITIES AND EXCHANGE COMMISSION FROM ENFORCING ITS POLICE OR REGULATORY POWERS OR (B) RELEASE ANY NON-DEBTOR FROM LIABILITY IN CONNECTION WITH ANY LEGAL OR EQUITABLE ACTION OR *CLAIM* BROUGHT BY THE SECURITIES AND EXCHANGE COMMISSION.

6. **Article IX.G of the Plan contains the following exculpation provisions:**

UNDER THE PLAN, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED THEREIN, THE *PLAN SUPPLEMENT*, OR RELATED DOCUMENTS, NO *EXCULPATED PARTY* SHALL HAVE OR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, OR ARISING OUT OF THE *CHAPTER 11 CASES*, THE FILING OF THE *CHAPTER 11 CASES*, THE FORMULATION, PREPARATION, NEGOTIATION, DISSEMINATION, FILING, IMPLANTATION, ADMINISTRATION, CONFIRMATION OR CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE EXHIBITS TO THE PLAN AND THE DISCLOSURE STATEMENT, THE *PLAN SUPPLEMENT* DOCUMENTS, ANY EMPLOYEE BENEFIT PLAN, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED, MODIFIED, AMENDED OR ENTERED INTO IN CONNECTION WITH THE PLAN, EXCEPT FOR THEIR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER AND EXCEPT WITH RESPECT TO OBLIGATIONS ARISING UNDER CONFIDENTIALITY AGREEMENTS, JOINT INTEREST AGREEMENTS, OR PROTECTIVE ORDERS, IF ANY, ENTERED DURING THE *CHAPTER 11 CASES*; **PROVIDED**, **HOWEVER**, THAT EACH *EXCULPATED PARTY* SHALL BE ENTITLED TO ASSERT APPLICABLE AFFIRMATIVE DEFENSES, IF ANY.

7. **Article IX.H of the Plan contains the following injunctive provisions:**

UNDER THE PLAN, THE SATISFACTION, RELEASE, AND DISCHARGE PURSUANT TO ARTICLE IX OF THE PLAN SHALL ACT AS A PERMANENT INJUNCTION AGAINST ANY ENTITY COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS, OR ACT TO COLLECT, OFFSET OR RECOVER ANY *CLAIM*, *INTEREST*, OR *CAUSE OF ACTION* SATISFIED, RELEASED, OR DISCHARGED UNDER THE PLAN TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED BY THE BANKRUPTCY CODE, INCLUDING TO THE EXTENT PROVIDED FOR OR AUTHORIZED BY SECTIONS 524 OR 1141 OF THE BANKRUPTCY CODE.

WITHOUT LIMITING THE FOREGOING, FROM AND AFTER THE *EFFECTIVE DATE*, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD *CLAIMS* AND *INTERESTS* THAT HAVE BEEN RELEASED OR DISCHARGED PURSUANT TO ARTICLE IX OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX OF THE PLAN, SHALL BE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE *RELEASED PARTIES* OR THE *EXCULPATED PARTIES*: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY SUCH *CLAIMS* OR *INTERESTS*; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH *CLAIMS* OR *INTERESTS*; (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR *ESTATES* OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH *CLAIMS* OR *INTERESTS*; AND (D) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH *CLAIMS* OR *INTERESTS* RELEASED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN.

## SUMMARY OF PLAN TREATMENT OF CLAIMS AND INTERESTS

8. In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Facilities Claims, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified. The following table classifies the Claims against and Interests in the Debtors into separate Classes and summarizes the treatment of each Class under the Plan. Only Class 3 (Revolving Facility Lender Claims), Class 4 (GSO Notes Claims and Kelso Notes Claims), Class 5 (Unexchanged Notes Claims), and Class 6 (General Unsecured Claims) are entitled to vote on the Plan based on the provisions of the Bankruptcy Code. Finally, the table indicates the estimated recovery for each Class that is set forth in the Disclosure Statement. The summaries in this table are qualified in their entirety by the description and the treatment of such Claims and Interests in the Plan

and the Disclosure Statement.  **As described in Article VIII of the Disclosure Statement, the Debtors' businesses are subject to a number of risks, and the Debtors face a number of other risks related to, among other things, the commencement of the Chapter 11 Cases.  The uncertainties and risks related to the Reorganized Debtors make it difficult to determine a precise value of the Reorganized Debtors and distributions under the Plan.  The recoveries and estimates described in the following table represent the Debtors' best estimates given the information available on the date of the Disclosure Statement.  All statements herein relating to the amount of Claims and Interests are only estimates based on information known to the Debtors as of the date of the Disclosure Statement, and the final amounts of Allowed Claims may vary significantly from these estimates.**  Except as specifically noted therein, the Plan does not provide for payment of postpetition interest with respect to Allowed Claims

| Class | Designation | Impaired | Treatment of Allowed Claims and Interests | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | No | Except to the extent that a holder of an Allowed Other Priority Claim, together with the Debtors and the Required Supporting Noteholders, agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such holder shall be paid, to the extent such Claim has not already been paid during the Chapter 11 Cases, in full in Cash in the ordinary course of business by the Debtors or the Reorganized Debtors, as applicable, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which such Other Priority Claim against the Debtor becomes Allowed, or (iii) such other date as may be ordered by the Court. | No (conclusively presumed to accept) | 100% |
| 2 | Other Secured Claims | No | Except to the extent that a holder of an Allowed Other Secured Claim, together with the Debtors and the Required Supporting Noteholders, agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such holder shall be Reinstated, or, at the option of the Debtors or the Reorganized Debtors with the consent of the Required Supporting Noteholders, each holder of an Allowed Other Secured Claim shall receive, either (i) Cash in the full amount of such Allowed Other Secured Claim, including any postpetition interest Allowed pursuant to section 506(b) of the Bankruptcy Code, (ii) the net proceeds of the sale or disposition of the collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's secured interest in such collateral, (iii) the collateral securing such Allowed Other Secured Claim, or (iv) such other Distribution as necessary to satisfy the requirements of section 1129 of the Bankruptcy Code on account of such Allowed Other Secured Claim. | No (conclusively presumed to accept) | 100% |
| 3 | Revolving Facility Lender Claims | Yes (Unless the Debtors enter into an Alternati | On the Effective Date, except to the extent that a holder of a Revolving Facility Lender Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, each holder of a Revolving Facility Lender Claim shall receive a Pro Rata share of the Exit Revolving Facility (by having any Revolving Facility Lender Claims for outstanding principal deemed | Yes | 100% |

4

| Class | Designation | Impaired | Treatment of Allowed Claims and Interests | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|---|
| | ve Exit Facility) | | outstanding under the Exit Revolving Facility on a dollar-for-dollar basis and all letters of credit issued under the Credit Agreement deemed outstanding under the Exit Revolving Facility), *provided, however*, that all Revolving Facility Lender Claims for interest and outstanding expenses shall be paid on the Effective Date in Cash to the extent not previously paid pursuant to the Interim DIP Order or Final DIP Order; and *provided further however* that if the Debtors arrange for the Alternative Exit Facility, then each holder of a Revolving Facility Lender Claim shall receive Cash in the amount of its Allowed Claim in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim and any outstanding undrawn letters of credit issued under the Credit Agreement shall be cash collateralized at 105% of the face amount thereof, pursuant to arrangements satisfactory to the issuers thereof. | | |
| 4 | GSO Notes Claims and Kelso Notes Claims | Yes | On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of a GSO Notes Claim or Kelso Notes Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for the secured portion of such Claim, each holder of a GSO Notes Claim and/or a Kelso Notes Claim shall receive a Pro Rata share of the New Stock, subject to dilution for Management Incentive Plan (to the extent the board of directors of Reorganized Holding approves awards of New Stock thereunder). For the avoidance of doubt, on the Effective Date, each holder of a GSO Notes Claim and Kelso Notes Claim shall be deemed to have waived its Notes Deficiency Claim. | Yes | 11.64% |
| 5 | Unexchanged Notes Claims | Yes | On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of an Unexchanged Notes Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for the secured portion of such Claim, each holder of an Unexchanged Note Claim shall receive:<br>a. Subclass 5(a). Each holder of Unexchanged Notes that, in the aggregate, holds equal to or in excess of $9,000 in principal amount of Unexchanged Notes shall receive a Pro Rata share of the New Stock, subject to dilution for the Management Incentive Plan (to the extent the board of directors of Reorganized Holding approves awards of New Stock thereunder).<br>b. Subclass 5(b). Each holder of Unexchanged Notes that, in the aggregate, holds less than $9,000 in principal amount of Unexchanged Notes shall receive a Cash-Out Payment, which shall be paid (i) in the form of Cash, if Class 5 votes to accept the Plan and (ii) in the form of New Secured Notes, if Class 5 votes to reject the Plan. For the avoidance of | Yes | 11.64% |

5

| Class | Designation | Impaired | Treatment of Allowed Claims and Interests | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|---|
| | | | doubt, on the Effective Date, each holder of an Unexchanged Notes Claim shall be deemed to have waived its Notes Deficiency Claim. | | |
| 6 | General Unsecured Claims | Yes | On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the General Unsecured Claim Cash Pool. | Yes | 2.5-3.5% |
| 7 | Intercompany Claims | No | Intercompany Claims shall be reinstated, cancelled or compromised as determined by the Debtors with the consent of the Required Supporting Noteholders. | No (conclusively presumed to accept) | 100% |
| 8 | Subordinated Claims | Yes | The holders of Subordinated Claims shall neither receive Distributions nor retain any property under the Plan for or on account of such Subordinated Claims. | No (deemed to reject) | 0% |
| 9 | Existing Equity Interests | Yes | Existing Equity Interests shall be discharged, cancelled, released, and extinguished as of the Effective Date and holders of Existing Equity Interests shall neither receive any Distributions nor retain any property under the Plan for or on account of such Equity Interests. | No (deemed to reject) | 0% |
| 10 | Intercompany Interests | No | Intercompany Interests shall be cancelled or reinstated, as determined by the Debtors with the consent of the Required Supporting Noteholders. | No (conclusively presumed to accept) | 100% |

The recoveries set forth above are estimates and are contingent upon approval of the Plan as proposed.

## CONFIRMATION HEARING

9. On **November 9, 2016 at 10:30 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, a hearing (the "**Confirmation Hearing**") will be held before the Honorable Brendan Linehan Shannon in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801 to consider confirmation of the Plan, as the same may be amended, modified, or supplemented from time to time, and for such other and further relief as may be just. The Confirmation Hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by an announcement of such an adjournment in open court at the Confirmation Hearing or any adjournment thereof or the filing of a notice or hearing agenda providing for the adjournment on the docket of the chapter 11 cases with the Bankruptcy Court. The Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Plan, and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing.

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN

10. Objections, if any, to confirmation of the Plan, including any supporting memoranda, must be in writing, filed with the Clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, DE 19801 together with proof of service, and shall: (x) be made in writing; (y) state with particularity the legal and factual ground therefor, and, unless impracticable,

propose modification to the Plan that would resolve such objection; (z) conform to the Bankruptcy Rules and Local Rules; and (d) be served by hand delivery or in a manner as will cause such objection to be **received** on or before **November 2, 2016 at 4:00 p.m. (prevailing Eastern Time)** by: (a) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19081, Attn: Robert S. Brady and Edmon L. Morton; (b) proposed counsel to the Committee, Kelley Drye & Warren LLP, 101 Park Avenue, 27th Floor, New York, NY 10178, Attn: Jason Adams and Eric R. Wilson; (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Timothy J. Fox, Jr.; (d) counsel to the DIP Agent, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street P.O. Box 1347 Wilmington, DE 19899-1347, Attn: Andrew R. Remming; (e) counsel to JPMorgan Chase Bank, N.A., as Administrative Agent under the Credit Agreement, dated as of October 4, 2010, Simpson Thatcher & Bartlett LLP, Attn: Elisha D. Graff and Nicholas Baker, 425 Lexington Avenue, New York, New York 10017;  and (f) each of the counsel to the Unanimous Supporting Noteholders: (i) Dechert LLP, 1095 Avenue of the Americas New York, NY 10036, Attn: Michael J. Sage and Brian E. Greer; (ii) King & Spalding LLP, 1185 Avenue of the Americas New York, NY 10036, Attn: Michael C. Rupe and Jeffrey Pawlitz; and (iii) Debevoise & Plimpton LLP, 919 Third Avenue New York, NY 10022, Attn: Natasha Labovitz and Craig Bruens.  Any objections not filed and served as set forth above will not be considered by the Bankruptcy Court and shall be overruled and deemed waived.

11. Copies of the Disclosure Statement Order, the Plan, and the Disclosure Statement may be obtained online at the website of the Debtors' claims agent, Donlin, Recano & Company, Inc., at https://www.donlinrecano.com/Logans, or by request to Donlin Recano at the following addresses and telephone number:  Donlin, Recano & Company, Inc. Re: Roadhouse Holding Inc., et al. P.O. Box 192016 Blythebourne Station Brooklyn, NY 11219 Toll Free Tel: 877-739-9988, logansinfo@donlinrecano.com.  Copies of the Disclosure Statement Order, the Plan, and the Disclosure Statement are also available for inspection on the Bankruptcy Court's website at http://ecf.deb.uscourts.gov.  A login and password to the Bankruptcy Court's Public Access to Electronic Court Records ("**PACER**") website are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.

12. General information, including frequently asked questions regarding the Chapter 11 Cases and the Debtors' restructuring, are available at the Debtors' case website, https://www.donlinrecano.com/Logans.  Creditors may also contact the Debtors' restructuring information center managed by Donlin Recano Toll Free at 877-739-9988 or by email at logansinfo@donlinrecano.com if they have questions about the Chapter 11 Cases.  Please not, however, that neither Donlin Recano nor the staff of the Bankruptcy Court can provide you with legal advice regarding the Debtors and the Chapter 11 Cases.

| | |
|---|---|
| Dated:    Wilmington, Delaware<br>           September 28, 2016 | */s/ Elizabeth S. Justison*<br>**YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Robert S. Brady (No. 2847)<br>Edmon L. Morton (No. 3856)<br>Ryan M. Bartley (No. 4985)<br>Elizabeth S. Justison (No. 5911)<br>Norah M. Roth-Moore (No. 6125)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Tel:    (302) 576-2613<br>Fax:   (302) 571-1253<br><br>*Counsel for the Debtors and Debtors in Possession* |

01:19335876.1