## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 16-11819 (BLS) |
| ROADHOUSE HOLDING INC., *et al.*,[1] | Jointly Administered |
| Debtors. | **Hearing Date:  November 9, 2016 at 10:30 am (ET)** |
| | **Obj. Deadline: November 2 2016 at 4:00 pm (ET)** |

## LOGAN'S ROADHOUSE, INC.'S MOTION FOR ORDER (I) AUTHORIZING AND APPROVING BILL OF SALE AND ASSIGNMENT AND ASSUMPTION OF LEASE WITH BLAZIN WINGS, INC. FREE AND CLEAR OF ALL ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF

Logan's Roadhouse, Inc. (the "**Assignor**"), one the above-captioned debtors and debtors

in possession (collectively, the "**Debtors**"), hereby submits this Motion (the "**Motion**") for the

entry of an order, substantially in the form annexed hereto as <u>Exhibit A</u> (the "**Proposed Order**"),

pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local**

**Rules**"), (i) authorizing and approving the Assignor's entry into the Bill of Sale and Assignment

and Assumption of Lease attached to the Proposed Order as Exhibit A (the "**Assignment and**

**Assumption Agreement**" and the transaction set forth therein and herein, the "**Sale and**

**Assignment**")[2] with Blazin Wings, Inc. (the "**Assignee**"); (ii) authorizing and approving the sale

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Roadhouse Holding Inc. (5939); Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).  The location of the Debtors' corporate headquarters is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Assignment and Assumption Agreement or Proposed Order.

of the Transferred Property and the assumption and assignment of the Lease (together with the Transferred Property, the "**Property**"), free and clear of all Encumbrances; and (iii) granting related relief.  In support of the relief requested herein, the Assignor relies on the Declaration of Jake Schumer, attached hereto as Exhibit B, and respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Local Rule 9013-1(f) the Assignor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rule 6004-1.

**BACKGROUND**

**A.      General Background**

2.      On August 8, 2016 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On August 19, 2016, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the

"**Committee**").  As of the date hereof, no trustee or examiner has been appointed in these chapter 11 cases.

4.       The Debtors commenced these chapter 11 cases to pursue a balance sheet restructuring to be implemented under a plan.  Additional information regarding the Debtors, including their business operations, corporate and capital structure, and the events leading to the Petition Date, is more fully set forth in the *Declaration of Keith A. Maib in Support of Chapter 11 Petitions and First Day Relief* [Docket No. 2], filed on the Petition Date.

5.       By order dated September 28, 2016, the Court approved the *Disclosure Statement for the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.  The hearing to consider confirmation of the Debtors' *First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (as may be amended, modified, and/or supplemented) is currently scheduled for November 9, 2016 at 10:30 a.m. (prevailing Eastern Time).

**B.       The Debtors' Marketing and Sale Process for the Property**

6.       Prior to the Petition Date, the Debtors retained Hilco Real Estate, LLC ("**Hilco**") as their real estate consultant to conduct a thorough real estate analysis and assist the Debtors with the negotiation of lease restructurings, dispositions and termination agreements with the Debtors' landlords, among other things.  As part of its engagement, Hilco and the Debtors' management undertook a thorough evaluation of the Debtors' restaurant portfolio to determine which restaurants were suitable for closure, because they were unprofitable and/or did not fit into the Debtors' go-forward strategy.  They also identified other restaurant locations, including the Property, that could potentially generate value for the Debtors either through obtaining lease concessions or a sale, provided it fit with the Debtors' long-term strategy.

01:19396592.3

7.      Hilco's marketing efforts for the specific units identified ended in late September and consisted of the following.  First, Hilco conducted a broad-based public marketing scheme for those restaurants that were definitely closing based on overall poor performance and a negative financial profile.  Second, Hilco implemented a tailored private marketing scheme for certain stores, including those that were potential closures.  Hilco focused on approximately 20 potential purchasers, for the specific stores identified, who met one or more of the following characteristics: (i) Hilco believed the party was looking to acquire new restaurant locations consistent with the Debtors' lease portfolio; (ii) the party had a history of executing and closing on transactions; (iii) the party previously demonstrated the knowledge and ability to transact within a bankruptcy; and (iv) the party had demonstrated an ability to conduct confidential due diligence and negotiation.  The last factor was of particular importance since the Debtors had not yet determined to close or sell these properties at that time, and there was a business risk if confidentiality was not maintained.  Third, if Hilco received in-bound interest for *any* of the Debtors' locations, Hilco conferred with management to gauge whether a monetization transaction would be accretive to value and would be in line with the Debtors' long-term plan. The sale of the Property is the only sale transaction for which the Debtors will be seeking approval during these chapter 11 cases.

8.      Hilco and the Debtors evaluated offers that were received by looking at whether the price being offered would result in value to the Debtors that would materially exceed the value the Debtors would generate if they continued operations at a location, as well as other factors regarding the ability to ultimately close a transaction if an offer was accepted.  Hilco received two expressions of interest for the Property, each of which came from Hilco's targeted marketing group.  Hilco engaged in extensive negotiations with both parties that expressed an

interest in the Property, and ultimately received an offer from the Assignee with a purchase price of $506,500.00 (the "**Purchase Price**"), subject to customary adjustments for this type of transaction, with no contingencies other than Court approval. The Purchase Price represents a substantial improvement over the prices that accompanied the two initial expressions of interests.

C.    **Summary of Proposed Terms of the Sale and Assignment**[3]

9.    Pursuant to the terms and conditions of the Assignment and Assumption Agreement, and subject to this Court's approval, the Assignor proposes to sell the Transferred Property to the Assignee and to assume and assign the Lease to the Assignee on an "as is, where is basis" free and clear of all liens, claims, encumbrances and other interests. The material terms and conditions of the Assignment and Assumption Agreement are as follows:

| Legal Description and Address Of Property<br><br>Assignment and Assumption Agreement § 1 | The Assignee agrees to buy and the Assignor agrees to sell the following:<br><br>Transferred Property. All of Assignor's right, title and interest in and to the Improvements (as defined in the Lease) and all furniture, fixtures, equipment and other personal property located on the Premises or in the Building as of the date hereof (the Improvements and such additional personal property referred to herein as the "**Transferred Property**"), which for the avoidance of doubt shall exclude Branded Items and all personal property owned by third parties and held under a lease, license or similar agreement to the extent such personal property and lease, license or other agreements are listed on Exhibit B to the Assignment and Assumption Agreement.<br><br>The Assignee agrees to buy and the Assignor agrees to assume and assign the following:<br><br>The Lease. The Ground Lease dated April 14, 2010, as amended by First Amendment to Ground Lease dated May 13, 2010, and by Certificate of Commencement dated December 7, 2010, with 337 LOOP, LLC, a Texas limited liability company for the premises located at 1400 North Interstate 35, New Braunfels, Texas, as more particularly described in the Lease (the "**Premises**"). The Premises consist of a parcel of land legally described as Tract 1, Industry Subdivision as per plat recorded in Volume 5, Page 287 of the Comal County, Texas Plat |

---

[3]    This summary of the Assignment and Assumption Agreement is provided for the Court's convenience only. To the extent this summary differs in any way from the terms and conditions of the Assignment and Assumption Agreement, the actual terms of the Assignment and Assumption Agreement shall control.

| | |
|---|---|
| | Records, with an approximately 6,503 square foot freestanding building and related improvements thereon. |
| <u>Consideration</u><br><br>Assignment and<br>Assumption Agreement § 6 | On or prior to the Delivery Date, Assignee shall pay to Assignor the sum of $506,500.00. Assignor shall pay in full all amounts necessary to cure any defaults under the Lease as required by the Approval Order prior to or on the Delivery Date. |
| <u>Representations and</u><br><u>Warranties by Assignor</u><br><br>Assignment and<br>Assumption Agreement § 3 | As of the Effective Date, Assignor represents and warrants to Assignee, to the actual knowledge of Nishant Machado (Co-CRO of Operations) and Maria Rivera (Chief Operating Officer), as follows:<br><br>(a)    A true and complete copy of the Lease and all amendments is attached to the Assignment and Assumption Agreement as Exhibit A.<br><br>(b)    The Lease is in full force and effect and Assignor has not subleased any portion of the Premises and has not transferred or assigned, whether outright or by collateral assignment, all or any portion of its rights under the Lease. The Lease constitutes the entire agreement between Landlord and Assignor with respect to the Premises.<br><br>(c)    Assignor has accepted, and is in possession and occupancy of the Premises, pursuant to the terms and conditions of the Lease. The primary term of the Lease is twenty (20) years, and commenced on December 6, 2010, and ends on December 31, 2030. Tenant has three (3) options to renew the term of the Lease for periods of five (5) years each.<br><br>(d)    Construction of the Improvements has been completed and fully paid for and no party has the basis for a claim of a lien thereon.<br><br>(e)    Assignor has received no notice of a violation of any application law, statute, code or regulation, including those related to Hazardous Materials as described in Section 26(a) of the Lease. Assignor has no knowledge of any such violation or the presence of any Hazardous Materials in, on or under the Premises or Building and all asbestos located in the Building as described in the Environmental Reports (as defined in the First Amendment to Ground Lease) has been fully removed from the Building.<br><br>(f)    Attached attached to the Assignment and Assumption Agreement as Exhibit D is a true and correct statement of the book value of Tenant's Improvements and the amortization thereof as described in Section 31 of the Lease.<br><br>(g)    Assignor is not aware of any tenant exclusives or use restrictions benefitting other tenants in the Shopping Center adjoining the Premises with which Assignor would be |

| | required to comply. |
|---|---|
| Closing of the Transaction<br><br>Assignment and Assumption Agreement § 5<br><br>*Del. Bankr. L.R. 6004-1(b)(iv)(E)* | Within five (5) days after the entry of the Proposed Order, Assignor shall deliver possession of the Premises to Assignee. |
| "As Is, Where Is" Transaction<br><br>Assignment and Assumption Agreement § 1, 2 | The Assignor will convey the Property in "AS IS, WHERE IS" and "WITH ALL FAULTS" basis, without representation, warranties or covenants, express or implied, of any kind or nature, except for the warranty that the Assignor owns the Transferred Property and transfers it free and clear of any liens or encumbrances, as provided in the Proposed Order. |
| Brokerage<br><br>Assignment and Agreement § 10 | Assignor shall be responsible for payment of any and all broker commissions or fees due to Hilco.   Assignor and Assignee each hold harmless and indemnify each other from and against any and all costs (including reasonable attorneys' fees), expense or liability for any compensation, commissions and charges claimed by any other broker or agent with respect to this Assignment or the negotiation thereof. |
| Relief from Bankruptcy Rule 6004(h) and 6006(d)<br><br>Proposed Order ¶ 42<br><br>*Del. Bankr. L.R. 6004-1(b)(iv)(O)* | The Proposed Order provides that the provisions of Bankruptcy Rules 6004(h) and 6006(d) shall be waived. |
| Sale Free and Clear<br><br>Proposed Order ¶ 8 | The Proposed Order provides that the Property shall be transferred to the Assignee free and clear of all Interests or Claims, with all such Interests or Claims to attach after the Delivery Date to the proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they now have as against the Property, subject to any claims and defenses the Debtors may possess with respect thereto. |
| Injunction Protecting Assignee<br><br>Proposed Order ¶ 27<br><br>*Del. Bankr. L.R. 6004-1(b)(iv)(C) & (L)* | Paragraph 27 of the Proposed Order contains the following injunctive provision in favor of the Assignee:<br><br>Effective upon the Delivery Date and without further order of the Court, all entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Assignee, their successors and assigns, or the Property, with respect to any (a) Interests or Claims arising under, out of, in connection with or in any way relating to the |

01:19396592.3

7

|  | Debtors, the Assignee, the Property, or the operation of the Business or the Property prior to the Delivery Date of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Assignee, their successors or assigns, assets, or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Assignee, their successors or assigns, assets, or properties; (iii) creating, perfecting, or enforcing any Interests or Claims against the Assignee, their successors or assigns, assets, or properties; (iv) asserting any setoff or right of subrogation or recoupment of any kind against any obligation due the Assignee or their successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating, or failing or refusing to issue or renew any license, permit, or authorization to operate any of the Property or conduct any of the businesses operated with the Property. |
|---|---|

## RELIEF REQUESTED

10.    By this Motion, the Assignor, pursuant to sections 105(a) and 363 of Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1, requests the Court to enter an order (a) authorizing the Sale and Assignment pursuant to the Assignment and Assumption Agreement, (b) authorizing and approving the Assignment and Assumption Agreement, and (c) granting related relief.

11.    As set forth in the Assignment and Assumption Agreement, the Assignor is seeking this relief subject to higher and better offers.  As set forth in the Assignment and Assumption Agreement, the agreement will terminate without liability to either party if the Court does not enter the Proposed Order, including because the Court has found that the Assignment and Assumption Agreement is not the highest and best offer for the Property.

01:19396592.3

## BASIS FOR RELIEF REQUESTED

I.      *Entry into the Assignment and Assumption Agreement is Within the Sound Business Judgment of the Assignor and the Sale and Assignment Should Be Approved*

12.      For the reasons explained in detail below, the Assignor believes that the approval of a private sale of the Property to the Assignee pursuant to the terms and conditions of the Assignment and Assumption Agreement is not only appropriate but in the best interest of the Assignor, its estate, and creditors.   Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  In pertinent part, Bankruptcy Rule 6004 states that "all sales not in the ordinary course of business may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1).  With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> [T]he notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).  Local Rule 6004-1(b)(iv)(D) requires disclosure if a debtor is pursuing a private sale and the justification therefor.

13.      To approve the use, sale, or lease of property out of the ordinary course of business, the Court must find some articulated business justification for the proposed action.  *See In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Del. & Hudson*

*Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*).

14.    Generally, courts have applied four factors in determining whether a sale of a debtor's assets should be approved: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided.  *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *Abbotts Dairies*, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); *Del. & Hudson Ry.*, 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

15.    This fundamental analysis does not change if the proposed sale is private, rather than public.  *See, e.g.*, *In re Ancor Explor. Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b).").  The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property."  *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds*, 165 B.R. 1 (D.P.R. 1992); *accord, In re Canyon P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).  Here, the proposed private sale of the Property to the Assignee meets all of these requirements and should be approved.

**A.      Proceeding by Private Sale Reflects an Exercise of the Assignor's Business Judgment**

16.      There is a sound business justification for the Assignor's preference to proceed with a private sale to the Assignee, rather than conducting a public sale of the Property.  The Assignor submits that an order granting the relief requested herein is a matter within the sound discretion of the Court and would be consistent with the provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a).   At the time the Assignor's management, in conjunction with Hilco, determined to market the Property, there was a possibility that the Assignor would decide not to sell the Property and to continue operations at the restaurant.  Thus, to avoid the detrimental effect public marketing would have had on operations, the Assignor determined to privately market the Property to a tailored group of potential purchasers who satisfied Hilco's narrow criteria.  Throughout Hilco's engagement, Hilco remained receptive to all inquiries regarding the Debtors' properties.  This ultimately resulted in two qualified offers for the Property, including the Assignee's offer, which represents a higher value to the Assignor than retaining the Property and continuing operations there.

17.      As a result of the Assignee's interest in the Property, and its willingness to provide fair and reasonable consideration based on that interest, the Assignor believes that its estate and creditors would benefit from the approval of the Sale and Assignment without the added time, energy, expense, and risk associated with a public auction.  In the event that a party does present a *bona fide* offer for the Property that is higher and better, the Assignor and Court are not precluding from considering that offer.   However, at present, the Assignment and Assumption Agreement represents the highest and best value to the Assignor for the Property.

18.      Moreover, the Assignor believes that a private sale of the Property to the Assignee under the terms and conditions of the Assignment and Assumption Agreement is more likely to

close in a timely and efficient manner than a public auction because, in the Assignor's informed business judgment, the agreement provides them with a strong indication that the Assignee is motivated to close the contemplated transaction in such a manner.   Given the Assignee's willingness to close on an expedited basis so that it can obtain access to the Property as soon as practicable, the Assignor believes that the Sale and Assignment—as opposed to a lengthy auction process—represents the best opportunity to extract immediate and meaningful value from the Property in the amount of the Purchase Price.

### B.        The Purchase Price is Fair and Reasonable

19.        The Assignor believes that the Purchase Price is a fair and reasonable price for the Property.   The Purchase Price under the Assignment and Assumption Agreement was the result of a focused marketing and arm's length negotiations and reflects a substantial improvement in price from the two initial expression of interest that Hilco received.   The Assignor has carefully considered and analyzed the Assignee's offer as set forth in the Assignment and Assumption Agreement and has concluded that a sale of the Property pursuant to the Assignment and Assumption Agreement will result in obtaining maximum value for the Property and is in the best interests of is estate and creditors.   In consideration of the foregoing, the Assignor believes that the Purchase Price provides fair and reasonable value for the Property.

### C.        The Sale and Assignment is Proposed in Good Faith

20.        The Assignor submits that the Sale and Assignment transaction contemplated herein and in the Assignment and Assumption Agreement has been proposed in good faith, as the agreement was the product of good faith, arm's length negotiations between the Assignor, on the one hand, and the Assignee, on the other, and was negotiated with the active involvement of the Assignor's officers and professionals.   During the negotiation, both sides were represented by counsel.   The Assignor believes and submits that the Sale and Assignment is not the product of

01:19396592.3

collusion or bad faith.   Further, no evidence suggests that the Assignment and Assumption Agreement is anything but the product of arm's length negotiations between the Assignor, the Assignee, and their respective professionals.

### D.     Adequate and Reasonable Notice of Sale and Assignment Has Been Provided

21.     The Assignor intends to provide adequate notice of the proposed Sale and Assignment to all parties in interest, as required by the applicable procedural rules.   *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).   The Assignor intends to send copies of this Motion and the Assignment and Assumption Agreement to all parties that have expressed any interest in acquiring assets from the Debtors during Hilco's marketing process.   The notified parties will have the opportunity to submit higher and better offers during the period prior to the objection deadline set forth herein.   Consistent with its fiduciary duty to its estate, the Assignor will consider any and all such offers for the Property and advise the Court of any *bona fide* offers received for the Property at the hearing on the Motion.

### E.     The Sale and Assignment Should be Free and Clear of Liens, Claims, and Interests

22.     In accordance with section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting such a lien, claim, or interest consents to such sale; (c) the interest is a lien and the purchase price for the property is

greater than the aggregate amount of all liens on the property; (d) the interest is the subject of a *bona fide* dispute; or (e) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f).

23.    The Assignor believes that its prepetition and postpetition lenders will consent to the Sale and Assignment pursuant to the terms set forth in the Assignment and Assumption Agreement and as set forth herein, and those parties will have the opportunity to object to the sale if they do not, in fact, consent to the sale.  Furthermore, bankruptcy courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See*, *e.g.*, *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987). Considering that any remaining objections to this Motion must be resolved by consent of the objecting party or the Court, the Assignor expects that it can satisfy at least the second and fifth subsections of section 363(f).

**F.    The Assignee Should be Entitled to the Protections Afforded by 11 U.S.C. § 363(m)**

24.    The Assignor additionally requests the Court to find that the Assignee is entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale and Assignment.  Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

01:19396592.3

14

25.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m), has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *Abbotts Dairies*, 788 F.2d at 147.

26.     To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  *Id.*  (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings."  *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock Indus.*, 572 F.2d at 1198).

27.     As required by section 363(m) of the Bankruptcy Code, both the Assignor and the Assignee have acted in good faith in negotiating the Sale and Assignment of the Property.  There is no evidence of fraud or collusion in the terms of the Assignment and Assumption Agreement.  To the contrary, as previously discussed, the Sale and Assignment will be the culmination of meaningful negotiations in which the parties were ably represented by sophisticated advisors, including counsel.  The Assignee is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations have been conducted on an arm's length, good faith basis.

01:19396592.3

28.     All known parties with an interest in the Property will receive notice of the Sale and Assignment and will be provided an opportunity to be heard.  The Assignor submits that such notice is adequate for entry of the Proposed Order and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code.  Under the circumstances, the Assignee should be afforded the benefits and protections that section 363(m) provides to a good faith purchaser.

II.     **The Assumption and Assignment of the Lease Should Be Approved Under Section 365 of the Bankruptcy Code**

29.     Section 365(a) of the Code provides, in pertinent part, that a trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a).  Courts have uniformly deferred to the business judgment of a debtor to determine whether the assumption of an unexpired lease would be beneficial to the estate and is therefore appropriate under section 365(a) of the Code.  *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir 1993); *In re Taylor*, 913 F.2d 102 (3d Cir. 1990). "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).  The Bankruptcy Code further authorizes the debtor-in-possession to assign an assumed executory contract or unexpired lease to a third party, provided that any default under such contract or lease is cured and adequate assurance of future performance is provided.  *See* 11 U.S.C. § 365(f).

30.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes. Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J.

1989).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when the prospective assignee of a lease from the debtor has the financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding; "chief determinant of adequate assurance of future performance is whether rent will be paid").

31.     First, the Assignor believes that the assumption and assignment of the Lease is an exercise of the Assignor's sound business judgment.  The Assignor has carefully considered the economic terms of the Lease and has determined that the assumption and assignment of the Lease will generate more value for its estate and creditors than could be generated through going forward operations.  When the Lease is assigned, the Assignor will, among other things, cure all defaults under the Lease.  Thereafter, the Assignor will eliminate its ongoing obligation to perform under the Lease and avoid the accrual of any administrative obligations or potential liability under the Lease, thereby providing a material benefit to the estate.

32.     Second, the Landlord will be served with this Motion and will have an opportunity to object to the assumption and assignment of the Lease, including on the grounds of cure or adequate assurance of future performance.  On or prior to the Delivery Date, the Assignor will pay the Cure Amount, which the Debtors believe is $[9,291.67], in order to meet all of the cure obligations required under section 365(b) of the Bankruptcy Code.  The Assignor believes that the Assignee is able to demonstrate adequate assurance of future performance to the Landlord.  In the event that the Landlord objects on adequate assurance of future performance

01:19396592.3

grounds, the Assignor and the Assignee will address such objection and work to resolve it at or before the hearing scheduled for November 9, 2016.

33.      For the reasons stated above, the assumption and assignment of the Lease is in the best interests of the Assignor's estate and should be authorized by the Court.

## REQUEST FOR WAIVER OF STAYS

34.      Bankruptcy Rule 6004(h) provides, in relevant part, that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Bankruptcy Rule 6006(d) provides, in relevant part, that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Assignor requests the order approving the Sale and Assignment to be effective immediately by providing that the fourteen-day stay periods under Bankruptcy Rules 6004(h) and 6006(d) are waived.

35.      The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).  Although the Bankruptcy Rules and Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, *Collier on Bankruptcy* suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 6004.11, ¶ 6006.04 (16th ed.).  Furthermore, *Collier on Bankruptcy* provides that if an objection is filed and overruled, and the objecting party

informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

36.     Promptly closing the Sale and Assignment is of critical importance to the Assignee, as evidence by the deadline for the Delivery Date.   Additionally, the Assignor's restructuring efforts will be benefitted by an increase in its working capital.[4]   Accordingly, the Assignor requests the Court to waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

37.     The Assignor will provided notice of this Motion to:  (i) the U.S. Trustee; (ii) counsel to the Revolving Facility Agent; (iii) counsel to the DIP Agent; (iv) each of the counsel to the Unanimous Supporting Noteholders; (v) counsel to the prepetition Indenture Trustees; (vi) counsel to the Committee; (vii) all parties known to the Debtors who have an interest in or rights to the Property; (viii) all taxing authorities having jurisdiction over the Property; (ix) the landlord for the lease and its counsel, if known; and (x) all parties who have requested notice in these chapter 11 cases pursuant to Local Rule 2002-1.   Additionally, the Assignor will instruct Hilco to provide a copy of this Motion to all parties who expressed a *bona fide* interest in acquiring the Debtors' restaurant properties during Hilco's marketing process.   In light of the nature of the relief requested herein, the Assignor submit that no other or further notice is necessary.

---

[4]   The Debtors' DIP lenders and the prepetition Revolving Facility Agent have consented to a waiver of the waterfall provisions set forth in the Debtors' DIP credit agreement that require the proceeds from the Sale and Assignment to be applied to reduce the obligations owed to the Revolving Facility Agent.

01:19396592.3

WHEREFORE, the Debtors respectfully request the Court to grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:    Wilmington, Delaware        */s/ Elizabeth S. Justison*
          October 19, 2016            **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
                                       Robert S. Brady (No. 2847)
                                       Edmon L. Morton (No. 3856)
                                       Ryan M. Bartley (No. 4985)
                                       Elizabeth S. Justison (No. 5911)
                                       Norah M. Roth-Moore (No. 6125)
                                       Rodney Square
                                       1000 North King Street
                                       Wilmington, Delaware 19801
                                       Tel:    (302) 571-6600
                                       Fax:    (302) 571-1253
                                       Email: rbrady@ycst.com
                                              emorton@ycst.com
                                              rbartley@ycst.com
                                              ejustison@ycst.com
                                              nroth-moore@ycst.com

                                       *Counsel for the Debtors and Debtors in Possession*

01:19396592.3