# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ROADHOUSE HOLDING INC., *et al.*,[1]<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 16-11819 (BLS)<br><br>Jointly Administered<br><br>Hearing Date: December 13, 2017 at 10:30 a.m. (ET)<br>Responses Due: November 28, 2017 at 4:00 p.m. (ET) |

### REORGANIZED DEBTOR'S *CORRECTED*[2] MOTION FOR ORDER ESTABLISHING (I) RESERVES FOR CERTAIN UNRESOLVED CLAIMS FOR DISTRIBUTION PURPOSES ONLY AND (II) CLARIFYING AND APPROVING DISTRIBUTION PROCEDURES WITH RESPECT TO GENERAL UNSECURED CLAIMS

The above-captioned reorganized debtor (the "**Debtors**" or "**Reorganized Debtor**", as applicable),[3] by and through the undersigned attorneys, submit this motion (the "**Motion**") for entry of an order pursuant to sections 105, 502, and 1142 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), for an order (i) establishing reserves for disputed and unliquidated claims identified on Exhibit 1 to the proposed form of order attached hereto as Exhibit A (such order, the "**Proposed Order**" and each such claim an "**Estimated Claim**") and (ii) clarifying and approving distribution procedures with respect to General Unsecured Claims. In support of the Motion, the Reorganized Debtor respectfully represents as follows:

---

[1] The last four digits of the Reorganized Debtor's federal tax identification number are 5939, and the Reorganized Debtor's mailing address is 3011 Armory Drive, Suite 300, Nashville, Tennessee 37204. The chapter 11 cases of the following affiliates of the Reorganized Debtor were closed effective as of November 23, 2016: Roadhouse Intermediate Inc. (6159); Roadhouse Midco Inc. (6337); Roadhouse Parent Inc. (5108); LRI Holdings, Inc. (4571); Logan's Roadhouse, Inc. (2074); Logan's Roadhouse of Texas, Inc. (2372); and Logan's Roadhouse of Kansas, Inc. (8716).

[2] A prior version of this Motion was filed on November 13, 2017, but such motion was unsigned and, as a result, was withdrawn on November 14, 2017. *See* Docket No. 946. This Motion is identical in form and substance to the November 13 filing other than to include a signature on this Motion.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, which term is defined below.

01:22281342.5

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Reorganized Debtor consents, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105, 502, and 1142 of the Bankruptcy Code.

## BACKGROUND

### A. General Case Background

4. On August 8, 2016 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  From the Petition Date through the effective date of the *Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated September 28, 2016* (as confirmed and with all exhibits, hereafter the "**Plan**") [Docket No. 329], each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1007(a) and 1008 of the Bankruptcy Code.

5. On November 9, 2016, the Court entered an order (the "**Confirmation Order**") confirming the Plan [Docket No. 329].  The Effective Date of the Plan was November 23, 2016.

### B. The Plan Treatment of General Unsecured Claims and Certain Distribution Mechanics Specified Therein

6. Under the Plan's classification scheme, General Unsecured Claims are classified in Class 6 and are entitled to a *pro rata* share of the $1 million General Unsecured Claim Cash Pool, as such term is defined in the Plan.[4] The Plan establishes the following rules with respect to Distributions to holders of General Unsecured Claims:

- The Reorganized Debtors are not obligated to make a Distribution where the amount of the Distribution would be less than $25.00 (the "**Distribution Threshold**").[5] *See* Plan, Art. VII.K.8.

- Any Distributions that are not negotiated within six (6) months of issuance are (i) forfeited and (ii) the General Unsecured Claim for which such a distribution is made is disallowed and not entitled to any further Distribution (the "**Forfeiture Provision**"). See Plan, Art. VII.K.7.[6]

- All amounts in the General Unsecured Claim Cash Pool are to be distributed to holders of General Unsecured Claims until exhausted (the "**Exhaustion Provision**"). *See id.*

The Reorganized Debtor is not obligated to, and does not intend to, make Distributions that are below the Distribution Threshold. The Reorganized Debtor estimates that, based on their

---

[4] *See* Plan at I.A.60.

[5] Article VII.K.8 of the Plan provides in pertinent part that:

> The Debtors or the Reorganized Debtors, as the case may be, shall not be required to, but may in their discretion, make distributions to any holder of a Claim of Cash in an amount less than twenty-five dollars ($25). In addition, the Debtors and the Reorganized Debtors shall not be required to, but may in their discretion, make any payment on account of any Claim in the event that the costs of making such payment exceeds the amount of such payment.

With respect to the alternative threshold, the Reorganized Debtor believes that the costs of distribution would not be more than $25.00 and, accordingly, the procedure proposed herein contemplate making distribution of $25.00 or more.

[6] Article VII.K.7 of the Plan provides in pertinent part that:

> Any Distribution under this Plan … that is unclaimed six (6) months after the Disbursing Agent has delivered (or has attempted to deliver) such Distribution shall become the property of the Reorganized Debtor against which such Claim was Allowed notwithstanding any federal or state escheat, abandoned or unclaimed property laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim to such Distribution or any subsequent Distribution on account of such Allowed Claim shall be discharged and forever barred; *provided, however*, that in the event such Distribution relates to a General Unsecured Claim, the Disbursing Agent shall redistribute such Distribution to the remaining holders of Allowed General Unsecured Claims on a Pro Rata basis.

Allowed amounts, several hundred claims will not result in a Distribution that exceeds the Distribution Threshold.

### C. Need to Clarify Distribution Procedures in Light of the Distribution Threshold

7. The Plan does not specify whether the Forfeiture Provision applies to Distributions that are not made as a result of the imposition of the Distribution Threshold. However, since the Exhaustion Provision requires that all amounts in the General Unsecured Claim Cash Pool ultimately be distributed to the holders of Allowed General Unsecured Claims, the Reorganized Debtor believes that the Plan requires that amounts that would be distributed but for the imposition of the Distribution Threshold be re-allocated and distributed to holders of General Unsecured Claims whose Distributions at that time would in fact exceed the Distribution Threshold, including as a result of making any "catch-up" Distributions.

### D. The ADR Procedures and Disputed ADR Claims

8. On January 23, 2017, the Court entered its *Order Pursuant to 11 U.S.C. § 105(a) Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation* (the "**ADR Procedures Order**" and such procedures approved thereby, the "**ADR Procedures**") for the purposes of efficiently resolving certain Disputed Claims subject to the ADR Procedures Order (the "**ADR Claims**"). The Reorganized Debtor has consensually resolved in full all but four ADR Claims (the "**Disputed ADR Claims**"), and these will proceed to mediation in accordance with the ADR Procedures.

9. The Disputed ADR Claims would, to the extent Allowed, be General Unsecured Claims and entitled to a *pro rata* share of the General Unsecured Claim Cash Pool. However, the Reorganized Debtor believes that the Disputed ADR Claims would be covered by the Debtors' insurance policies if the liabilities exceed a $250,000 self-insured retention ("**SIR**") under the applicable policies. Therefore, if the Allowed amount of any Disputed ADR Claims

4

exceeds the SIR, such excess amount would be paid by the applicable insurer and would not be treated as a General Unsecured Claim.[7]  As a result, the Reorganized Debtor believes that the General Unsecured Claim portions of the Disputed ADR Claims would not exceed $250,000 for purposes of Distribution under the Plan, even if a Disputed ADR Claim was determined to be valid in the full amount asserted by the claimant (which, in each instance, is an amount asserted to be in excess of $250,000).[8]

### E. The English Claim

10.     Proof of Claim No. 6099 was filed by Wayne English alleging damages arising out of his ownership of $100,000 of Unexchanged Notes.  The Debtors objected to Mr. English's claim on the basis that it was duplicative of the proof of claim held by the Indenture Trustee for the Unexchanged Notes.[9]  Mr. English's claim was disallowed by this Court, *see* Docket No. 790, and the Court denied Mr. English's request to reconsider the disallowance of his claim, *see* Docket No. 825.  But Mr. English has appealed the Court's ultimate disallowance of his claim and the matter remains *sub-judice* in the District Court.[10]  The Reorganized Debtor proposes to set a reserve for this claim in the amount of $0.00 for two reasons: *first*, this Court has already found on two occasions that Mr. English is not entitled to any further distribution as the Holder

---

[7]  Section 4 of the court-ordered Alternative Dispute Resolution Procedures ("**ADR Procedures**") provides: "[t]o the extent any settlement amount is not covered by insurance, such settlement amount shall constitute an allowed, general unsecured, nonpriority claim against the Debtors' estates . . . ." *See* Docket No. 739.

[8]  For the avoidance of doubt, the request herein is limited to an estimation solely for purposes of permitting the Reorganized Debtor to make Distributions of the General Unsecured Claim Cash Pool and is not intended to be, not shall it be construed, as a determination of the ultimate liabilities asserted in the Disputed ADR Claims; for the further avoidance of doubt, the estimation of any claims under this order shall not be a determination of any insurance coverage for any liability ultimately determined or agreed upon in accordance with the ADR Procedures.

[9]  While the Debtors' objection did not address the merits of Mr. English's claim regarding the Debtors' liability, they dispute that they would have had any liability to Mr. English for the matters alleged in his claim and other pleadings filed in the chapter 11 cases.

[10]  The Reorganized Debtor has requested that the appeal be dismissed for lack of jurisdiction because it was untimely. That request has been fully briefed and is before Judge Andrews. Merits briefing has not commenced in the appeal.

of a General Unsecured Claim; and *second*, Mr. English's primary argument before this Court and the District Court is that he is not subject to the discharge provisions that are applicable under the Plan and the Bankruptcy Code so if he is right, he can pursue his claims and remedies outside of the context of the Plan and the Distributions to holders of General Unsecured Claims. (*To be clear and as this Court has already found*, Mr. English is incorrect regarding his contention that he is not subject to the Chapter 11 discharge; but he cannot have it both ways. To do so would prejudice the holders of *Allowed* General Unsecured Claims.)

### F. The Need to Estimate Claims

11. There are five General Unsecured Claims that remain Disputed for purposes of Distributions under the Plan. Under Article VII.L.6 of the Plan, no Distributions can be made from the General Unsecured Claim Cash Pool until such time as all Disputed General Unsecured Claims are either (1) resolved as an allowed or disallowed claim or (2) estimated by Final Order for the purposes of distribution. Pursuant to Article VII.L.8 of the Plan, the Reorganized Debtor may petition the Bankruptcy Court to estimate any Disputed Claim for the purposes of calculating a reserve requirement or maximum limitation on any such claim. The Court's estimation does not preclude the Reorganized Debtor from later compromising, settling, withdrawing, or otherwise resolving a Disputed Claim. *See* Plan, Art. VII.L.8.

### RELIEF REQUESTED

12. The Reorganized Debtor requests entry of the Proposed Order pursuant to sections 105(a), 502(c), and 1142(b) of the Bankruptcy Code and Article VII.L.8 of the Plan, estimating and establishing the maximum Allowed amount of the Estimated Claims solely for purposes of Distributions under the Plan (with respect to each claim, the "**Maximum Amount**").

13. The Reorganized Debtor requests that the Court permit the Reorganized Debtor to rely on the Maximum Amounts set by the Proposed Order as the Allowed amount for each

Estimated Claim, solely for purposes of making the *pro rata* Distribution of the General Unsecure Claim Cash Pool to holders of General Unsecured Claims required by the Plan. The Reorganized Debtor will maintain the funds that would be distributed to the Holder of each Estimated Claim based on such Maximum Amount until such time as the Estimated Claim is Allowed in accordance with the Plan and will then promptly make the required Distribution to the Holder of the Estimated Claim once Allowed, up the Distribution permitted based on the Maximum Amount.

14. Finally, the Reorganized Debtor requests that the Court clarify Articles VII.K.7 and VII.K.8 of the Plan and provide that any funds that would be distributed to the holders of Allowed General Unsecured Claims that would be less than the Distribution Threshold should be reallocated to the other holders of General Unsecured Claims that are entitled to receive (or would receive based on such reallocation) a Distribution at or above the Distribution Threshold so as to effect a prompt and efficient distribution of the General Unsecured Claim Cash Pool. Finally, in the event that funds remain in the General Unsecured Claims Cash Pool to be distributed to holders of Allowed General Unsecured Claims (after giving effect to the Forfeiture Provision or as a result of the Allowance of any General Unsecured Claim below the Maximum Amount used at the time of making distributions), the Reorganized Debtor will apply this same rule to subsequent Distributions but will make "catch-up" Distributions to any holders of General Unsecure Claims who previously did not exceed the Distribution Threshold but equal or exceed the Distribution Threshold at the time of a subsequent distribution.

## BASIS FOR THE RELIEF REQUESTED

**A. Estimation and Establishment of the Maximum Amount of the Estimated Claims**

15. Section 502(c) of the Bankruptcy Code provides for the estimation of contingent or unliquidated claims:

>   (c) There shall be estimated for purposes of allowance under this section —
>
>   (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . .

11 U.S.C. § 502(c)(1). Additionally, section 105 of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section 105 grants the "bankruptcy courts, as courts of equity, . . . broad authority to modify creditor-debtor relationships." *U.S. v. Energy Res.*, 495 U.S. 545, 549 (1990).

16. Based upon sections 105 and 502(c) of the Bankruptcy Code, the Court has the power to estimate the Maximum Amount of the Estimated Claims. *See, e.g.*, *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1995) (authorizing court to use "whatever method is best suited to the particular contingencies at issue" to estimate the ultimate value of the debtors' tax liability under the Internal Revenue Code); *In re Wallace's Bookstores, Inc.*, 317 B.R. 720, 724 (Bankr. E.D. Ky. 2004) (holding that a liquidating supervisor had the right under section 502(c) to seek estimation of disputed claims pursuant to a plan of reorganization); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422–23 (Bankr. S.D.N.Y. 2003) (estimating the disputed unliquidated amount of an administrative claim under section 502(c)). Moreover, estimation is appropriate whenever the fixing or liquidation of a contingent or unliquidated claim would avoid undue delay in the administration of the bankruptcy case. *See In re RNI Wind Down Corp.*, 369 B.R. 174, 191 (Bankr. D. Del. 2007) ("Estimation by the Court is mandatory, provided that the movant establishes that fixing or liquidation of the claim would unduly delay the administration of the case."). The estimation process is an expedient method for settling the amount of a claim that may receive a distributive share from the estate. *See Bittner* 691 F.2d at 135-37.

17.     Bankruptcy courts have wide-latitude when estimating the value of claims: "when estimating claims, bankruptcy courts may use whatever method is best suited to the contingencies of the case, so long as the procedure is consistent with the fundamental policy of Chapter 11 that a reorganization must be accomplished quickly and efficiently." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007); *see also In re Thomson McKinnon Sec., Inc.*, 143 B.R. 612, 619 (Bankr. S.D.N.Y. 1992) ("In estimating the claim, the bankruptcy court should use whatever method is best suited for the circumstances."); *In re Seaman Furniture Co.*, 160 B.R. 40, 41 (S.D.N.Y. 1993) (same); *see also Matter of Fed. Press Co.*, 116 B.R. 650, 653 (Bankr. N.D. Ind. 1989) (noting that bankruptcy courts estimating claims may use whatever method is best suited to the case, including "accepting claimant's claim at face value, estimating claim at zero and waiving discharge of claim, [or] arriving at court's independent estimation of claim"). Further, estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim." *Bittner*, 691 F.2d at 135.

18.     Finally, Article VII.L.6 of the Plan expressly contemplates that the Reorganized Debtor may make, and the Court would consider, requests to estimate claims when the Reorganized Debtor wished to make Distributions but claims within the class receiving a distribution remained Disputed.

19.     Here, the Reorganized Debtor proposes to establish a Maximum Amount for each Estimated Claim as set forth on Exhibit 1 to the Proposed Order and submits that the Maximum Amounts are appropriate for the reasons outlined above. Moreover, the establishment of the Maximum Amount is not intended to limit the ultimate liquidated or Allowed amount of the Estimated Claims but, instead, is intended to avoid any further delay in making distribution to the holders of Allowed Class 6 Claims. Failure to establish a reserve for the Estimated Claims

would prejudice other holders of Allowed General Unsecured Claims whose Distributions have been delayed to date. Accordingly, the Reorganized Debtor submits that estimation is necessary to avoid "undue delay."

### B. The Court May Clarify the Treatment of the Cash Allocated to Distributions Below the Distribution Threshold

20. Under sections 1142(b) and 105(a) of the Bankruptcy Code, the Court has broad authority over the property of the estate dealt with under the Plan and to issue any order necessary to implement the provisions of the Bankruptcy Code and the Plan.

21. Specifically, section 1142(b) of the Bankruptcy Code provides, in relevant part, that "[t]he court may direct the debtor and any other necessary party to execute . . . any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). The effect of section 1142(b) is to provide bankruptcy courts with a broad jurisdictional grant to implement the terms of a confirmed plan. *In re Intermet Corp.*, Case No. 08-11859, 2009 Bankr. LEXIS 2613, at *13 (Bankr. D. Del. Sept. 2, 2009) (stating that section 1142(b) provides courts with broad authority to order parties to comply with reorganization plans); *In re eToys, Inc.*, 331 B.R. 176, 185 (Bankr. D. Del. 2005) ("The Bankruptcy Court . . . does retain jurisdiction post-confirmation to enforce the Plan.") (citing *In re Terracor*, 86 B.R. 671, 676 (Bankr. D. Utah 1988) ("The clear intent of section 1142(b) is for the court to retain its jurisdiction to assure that the terms and provisions of the confirmed Chapter 11 plan are carried out until the plan is completed and a final decree is entered closing the case.")); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) (noting that "in the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its confirmation order"); 8 Collier On Bankruptcy ¶ 1143.02[1] (16th rev.

ed. 2013) ("Acting pursuant to section 1142(b), the court may issue any order necessary for the implementation of the plan."). Accordingly, the Court has the authority to issue orders necessary to implement the Plan.

22. Likewise, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This broad grant of authority is meant to enable courts to issue orders to ensure the prompt administration of the estate and equitable distribution of the assets. *See, e.g., Joubert v. ABN Mortg. Grp., Inc. (In re Joubert)*, 411 F.3d 452, 455 (3d Cir. 2005) ("Section 105(a) empowers bankruptcy courts and district courts sitting in bankruptcy to fashion orders in furtherance of Bankruptcy Code provisions.").

23. As set forth above, the Plan provides that holders of General Unsecured Claims are not entitled to receive Distributions below the Distribution Threshold and that the Reorganized Debtor is required to distribute the entirety of the General Unsecured Claim Cash Pool. The Plan does not, however, expressly state what is to be done with the Distributions that fall below the Distribution Threshold. The Reorganized Debtor believes that its proposal to redistribute those funds ratably to holders that would receive a Distribution at or above the Distribution Threshold (either initially or based on the proposed re-allocation) is both (i) consistent with the Exhaustion Provision in the Plan and will ensure prompt and full distribution of the $1 million General Unsecured Claim Cash Pool to holders of General Unsecured Claims and (ii) without prejudice to holders of low-dollar amount General Unsecured Claims because such parties were not expected to receive Distributions below the Distribution Threshold.

24. Accordingly, the Reorganized Debtor submits that the requested clarifications are both necessary and appropriate under sections 105(a) and 1142 of the Bankruptcy Code.

## RESERVATION OF RIGHTS

25. Nothing contained in this Motion shall be deemed an admission by the Debtors or Reorganized Debtor of any matter, including liability, allowance, or disallowance on any claim against the Debtors' estate or the Reorganized Debtors, and the Reorganized Debtor does not waive any rights against any party. The Reorganized Debtor reserves all rights, including, without limitation, the right to prosecute its objection to any Claims, including amended claims or any other claim now or hereafter asserted. Separate notice and a hearing will be scheduled for any such objection.

## NOTICE

26. The Reorganized Debtor will serve copies of this Motion on: (i) the holders of Estimated Claims; (ii) the Office of the United States Trustee; (iii) the Ombudsman; and (iv) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Reorganized Debtor submits that notice of this Motion in this manner is sufficient and proper and that no further notice is necessary.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Reorganized Debtor respectfully requests that the Court (a) enter the Proposed Order in substantially the form of order attached hereto as <u>Exhibit A</u> and (b) grant other and further relief as is just and appropriate under the circumstances.

| | |
|---|---|
| Dated: November 14, 2017 | */s/ Ryan M. Bartley* |
| | **YOUNG CONAWAY STARGATT & TAYLOR, LLP** |
| | Robert S. Brady (No. 2847) |
| | Edmon L. Morton (No. 3856) |
| | Ryan M. Bartley (No. 4985) |
| | Allison S. Mielke (No. 5934) |
| | Rodney Square |
| | 1000 North King Street |
| | Wilmington, Delaware 19801 |
| | Tel: (302) 571-6600 |
| | Fax: (302) 571-1253 |
| | rbrady@ycst.com |
| | emorton@ycst.com |
| | rbartley@ycst.com |
| | amielke@ycst.com |
| | |
| | *Counsel for the Reorganized Debtor* |